UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| v. | ) ) | Criminal No. 81-0306 (PLF) |
| JOHN W. HINCKLEY, JR. | ) ) ) | |

ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that Petitioner John W. Hinckley, Jr.'s petition under D.C. Code § 24-501(k) for limited conditional release is DENIED; it is

FURTHER ORDERED that St. Elizabeths Hospital's proposal for overnight visits outside of the Washington D.C. area under D.C. Code § 24-501(e) is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that the Court will permit (subject to successful conclusion of each) a total of seven overnight (Phase III) visits to Mr. Hinckley's parents' home outside the Washington, D.C. area, the first three for three nights and the remainder for four nights, subject to the following conditions:

  1.  Mr. Hinckley is being allowed a limited conditional release under the supervision of his parents. He is not permitted to leave one or both parents' supervision at any time during the course of the conditional release except where the Hospital's plan for his

acclimation to his parents' community provides for time spent away from his parents' supervision.' The time to be spent outside their supervision will be of limited duration, never to exceed more than ninety (90) minutes and within a finite geographic area, to be determined by the Hospital.

2. Mr. Hinckley will be allowed three initial visits to his parents' home outside the metropolitan Washington D.C. area with the purpose of acclimating him to his parents' community, each visit of a duration of three nights, or 76 hours. The success of each visit will be thoroughly assessed by the Hospital 'before a subsequent visit is permitted. At the completion of these initial three visits, the Hospital will decide if the visits to his parents' community will be increased to a duration of four nights, or 100 hours. If so, the Hospital may permit up to four such four-night visits. These four-night visits will be extensions of the initial three-night visits, with the purpose of further increasing Mr. Hinckley's familiarity with his parents' community and permitting him to engage in the Phase III activities discussed in the accompanying Opinion.

3. An itinerary will be developed by the Hospital and submitted, under seal, to the Court two weeks prior to each of the first three

---

[1] Within the confines of the Hinckleys' home, Mr. Hinckley will be considered to be under his parents' supervision so long as one or both is in the home with him at all times. They need not always be in the same room.

2

        Phase III visits with information regarding the locations, purposes, therapeutic goals and time frames of the visit. In particular, the itinerary should include the details as to the time and place that Mr. Hinckley is to spend outside the supervision of at least one parent. During any time that Mr. Hinckley spends out of the supervision of his parents, he is required to carry a cell phone, to be provided by his parents. The itinerary also will be provided to defense counsel and to counsel for the government. If after the Hospital assesses the first three Phase III visits, it decides that it w-ill not be necessary to create an individual itinerary for each visit, the Hospital may submit a single, more generalized itinerary for 'every two visits. However often the frequency of itineraries, they must include specific details regarding the time that Mr. Hinckley will 'spend out of the presence of his parents on each visit to his parents' home.

4. Mr. and Mrs. Hinckley will sign and agree to the "Agreement to Assume Supervisory Responsibility for Patient while on Conditional Release."

5. Mr. Hinckley and his parents will maintain telephone contact with the Hospital at least once a day during each visit.

6. Mr. Hinckley will meet with Dr. John J. Lee, a psychiatrist in the area near his parents' community, at least once during each visit. The appointment times will be determined and agreed upon in

advance and included in the itinerary submitted by the Hospital to the Court. Dr. Lee will submit a report to the Hospital after each appointment and communicate orally with Mr. Hinckley's treatment team, as needed, regarding their sessions. If for any reason outside the control of Mr. Hinckley, his parents, or Dr. Lee, one of these appointments must be cancelled during a particular visit and cannot be rescheduled during the same visit, the Hospital will notify the Court of the reasons for the cancellation in its written report submitted to the Court following each visit (pursuant to Paragraph 16 of this Order). Every effort will be made to reschedule a missed appointment during the same visit. Any refusal by Mr. Hinckley to meet with Dr. Lee would constitute a violation of his conditions of release.

