UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :      CRIMINAL NO. 81-306(PLF)
     :
           v.                    :
     :
JOHN W. HINCKLEY, JR.            :

GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO MOTION
BY THE HOSPITAL AND MR. HINCKLEY TO VACATE 1987 STIPULATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following supplemental opposition to the request of the Hospital and Mr. Hinckley to vacate the 1987 Stipulation.

SUMMARY

The 1987 Stipulation should remain in place because it maintains a balance between the Hospital's discretion to allow Mr. Hinckley to take trips into the city under supervision and the need for law enforcement to plan for Mr. Hinckley's movements in the District of Columbia.  For instance, since the 1999 decision of the Court of Appeals that B-City trips may occur without court approval, Mr. Hinckley has completed more than 200 supervised trips into the community without hindrance from the Stipulation.  During this time, Mr. Hinckley also has exercised expanded conditions of release into the community without Hospital supervision.  Meanwhile, law enforcement has been able to use the time provided by the notice to coordinate surveillance of Mr. Hinckley with plans for the protection and movement of prominent persons.

Although the Court retains equitable power to modify or vacate a Stipulation for good cause, none has been shown in this case.  The Stipulation was reached at arms' length because it

arose during the tense negotiations surrounding the Hospital's withdrawal of its 1987 request for conditional release.  During the negotiations, the Hospital was represented by separate counsel even though it was part of the federal government at the time;  and this separate representation was consistent the Hospital's independent statutory authority to request releases for Mr. Hinckley which is not subject to prior review by the United States Attorney's Office.  Further, modification is not warranted because immediately after its transfer to the District of Columbia, the Hospital adopted the Stipulation without requesting a modification.  Moreover, because  Mr. Hinckley failed on two occasions to challenge the Stipulation on appeal, modification is not warranted because the Stipulation is either the law of the case or subject to the derivative waiver doctrine, or both.  On the other hand, the Stipulation should remain in place because it has allowed law enforcement to coordinate its activities in the District of Columbia.  In addition, law enforcement has provided reports of observations of Mr. Hinckley which have been available to the Hospital and the Court over the years.

BACKGROUND

In late 1986, the Hospital provided a visit into the community under the supervision of Hospital staff (a B-city trip).  The Hospital notified the Secret Service about the trip before it occurred.  This was Mr. Hinckley's first trip into the community since he had been confined to the Hospital after his trial.

On March 23, 1987, the Hospital requested a limited conditional release for Mr. Hinckley in the custody of his parents but without Hospital supervision.

On April 7, 1987, the government requested a hearing on the conditional release.  In its pleading the government also stated its position that a court decision on release was necessary even for B-City trips.  Mr. Hinckley opposed this position.

On April 13, 1987, the release hearing began.  During the testimony of Dr. Glenn Miller, the Court and the government learned for the first time that Mr. Hinckley had written to Ted Bundy and had asked for the address of Charles Mason.  Ex. 1 at  40-41, 43, 51. The prosecutor, Roger Adelman, was surprised even though he had been in negotiations with the Hospital about providing correspondence of Mr. Hinckley in response to a subpoena he had issued already.  Id. at 41-42.  Upon the request of the prosecutor, the Court agreed to order the Hospital to produce immediately the materials discussed by Dr. Miller.  Id. at 43-48, 61.  The Hospital was represented during the hearing by Ann O'Regan Keary, who now is an Associate Judge of the Superior Court.  Id. at 60-61.

On April 15, 1987, the Hospital withdrew its request for conditional release based upon the need to review materials found in Mr. Hinckley's room.  Ex. 2; Ex. 3 at 2.  These materials included 57 pictures of Jodie Foster as well as Mr. Hinckley's diary in which he said, among other things:  "Psychiatry is a guessing game and I do my best to keep the fools guessing about me. They will never know the true John Hinckley. Only I fully understand myself."

After withdrawal of the Hospital's request was announced, the prosecutor, Mr. Hinckley's counsel, counsel for the Hospital, and the Court began discussing the manner in which the materials would be preserved.  Ex. 3 at  3-21. During the discussion counsel for the Hospital suggested procedures differing from the position of the prosecutor, id. at 17-19; and even objected to one of the proposals  made by the government, id. at 20-21.