7. St. Elizabeths Hospital remains Mr. Hinckley's residence and the treatment team remain his treating physicians.

8. If there are any signs of decompensation or deterioration in Mr. Hinckley's mental condition, no matter how slight, of danger to himself or others, or of elopement, Mr. Hinckley will immediately be returned to the Hospital.

9. Mr. Hinckley will be permitted to use the Internet in his parents' home only under the constant supervision of at least one parent or with the use of technology or technologies that can both track his

        Internet use and restrict it to the use of certain sites, such as ones that provide online courses. The use of the Internet, what sites will be visited, and what goals will be met through that use will be determined in advance and provided in the Hospitals' itinerary. If Mr. Hinckley's Internet use is monitored through the use of a tracking and restrictive technology, the Hospital treatment team must review his usage after every visit to determine that it is in compliance with the itinerary and his treatment plan. Any deviation from this usage will be considered a violation of Mr. Hinckley's conditions of release.

10. Mr. Hinckley and his parents will sign and agree to adhere to the "Media Plan To Be Utilized for Patient While On Conditional Release" which provides that any effort to contact the media, either by Mr. Hinckley or by his parents, in person or by any other means while Mr. Hinckley is on conditional release, will constitute a violation of this conditional release. If approached by the media, the Hinckleys will decline to speak with them, and if the media persists, the Hinckleys will withdraw.

11. If there are any negative incidents regarding the public or the media, Mr. or Mrs. Hinckley will immediately return to their residence and call the Nursing Supervisor's Office at the Hospital. If so directed, they will return to the Hospital.

12. Mr. Hinckley will not be allowed any contact with Leslie DeVeau, either in person or by telephone, during the course of the conditional release. Any contact with Ms. DeVeau will be considered a violation of Mr. Hinckley's conditional release, and Mr. Hinckley will be returned immediately to the Hospital.

13. Mr. Hinckley will continue to receive psychotropic medication during these activities, and any failure to self-medicate will be a violation of the conditional release and Mr. Hinckley will be returned immediately to the Hospital.

14. After each outing, Mr. Hinckley's parents will provide the Hospital with a completed "Individualized Relapse Prevention Plan Feedback From Responsible Person Supervising Patient While On Conditional Release" form.

15. Mr. Hinckley will fill out the "Individualized Relapse Prevention Plan Feedback From Patient While On Conditional Release" form within two hours of returning to the Hospital after each outing.

16. The treatment team will interview Mr. Hinckley and his parents after each outing. The Hospital will write a detailed report following each visit and submit that report under seal to the Court. That report will be provided to both counsel for the defense and counsel for the government. The Hospital will continue to submit a report after each visit even if it eventually does not submit a

detailed itinerary prior to each visit, as discussed in Paragraph 3 of this Order.

17. Mr. Hinckley and his parents will stay at the Hinckleys' residence, and Mr. Hinckley will not be permitted to leave unless accompanied by at least one parent or unless his time spent alone is part of the therapeutic plan devised by the Hospital prior to the visit and submitted to the Court in accordance with Paragraphs 1 and 3 of this Order. Mr. Hinckley will not be permitted to leave his parents' supervision except under the conditions stated. Any attempt to do so would constitute a violation of his conditions of release.

18. Should Mr. Hinckley fail to adhere to any of the conditions of release imposed on him by this Order, this conditional release will be terminated immediately.

19. The Hospital may not seek further relief under D.C. Code § 24-501(e) until the successful completion of the seven visits authorized in this Order.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: December 30, 2005

cc: Thomas Zeno, Esq.
Assistant United States Attorney
555 4th Street, NW
Room 5243
Washington, DC 20530

Sarah Chasson. Esa.
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530

Barry Wm. Levine, Esq.
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, NW
Suite 800
Washington, DC 20037

Jodi Trulove, Esq.
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, NW
Suite 800
Washington, DC 20037

Tanya Robinson, Esq.
D.C. Corporation Counsel's Office
64 New York Avenue, NE
Washington, DC 20002