3

Near the end of the hearing on April 15, 1987, the prosecutor raised the issue of whether a B-City visit would be proposed.  Id. at 22.  Counsel for the Hospital said no trip currently was planned, but, if one were planned, the Hospital would provide advance notice to the government as it had previously.  Id. at 23.

During the week following the hearing, the United States Attorney's Office and counsel for the Hospital worked out the details of what would become the Stipulation.  The Stipulation was submitted for approval to the Honorable Barrington D. Parker for approval without briefing or argument.

On April 24, 1987, Judge Parker signed the Stipulation.

On October 1, 1987, the federal government transferred control of St. Elizabeths Hospital to the District of Columbia government.

On July 19, 1988, the Hospital filed a notice that it would permit Mr. Hinckley to take a B-City trip.  In accord with the Stipulation, the notice was filed two weeks prior to the proposed date for the trip.

On July 20, 1988, the government requested a hearing on the B-City request and a hearing was scheduled to begin on August 12, 1988.

On August 12, 1988, the Hospital cancelled the proposed visit because of materials it had received on August 11, 1998.  Ex. 4.  These materials were letters and a drawing which the government was able to submit because of investigation performed by the Secret Service. Among other things in the letters, Mr. Hinckley called Charles Mason a prophet;  and he requested a drawing of Jodie Foster.  At a conference in chambers, the Hospital representative, Dr. Raymond Patterson, who was then the Forensic Services Administrator, thanked both parties

4

and the Secret Service for helping provide the materials for the Hospital's review.  Ex. 5 at 4.

Both in the letter to the Court and in the representations made by the Hospital in open court, the

Hospital said that it would  continue to provide notice under the terms of the 1987 Stipulation.

Ex. 4; Ex. 5 at 8.

It was nearly a decade before the issue of B-City visits arose again.  In August 1996, Mr.

Hinckley filed a motion in which he requested both a conditional release with his parents and that

the court vacate the 1987 Stipulation.  A hearing on this motion was held in June 1997 before the

Honorable June L. Green.  At the end of the hearing, the motion for release was denied.  United

States v. Hinckley, 967 F.Supp. 557, 563 (D.D.C. 1997).   In addition, the motion to vacate the

1987 Stipulation was denied on both mootness and substantive grounds.  Id.

Mr. Hinckley took an appeal from this decision.  Although he raised evidentiary issues

relating to the deliberative process of the Review Board, Mr. Hinckley did not appeal the denial

of his motion to vacate the 1987 Stipulation.  Hinckley v. United States, 140 F.3d 277 (D.C. Cir.

1998).  In its decision, the Court of Appeals noted that the district court had denied Mr.

Hinckley's request to vacate the 1987 Stipulation.  Id. at 282.

In December 1997, the Hospital notified the Court and the government that it proposed a

B-City visit in which Mr. Hinckley would be accompanied by staff during dinner with his parents

and girlfriend.  Based on the record from the previous hearing, this request was denied.  United

States v. Hinckley, 984 F.Supp. 35, 37 (D.D.C. 1997).  In her decision, Judge Green noted that

the Hospital had notified the government and the Court two weeks in advance of the visit "in

accordance with a long standing Court order."  Id. at 35.

Mr. Hinckley also took an appeal from this decision.  Mr. Hinckley prevailed on the issue
of whether the district court had a role in approving B-City visits because the Court of Appeals
decided that B-City visits are not subject to prior judicial approval.  <u>Hinckley v. United States</u>,
163 F.3d 647 (D.C. Cir.), <u>rehearing</u> <u>denied</u>, 174 F.3d 238 (D.C. Cir. 1999).  However, Mr.
Hinckley did not challenge the 1987 Stipulation on appeal.  To the contrary, the appellate court
made several references to the 1987 Stipulation, including:

> The Hospital was, however, obligated to notify the district court
> and the United States Attorney of Hinckley's outing under the
> terms of a stipulation entered into by the Hospital and the
> government in 1987, discussed below.   *See* Joint Appendix
> ("J.A.") at 77.

<u>Id.</u> at 64, n.2.

Since that decision of the Court of Appeals, the Hospital has continued to provide two
weeks' notice of Mr. Hinckley's B-City trips.  After one of these trips in 2000, law enforcement
provided information to the Hospital regarding the materials in which Mr. Hinckley took an
interest including <u>Dutch: A Memoir of Ronald Reagan</u> and a CD by a group called the Dead
Kennedys.

### ARGUMENT

Mr. Hinckley has exercised B-City privileges more than 200 times since 1999 without
any interference caused by operation of the 1987 Stipulation.  These visits were planned and
executed at the Hospital's discretion, and the Hospital provided two weeks' notice to the
government of these trips.  Despite a long record of coordination with law enforcement that goes
back to 1986, the Hospital wishes to modify the Stipulation.  The Court should deny the request.

The Stipulation resulted from intense negotiation.

The Hospital and the United States Attorney's Office agreed to the Stipulation in the wake of the Hospital's withdrawal of its request for a conditional release for Mr. Hinckley in 1987. When it was revealed on Monday, April 13, 1987, that Mr. Hinckley had been writing to at least one notorious person, the government convinced the Court to allow a subpoena to be served on the Hospital for materials of Mr. Hinckley. After conducting a search of Mr. Hinckley's room, the Hospital withdrew the request for conditional release in order to evaluate the materials that had been found. During the April 15, 1987, hearing when the withdrawal was announced, the government displayed its continuing interest in learning the timing of Mr. Hinckley's B-City privileges by placing on the record that it had discussed the matter with counsel for the Hospital. Counsel for the Hospital said that the Hospital had no plans for such a trip at that time, but it did not rule out such a trip in the future. Counsel for the Hospital agreed to give notice to the government if such a trip were decided upon, just as the Hospital had done for the first accompanied trip in 1986.

After the hearing, the government pressed the Hospital for an agreement to provide two weeks' notice of B-City visits. The government wanted this agreement in order to ensure that notice of B-City trips would be provided in future and in order to have the notice given early enough for it to be meaningful. Further, the government wanted the agreement in the form of a court approved stipulation, so that it would have as much force as possible. Negotiations about the stipulation were completed within one week of the hearing. The resulting Stipulation was submitted to the Judge Parker, who signed it on April 24, 1987.

Although the Hospital was part of the federal government at the time of the Stipulation, Mr. Hinckley is not correct when he claims that two agencies of the Executive Branch cannot legitimately be involved in a conflict that needs resolution by a court.  There are many instances of such interagency litigation.  *See, e.g.*, Dept. of Treasury v. Federal Labor Relations Authority, 494 U.S. 922 (1990) (Internal Revenue Service challenged order of FLRA requiring that it bargain with a union);  Udall v. Federal Power Comm'n, 387 U.S. 428 (1967) (Secretary of Interior challenged FPC's grant of a license to construct a hydroelectric power plant);  Ford Motor Co. v. Interstate Commerce Comm'n, 714 F.2d 1157 (D.C. Cir. 1983) (Dept. of Defense challenged rate decision of ICC);  United States v. United States, 417 F.Supp. 851 (D.D.C. 1976) (same).  The test for determining whether a case and controversy existed in such matters was whether the dispute involved matters traditionally resolved by courts and whether the setting assured a genuinely adverse relationship.  United States  v. Federal Maritime Comm'n, 655 F.2d 247, 253 (D.C. Cir. 1980) (Dept. of Justice challenged revenue pooling arrangement approved by FMC), citing United States v. Nixon, 418 U.S. 683, 696-697 (1974) (Special Prosecutor sought enforcement of subpoena issued to the President).  *See also*, United States v. ICC, 337 U.S. 426, 429-431 (1949) (discussing ability of United States to challenge the Interstate Commerce Commission over shipping rates charged the government).

In this case the Hospital and the United States Attorney's Office had sufficiently adverse interests to ensure that the Stipulation resulted from arms' length negotiations.  The Hospital was not subservient to the United States Attorney's Office.  During both the hearing and the negotiations about the amount of notice which would be given for future B-City trips, the Hospital was represented by its own counsel who spoke directly to the Court as the representative

8

of the Hospital and who felt free to disagree with the prosecutor.  Counsel's role was consistent

with the Hospital's independent statutory authority to make recommendations directly to a court

for release of a person found not guilty by reason of insanity.  Pursuant to 24 D.C. Code § 501,[1]

the Hospital's decisions were not subject to prior review by the United States Attorney's Office.

Instead, the Hospital could file the requests it felt appropriate subject to a later objection by the

United States Attorney.

Of course, the Stipulation was not reached in a vacuum.  There were intense negotiations

on a number of matters including the details of a sealing and access order regarding the materials

found in Mr. Hinckley's room.  The prosecutor also objected to the Hospital's failure to provide

pre-hearing notice to the Court and the government of Mr. Hinckley's writings.  Ex. 3 at  10.

This criticism, compounded by the troubling finding that Mr. Hinckley had photographs and a

diary of which the Hospital was unaware, placed the Hospital in a defensive position about the

adequacy of its supervision of Mr. Hinckley.  Moreover, the Hospital already had evidenced its

desire to provide notice of Mr. Hinckley's B-City trips because it had done so for Mr. Hinckley's

first trip in late 1986 and it had announced in court that it intended to provide such notice in the

future.  The government was pressing its position on all these issues.  Under these circumstances,

it was not surprising that the Hospital agreed to the Stipulation with reluctance.  Undoubtedly,

the Hospital would have preferred to reserve the option of providing notice when and how it

pleased.  However, given the tense negotiations occurring on several fronts and the pressures the

Hospital was facing, its agreement to the Stipulation resolved the matter of notice reasonably

between two parties that had differing interests.  Because stipulations often are the result of

---

[1]  Under the previous codification, the statute was found at 24 D.C. Code § 301.

negotiation and compromise, there is no reason to question the legitimacy of the agreement that was reached.

Mr. Hinckley also is not correct that he needed to be a signatory to the Stipulation in order for it to be effective.  The decision about the conditions under which an acquittee may exercise B-City privileges is committed to the discretion of the Hospital.  Hinckley, 163 F.3d 647.  The acquittee has no more authority over such a decision than the Court or the government.  Because it establishes the conditions of these visits, the Hospital may decide that one of the conditions will be notification to the United States Attorney's Office.  In fact, this is just what the Hospital did in 1986.  The Hospital could have continued to make such notifications unilaterally or it could have agreed to a memorandum of understanding with the United States Attorney's Office which affected Mr. Hinckley even though he was not a party to it.  *See generally*, United States v. Dorsey, 418 F.3d 1038 (9th Cir. 2005) (authority for police to arrest a trespasser at school was created by a memorandum of understanding between school and police department).  In this case, the Hospital went even further by signing a stipulation.  Nothing about this decision required Mr. Hinckley's involvement.

The Stipulation can be altered by the Court, but only for good cause.

The government concedes that this Court has the authority to modify the 1987 Stipulation under Fed. R. Civ. Pro 60 (5) which provides that relief from an order may be granted if "it is no longer equitable that the judgement should have prospective application."[2]  Although the Supreme Court originally took a strict position that such modifications were discouraged, the

_____

[2]  As the government stated in court, upon reflection and after review of Mr. Hinckley's reply memorandum, the government believes this matter properly is considered as a request to modify a stipulation rather than as a 501(e) or (k) motion.

10

Court of Appeals has recognized that current practice provides greater discretion in the court to modify stipulations.  United States v. Western Electric Co., 46 F.3d 1198, 1202-1204 (D.C. Cir. 1995).   However, even under the new flexibility, the party seeking a change has the burden to show "either a significant change in factual conditions or in law."  Id. at 204, quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992).  Only after a party has carried its burden of showing changed facts or law warranting modification should a court consider whether the proposed modification is "suitably tailored to the changed circumstance."  Id., quoting Rufo, 502 U.S. at 391.

In this case neither the Hospital nor Mr. Hinckley has carried the burden to justify a modification.  The purpose of the Stipulation was to permit the Hospital to propose releases for Mr. Hinckley while allowing the government adequate time to prepare for the releaseas. Although it is true that the stipulation has been in effect for twenty years, that fact does not, in and of itself, mean that the stipulation is outdated.  To the contrary, the government views the Stipulation as time tested.  It has done precisely what it was designed to do.  Further, the Stipulation has not been harmful to Mr. Hinckley.  For instance, even though the B-City trips on short notice for sporting events have never been available to Mr. Hinckley, he has been able to exercise many other privileges at the Hospital, up to and including four day long trips to visit his family off the Hospital grounds.  There is no showing that the absence of B-City trips on short notice has harmed Mr. Hinckley's progress.  As for B-City trips that can be planned longer in advance, they still are available to Mr. Hinckley.  As demonstrated by Gov't Ex. 07-9, the notice requirement is easily satisfied.  During the past eight years, the Hospital has provided more than 200 such trips for Mr. Hinckley and others at the Hospital.  There is no explanation why the

11

process that has worked well for the Hospital, Mr. Hinckley, and law enforcement should be changed now.  Neither the Hospital nor Mr. Hinckley has shown, for instance, how it is in the interest of Mr. Hinckley or in the interest of law enforcement to have Mr. Hinckley able to attend events at public venues such as the Verizon Center on just a couple of hours notice.

<u>The Hospital has accepted the Stipulation.</u>

Weighing in favor of maintaining the 1987 Stipulation is the fact that, after the federal government transferred control of St. Elizabeths  to the District of Columbia on October 1, 1987, the Hospital continued to abide by the terms of the Stipulation without seeking a modification. The Hospital first gave two weeks' notice of a B-City trip as a District entity in 1988.  When the Hospital's planned B-City visit was withdrawn that year, the Hospital reiterated its intent both in writing and in open court to continue abiding by the Stipulation.   The Hospital has continued to give notice to the government of Mr. Hinckley's B-City trips since that time.

<u>The 1987 Stipulation is the law of the case and/or subject to the derivative waiver doctrine.</u>

Strongly militating against changing the 1987 Stipulation is the fact that it is the law of the case because Mr. Hinckley sought to have it vacated at the 1997 hearing, but, when his motion was denied, Mr. Hinckley failed to appeal that decision.  The Court of Appeals discussed the law of the case doctrine in <u>Kimberlin v. Quinlan</u>, 199 F.3d 496 (D.C. Cir. 1999):

> In this case, we are called upon to review the propriety of the *District Court*'s application of the law-of-the-case.   Thus, there is no occasion to invoke the so-called "derivative waiver" doctrine. <u>Crocker v. Piedmont Aviation, Inc.</u>, 49 F.3d 735 (D.C.Cir.1995), suggests nothing to the contrary.   The derivative waiver principle described in <u>Crocker</u> applies where a party fails to appeal an appealable issue and then raises the issue for the first time in a *subsequent appeal*.   *See id*. at 739-40.   In that circumstance, neither the District Court nor the appellate court has the

> opportunity to apply the law-of-the-case.   Here, appellants failed
> to appeal an appealable issue and then raised the issue for a second
> time before the District Court.

Id. at 500.  That is precisely the situation in the instant case.  In June 1997 Judge Green declined

to vacate the 1987 Stipulation on both mootness and substantive grounds.  Hinckley, 967 F.Supp.

at 563.  On appeal, Mr. Hinckley did not challenge that decision.  Instead, he focused on the issue

of whether the deliberative process privilege applied to the Review Board.  Hinckley, 140 F.3d at

282.  Now he wishes to challenge the Stipulation anew, but he cannot do so because the

Stipulation has become the law of the case.

Not only that, but Mr. Hinckley's failure to challenge the Stipulation in the trial court in

December 1997, and in the subsequent appeal, means that the Stipulation also is protected by the

derivative waiver doctrine.  That is so because, by failing to challenge the operation of the

Stipulation in either of the two appeals he took in 1997, Mr. Hinckley waived his objection to it.

See Crocker, 49 F.3d at 739.

Of course, neither the law of the case doctrine nor the derivative waiver doctrine is an

"absolute preclusion" to modification.  Kimberlin, 199 F.3d at 504, quoting Crocker, 49 F.3d at

739.  The Court also must examine the benefits of the Stipulation in order to determine whether

it should remain in force.

The 1987 Stipulation is Valuable.

The two weeks' notice is valuable to the government because it allows the opportunity for

planning by the United States Attorney's Office and by law enforcement.  Even though the

government has not been able to contest the Hospital's decisions about B-city privileges since

1999, law enforcement continues to rely upon the notice when planning the surveillance of Mr. Hinckley in the District of Columbia.

As the Court is aware, security in the District of Columbia at this time is incredibly complex, much more so than in 1987 when two weeks' notice was agreed upon.  Law enforcement understandably retains an interest in the movement of Mr. Hinckley in the District of Columbia, as Mr. Hinckley shot President Reagan as part of an assassination attempt during which he also shot Mr. Brady, Officer Delahanty, and Agent McCarthy.   Not only did the attempt occur in the District of Columbia, a city in which Mr. Hinckley had moved around prior to the shooting, but the District of Columbia is full of prominent persons who receive protection. Movements of these prominent persons must be coordinated among various law enforcement agencies within the District of Columbia.  The need for the law enforcement community to prepare and respond to all types of security risks, above and beyond the presence of Mr. Hinckley at an event, makes it paramount that law enforcement has notice of Mr. Hinckley's activities within the District of Columbia.  Mr. Hinckley's unplanned arrival at an event could disrupt carefully laid security plans, potentially resulting in unwanted attention being drawn to Mr. Hinckley

Further, law enforcement has been a service to both the Hospital and the Court by providing surveillance reports to the Court and to the Hospital of Mr. Hinckley in the District of Columbia.  In 2000, these reports permitted important information to be discovered regarding the troubling items Mr. Hinckley examined while on a B-City trip. All the while, the two weeks' notice permits law enforcement the necessary notice to prepare its security and surveillance plans.

14

Modification is an equitable rather than a legal issue.

Mr. Hinckley is not correct in arguing that the Stipulation is void *ab initio* because it interferes with a decision committed to the Hospital.  The notice provision of the Stipulation does not involve the Court in the decision about whether Mr. Hinckley should be permitted B-City privileges.  Neither does the Stipulation involve the government in that decision.  Rather, the details of the B-City trips remain committed to the discretion of the Hospital.  It is no more a violation of the law of conditional release to for the Hospital to provide advance notice under the 1987 Stipulation than it was for the Hospital to provide advance notice in 1986, at the time of the first B-City visit.  Certainly, the Court of Appeals gave no indication that it was troubled by the Hospital's agreement to provide notice of Mr. Hinckley's trips when it decided that the Hospital had sole discretion to establish the terms of B-City trips.  *See* Hinckley,163 F.3d at 647, n.2 ("The Hospital was, however, obligated to notify the district court and the United States Attorney of Hinckley's outing under the terms of a stipulation entered into by the Hospital and the government in 1987").

In sum, the Hospital always has agreed to provide notice of Mr. Hinckley's trips.  The Hospital agreed to the time period of two weeks in the 1987 Stipulation, and it has abided by that agreement for twenty years.  Mr. Hinckley challenged the Stipulation, lost in the trial court, and abandoned the issue on appeal.  Whether viewed as law of the case or waiver, the Stipulation is well entrenched and serves both law enforcement and the Court well without unduly burdening Mr. Hinckley's progress.  The Court should exercise its discretion to maintain the 1987 Stipulation.

WHEREFORE, the motion of the Hospital and Mr. Hinckley to vacate the Stipulation should be denied.[3]

Respectfully submitted,

Jeffrey A. Taylor
United States Attorney
D.C. Bar No. 498610

By:    /s/ Attorney's Typed Signature
Thomas E. Zeno
D.C. Bar No. 348623
Assistant United States Attorney

/s/ Attorney's Typed Signature
Sarah Chasson
D.C. Bar No. 448996
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530

---

[3]  We wish to acknowledge the contributions of Jordan Segall, a Junior at American University in Washington, D.C., in the preparation of this memorandum.