OLSEN/GeoK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,  )

           Plaintiff,  )

       v.         )  Criminal Case No. 81-0306

JOHN W. HINCKLEY, JR.,  )

         Defendant.  )

                       Washington, D. C.
                       Monday April 13, 1987

The above-entitled action came on for hearing on limited conditional release before the Honorable BARRINGTON D. PARKER, United States District Court Judge, in the Ceremonial Courtroom, commencing approximately 10:00 o'clock, a.m.

APPEARANCES:

    For the plaintiffs:

    JOSEPH diGENOVA, ESQ.
    United States Attorney
    ROGER M. ADELMAN, ESQ.
    JOHN OLIVER BIRCH, ESQ.
    THOMAS E. ZENO, ESQ.
    TIMOTHY REARDON, ESQ.
    JOHN M. FACCIOLA, ESQ.
    Assistant United States Attorneys
    555 Fourth Street, NW.
    Washington, D. C.  20001
    (202) 272-9022; 633-4925

**M. EUGENE OLSEN. C.S.R.**
Official Reporter. U. S. District Court
UNITED STATES COURTHOUSE
WASHINGTON, D. C. 20001

(202) 755-1920

1          APPEARANCES (continued):

2               For the Defendant:

3               VINCENT J. FULLER, ESQ.
                JUDITH A. MILLER, ESQ.
4               Williams & Connolly
                839 17th Street, NW.
5               Washington, D. C.
                (202) 331-5091; 331-3048

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        P R O C E E D I N G S

2            THE DEPUTY MARSHAL:  All rise.

3            MR. ADELMAN:  Good morning, Your Honor.

4            THE DEPUTY CLERK:  Criminal Case No. 81-306, United

5    States v. John W. Hinckley, Jr.

6            Mr. Joseph diGenova, Mr. Roger Adelman, Mr. Reardon,

7    John Oliver Birch, Mr. Thomas Zeno, Mr. Timothy Reardon and

8    Mr. John Facciola for the Government.

9            John Fuller and Miss Miller for the defendant.

10            MR. ADELMAN:  Ready, Your Honor.

11            MR. FULLER:  Ready, Your Honor.

12            THE COURT:  Counsel, this matter comes before the

13    Court this morning on the application of the authorities at

14    St. Elizabeths Hospital to grant a limited conditional release

15    and a letter was ---

16            (The defendant entered the courtroom.)

17            THE COURT:  --- and a letter was lodged with the

18    Clerk of the Court on March the 27th of this year setting

19    forth not with any degree of clarity what the hospital

20    sought and as far as the Court knows, there is as of this hour

21    no additional memoranda or letter has been lodged with the

22    Court spelling out with any more clarity than that which was

23    indicated in the March 27th letter.

24            The burden of proof, the burden of persuasion, the

25    burden of going forward is with the applicant and, Mr. Fuller,

1  without them having been colored by the testimony of other

2  witnesses, and it is not unusual and I think that particularly

3  in this case where the two experts interact in a sense, we have

4  a right to do that and ask Your Honor to exercise its discre-

5  tion in that way.

6          It is critically important, we think, so that the

7  Government and the defense can have a fair hearing here.

8          THE COURT:  You have everything that Dr. Miller has

9  generated.  You have everything that Dr. Turkus has generated

10  over the last two or three years, don't you?

11          MR. ADELMAN:  With all due respect, of course, they

12  haven't heard the questions that the counsel are going to ask

13  and that is the reason for the rule on witnesses.

14          THE COURT:  I will deny the request.

15          MR. ADELMAN:  Thank you.

16  Whereupon,

17                    GLENN H. MILLER, M.D.

18  was called as a witness by counsel on behalf of the defendant

19  and, having been duly sworn, was examined and testified as

20  follows:

21          THE COURT:  You may proceed.

22          MR. FULLER:  Thank you, Your Honor.

23                    DIRECT EXAMINATION

24      BY MR. FULLER:

25      A   Dr. Miller, if you would remember to speak into the

1      If you would, compare or contrast your observa-

2  tion of today with that of 1982.

3      A    Well, his judgment is certainly, certainly

4  improved.

5      I mean he no longer has fantasies about joining

6  Jodie Foster.

7      He no longer believes he is a hero for attempting

8  to shoot the President of the United States.

9      He no longer sees people as some kind of shadow-

10  box figures.

11      In all of that he has changed, but his judgment

12  is not perfect, however.

13      He still gets himself involved and has gotten

14  himself involved in writing letters to people, responding to

15  some of the characters that write to him at the hospital,

16  getting involved, which I don't think is very prudent, in

17  writing editorials for, I think it was "Nation," and things

18  like that that he seems, tends, to in some naive way, allow

19  himself to do.

20      Q    Are there any particular examples that come to

21  your mind as evidence of that?

22      A    Yes.   I note some of them in my report.

23      As I said, he has responded to many people who

24  have asked him for letters.  He writes letters to some of

25  his pen pals.

8

1          He has written recently a letter to, I think

2    his name is Bundy, a convicted mass murderer in Florida,

3    expressing his sorrow, as I understand it, his feelings of

- 4    the awful position that Bundy must be in.

5          He has written a letter --

6          THE COURT:  Is this in your recent --

7          THE WITNESS:  No.  I learned of this after the

8    report, after the report.

9          I learned of the Bundy business from Dr. Turkus.

10          And I learned of the other one that I am about

11    to say also from Dr. Turkus.

12          I had a chance to talk to Mr. Hinckley about --

13          THE COURT:  Keep your voice up.

14          THE WITNESS:  Yes.

15          He was contacted -- I am not sure how long ago.

16    Some man sent him a personal letter asking him to write a

17    review of "Taxi Driver."

18          He responded that he did not want to write a

19    review of "Taxi Driver," that he didn't like the movie

20    "Taxi Driver" and that he did not want to have anything to

21    do with it.

22          The man also said something about Charles Manson

23    being interested in communicating with Mr. Hinckley, but he

24    thought that that was an absurd thing to get involved with

25    and he was somewhat fearful because he had received a letter

1    from Squeakie Fromme.

2              THE COURT:  Spell Fromme.

3              THE WITNESS:  I am not sure.  F-r-o-m-m-e.

4         Some years before.  And did not want in any way

5    to get involved with such a thing and his fears that they

6    were trying to involve him in something like that.  So he had

7    requested Mr. Manson's address.

8              So far as I know he has never written a letter

9    to Mr. Manson.

take 3 ends 10            (The proceedings continue on the following page.)

OLSEN/GeoK
rush copy
1

40

SA v. Hinckley[2]
4-13-87
3

2

_4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

THE COURT:  Come to the Bench, counsel.

(At the Bench:)

THE COURT:  Do you have any reaction to ---

MR. ADELMAN:  Your Honor, we never received any of
this material.  This is all new to us and I admit we sent a
comprehensive subpoena to the hospital seeking just that infor-
mation, letters and so

MR. FULLER:  We were not provided with that at all.
I don't think there is any record in existence, Your
Honor.

THE COURT:  He got it, he said, from Dr. Turkus.

MR. FULLER:  No, the information.  There is no docu-
ment that I am aware of that relates to either of these inci-
dents.

THE COURT:  Yes, but these people shouldn't -- the
Government shouldn't be surprised, shouldn't be aware of this
testimony at the last minute.

MR. ADELMAN:  I might -- you also point out we
interviewed Dr. Miller on Thursday and he didn't tell us about
that.  I talked to him yesterday, Your Honor, on the telephone.

MR. FULLER:  I just learned this.---

THE COURT:  Yes, but you know ---

MR. FULLER:  --- yesterday and I talked to Dr. Miller
and told him last night what I heard.

MR. ADELMAN:  I am sorry.  I didn't hear Mr. Fuller.

1    MR. FULLER:  I talked to Dr. Miller yesterday after-

2  noon late after I learned this and I didn't -- the other

3  thing -- the Manson incident, I had been told about that when

4  I interviewed Dr. Turkus and I am sure Mr. Adelman was, too.

5    MR. ADELMAN:  No, sir.

6    THE COURT:  What do you want?

7    MR. FULLER:  Your Honor, ---

8    MR. ADELMAN:  What ---

9    THE COURT:  What are you asking?

10    MR. ADELMAN:  No. 1, we want these materials pro-

11  duced at this time.

12    MR. FULLER:  There are no materials.

13    MR. ADELMAN:  But the hospital is here and they

14  were supposed to respond to a duces tecum two weeks ago

15  and we didn't see any of these materials.

16    And they also produced under that subpoena letters

17  that we asked for and we didn't get any of these and had no

18  indication of that, and we have negotiated and discussed

19  this with hospital counsel.

20    I would also point out, as I have heard this testi-

21  mony, Dr. Miller is indicating that Mr. Hinckley received

22  certain letters, so I would presume that they are available.

23    MR. FULLER:  I don't know the subpoena was directed

24  to Mr. Hinckley.  I don't know the hospital searched his

25  premises and produced any documents.

1          MR. ADELMAN:   The difficulty with that, Your Honor,

2    is Dr. Turkus apparently took this within her judgment when

3    she was talking to Mr. Hinckley now and Dr. Miller knows

4    about it and the hospital never produced it for us and, as

5    I say, we talked to Dr. Miller on two occasions and we never

6    learned of that.

7          MR. diGENOVA:   Your Honor, I want to say the

8    Court is obviously entitled to a full record, to have all

9    the facts before it, and these new revelations are clearly

10   within that scope and we need time to have this information and,

11   if necessary, issue a subpoena to Mr. Hinckley if that is

12   what Mr. Fuller wants.

13          This Court needs all the facts to make this very

14   sensitive decision.

15          THE COURT:   This is a bench conference.

16          MR. diGENOVA:   I apologize, Your Honor.

17          MR. FULLER:   Your Honor, the reason I brought it

18   out, I realized it was significant and I didn't want it not

19   to come out, but I am not aware of any documentation that

20   exists that would relate to this.

21          MR. ADELMAN:   I think we are entitled to issue a

22   subpoena duces tecum to the hospital and to Mr. Hinckley.

23   Your Honor, there is no Fifth Amendment issue involved here.

24   He has been tried and found "not guilty by reason of insanity"

25   and there are the subpoenas for documents to him, can run without

1  interference from any privilege and we will prepare one forth-

2  with if the Court please.

3      THE COURT: What with respect to his testimony he

4  has given?

5      MR. ADELMAN: Well, we need those materials to cross-

6  examine him.

7      THE COURT: Yes, but what with respect to the testi-

8  mony that he has given?

9      MR. ADELMAN: Well, at this point I would ask Your

10  Honor to strike it all.

11      THE COURT: Not all. You mean this last part?

12      Mr. Fuller, I read rather exhaustively just about

13  everything that is in this case as far as the medical record

14  is concerned and it was my understanding that Mr. Adelman

15  on behalf of the Government did issue a subpoena which was

16  -- I don't have it immediately before me, but which was

17  all-embrasive, and for Dr. Miller to get on the stand at this

18  late hour and give this testimony -- and apparently he has

19  talked with Dr. Turkus.

20      Now I didn't -- if I could have foreseen this

21  sort of testimony, I would have excluded Dr. Turkus from the

22  courtroom, but now she has had the benefit of it and he has

23  given it and it certainly comes as a surprise to me.

24      As I said, I read all of these records pretty

25  exhaustively and I saw no reference of it.

44

1      MR. FULLER:  I learned this myself last when I talked

2   to Dr. Turkus.

3      THE COURT:  Mr. Adelman said he talked to Dr. Miller

4   twice within the last three or four days, and Dr. Miller twice

5   within the last three or four days ---

6      MR. FULLER:  I think this only developed.  Dr.

7   Turkus spoke to Mr. Hinckley in the last week and asked if

8   there was any correspondence he should know about.

9      THE COURT:  This is what I will do.  I will caution

10   Dr. Miller to not refer to any conversation relative to

11   correspondence of Hinckley that he has had with Dr. Turkus

12   that is not a part of this record and which the Government

13   doesn't have.

14      MR. FULLER:  Your Honor, we still renew our request.

15      MR. ADELMAN:  We have a right to cross-examine him.

16   I think the Court has recognized the significance of this.

17      Here is Charles Manson who is a mass murderer and

18   Squeakie Fromm, a presidential assassin, Your Honor, and Mr.

19   Mundy, who is a mass murderer, all of whom have had some

20   contact with Mr. Hinckley.

21      There are apparently documents in the hospital's

22   possession.

23      Mr. Hinckley has fortuitously -- we are here with

24   this important problem.  These letters are critical to us to

25   demonstrate to Your Honor the dangerousness of this man

1   now and why this release is totally improper and should be decided

2          So at this juncture we have to ask the Court thru

3   its authorities to order protection of these materials and

4   either prepare a subpoena for Your Honor to sign or have Your

5   Honor order this production directly, but it is critical to

6   us.

7          MR. FULLER:  I am not aware of any communication

8   with Mr. Manson.  I believe I heard the testimony to be that

9   he received a letter from Miss Fromm some years ago.

10         MR. ADELMAN:  It doesn't matter, Mr. Fuller, because

11  it still bears on his present mental condition.

12         Your Honor, is a student of this case like no one

13  is and you know that this man has these problems that apparently

14  persist, so we have a critical need for this information and

15  Your Honor has a critical need for it in order to rule

16  properly on this application, so we request the Court require

17  production immediately so that we can conduct an appropriate

18  cross-examination of the doctor.

19         THE COURT:  All right.  I will grant your request.

20         MR. ADELMAN:  Thank you.

21         THE COURT:  I am going to instruct him not to offer

22  any more testimony on this until the material is available,

23  any memorialization of comments that he has had with Dr. --

24  what is her name?

25         MR. ADELMAN:  Turkus.

1    THE COURT:  Turkus as well as any memoralization of

2    notes that she has had with Hinckley, that she has made as a

3    result.

4         MR. ADELMAN:  That is fine, Your Honor.

5         We are also requesting the actual documents them-

6    selves be produced by the hospital who has a legal represen-

7    tative here or by Mr. Hinckley.

8         THE COURT:  Who is the legal representative?

9         MR. ADELMAN:  Well, Miss Ann Keary is here.  She

10   is their general counsel and she is here in the front row.

11        THE COURT:  All right.  You make out a subpoena and

12   serve it on her.

13        MR. ADELMAN:  We are, of course, in another building,

14   Your Honor, but we will have that done.

15        THE COURT:  All right.

16        MR. ADELMAN:  We will need a little time to consult.

17        Would Your Honor direct an order to Mr. Hinckley

18   to produce such letters?

19        THE COURT:  All right.

20        MR. ADELMAN:  Fine.

21        THE COURT:  Now what do you want to say?

22        MR. FULLER:  I am a little bit unsure how I am going

23   to proceed with Mr. Miller.  If I can ask him questions about

24   Bundy or Manson ---

25        MR. diGENOVA:  Your Honor, may I make a suggestion

1    that, if I may -- if it please the Court, this situation

2    which there is no criticism of, Mr. Fuller here obviously,

3    we are talking about a development which just occurred on

4    the witness stand.

5           The documents which he is testifying about and the

6    facts that that testimony reflects seem to me to be so vital

7    to the issue of this hearing, which is whether or not Mr.

8    Hinckley should be released into the community without any

9    escort, that really that material should be produced before

10   anything else occurs and it perhaps may be that we need a

11   continuance.

12          THE COURT:  We will see what we can accomplish here

13   today.  We will see what we can accomplish here today without

14   any adjournment or postponement of the hearing.

15          MR. FULLER:  I just want to make the record clear.

16          THE COURT:  The Court is still in session.

17          MR. FULLER:  I am not clear of the existence of

18   any documents.

19          THE COURT:  Just go over and lean to them jointly

20   and tell---

21          MR. FULLER:  Don't make a public announcement.

22          THE COURT:  All right.

23          MR. FULLER:  Miss Miller just reminded me we learned

24   this morning that there may be two letters in Mr. Hinckley's

25   possession which relate to Bundy that he received from Bundy.

1            MR. ADELMAN:  Your Honor, ---

2            MR. FULLER:  They are in his possession now and

3    not in St. Elizabeths' possession.

4            MR. ADELMAN:  Your Honor, this is critical.  We are

5    going to ask Your Honor, No. 1, to order production of these

6    materials and give us an appropriate recess in order to examine

7    them.

8            We wouldn't make this application, Your Honor, unless

9    this case were of critical importance and that is why we

10   do it.

11           THE COURT:  Bundy, Fromm ---

12           MR. diGENOVA:  Manson.

13           MR. ADELMAN:  Manson, Your Honor, the three worst

14   murderers in recent times.

15           How do you quantify that?  Psychiatrically Dr.

16   Miller ---

17           In all seriousness, Your Honor, we would make that

18   application now.  We need the materials and we need the time.

19           THE COURT:  I will grant it.  I recognize Dr. Miller

20   as a very important witness and he will just have to make

21   himself available and will put it on the record.

22           MR. FULLER:  We are going to recess?  Is that what

23   you are going to do?

24           THE COURT:  No.  I want you to continue.  Can you

25   continue?

1              MR. FULLER:  Yes.

2              MR. ADELMAN:  Our request is that we recess now,

3    Your Honor, so that we can get the materials and make some

4    assessment here.

5              THE COURT:  I think there ---

6              MR. ADELMAN:  I think it will ultimately save time

7    now because otherwise we have to call Dr. Miller back.

8              THE COURT:  You are going to have to call him back

9    in any event.  So your application is to recess the matter now

10   and I think we can have a net saving of time.

11             MR. diGENOVA:  Your Honor, we cannot cross-examine

12   Dr. Miller at this point.

13             THE COURT:  Can you complete your direct examination

14   of Dr. Miller now and then come back and resume it once the

15   letters ---

16             MR. FULLER:  I can do that.

17             THE COURT:  This is what I suggest.

18             MR. diGENOVA:  If you want to finish direct, but

19   not have cross-examination.  Is that what you are suggesting?

20             THE COURT:  Yes.

21             MR. diGENOVA:  I think that is fine.

22             MR. ADELMAN:  We will prepare a subpoena for the

23   Court and an appropriate order.

24             MR. FULLER:  We have a problem of my proceeding

25   beyond the direct examination of Mr. Miller?

1              MR. ADELMAN:  That is right.  So I think a recess

2    will be indicated.

3              THE COURT:  Well, after that?

4              MR. ADELMAN:  After Dr. Miller.

5              MR. FULLER:  After Dr. Miller.

6              (In open court:)

7

1                    (In open court:)

2                  THE COURT: Where is Dr. Miller?

3                  Just a second, Mr. Fuller.

4                  Dr. Miller, the recent bench conference dealt

5 with the last bit of testimony that you gave concerning

6 statements attributed to the defendant, Hinckley, relative

7 to correspondence with, possible correspondence with a

8 person by the name of Bundy, a person by the name of Fromme,

9 and a person by the name of Manson, as well as conversations

10 that you have had with Dr. Turkus relative to Mr. Hinckley

11 and these three persons.

12                  Now, apparently this morning an all-embrasive

13 subpoena went out to the hospital relative to any correspondence

14 and all relevant records related to Mr. Hinckley.

15                  Now, the last several bits of testimony that

16 you gave about these three persons are not within the

17 records that the Court has nor are they in the records that

18 the Government has, and representations have been made that

19 conferences were had between you and the Government in the

20 last 24 or 36 hours.

21                  Now, in view of that, number one, you are not

22 to give any further testimony relative to these pieces of

23 correspondence and conversations that you had with Dr. Turkus

24 and possibly Mr. Hinckley concerning this matter at this

25 point.

w2

1            And the Court will take measures to have pre-

2  sented to the Government any correspondence that is out-

3  standing between the defendant, Hinckley, and the three

4  persons I have reference to as well as any notes that had

5  been developed by Dr. Turkus relative to any conversations

6  that she had with Mr. Hinckley and these three identified

7  persons.

8            In other words, the Government, I called them

9  to the bench --

10          Well, the Government is without benefit of an

11  opportunity, is deprived of an opportunity for effective

12  cross-examination because of this material that you have

13  given.

14          So you will not give any further testimony

15  relative to that.

16          Now Mr. Fuller will go around those problems

17  and attempt to complete your direct examination, and the

18  cross-examination of the Government will be deferred until

19  the Government has had opportunity to see and review the

20  material.

21          It is unfortunate that this turn of events took

22  place because you will have to come back.

23          Is there anything else, counsel?

24          MR. FULLER:  I will proceed, Your Honor, if I may.

25          THE COURT:  Is there anything else?

w3

1        MR. ADELMAN:  No, Your Honor.

2        THE COURT:  All right.

3        Now may I make this -- An order will be entered

4   directing the defendant to -- in light of your testimony --

5   directing the defendant to disgorge and present to

6   Mr. Fuller, if you haven't seen it, Mr. Fuller, as well as

7   to the Government the correspondence you have just referred

8   to, and an order will be entered directing Dr. Turkus to

9   turn over to the Government all information and any exhibits

10  that she has relative to the last-mentioned testimony that

11  you have given.

12        THE WITNESS:  Yes.

13        BY MR. FULLER:

14   Q     Dr. Miller, if you would please, we have talked

15  about depression, and we have talked about personal relation-

16  ships.  We have talked about judgment.

17        Are there other specific areas you can identify

18  for us in terms of your observations of Mr. Hinckley's mental

19  condition where you can draw a contrast between that condition

20  in 1982 and 1987?

21   A     Yes, there are.

22        Basically in 1982 I saw --

23        THE COURT:  Speak into the microphone, Doctor.

24        THE WITNESS:  I saw him have a psychosis or

25  psychotic syndrome, psychiatric syndrome.

Final take

Cook fols ow

THE COURT:   Doctor, just hold fast.

2        You may step down from the stand, but hold yourself

3   right over there.

4               (At the Bench:)

5        Today is the 13th.   What do I have for Wednesday?

6        Mr. Fuller, how are you fixed for Wednesday?

7        MR. FULLER:   I can make myself available.

8        THE COURT:   All right.

9        MR. ADELMAN:   We will be here.

10       THE DEPUTY CLERK:   You just have the two interviews,

11  Your Honor.

12       THE COURT:   That is in the afternoon?

13       THE DEPUTY CLERK:   2:30 and 3:30.

14       That is the only thing you have scheduled.

15       THE COURT:   You should have it by tomorrow. -- by

16  this afternoon.

17       MR. ADELMAN:   I hope so.

18       Your Honor, we will go back and draw up the orders

19  you directed in accordance with what you said and present

20  it to Mr. Miller -- read them to Mr. Fuller.

21       Yes, sir.

22       THE COURT:   All right.

23       MR. FULLER:   Thursday at 10 o'clock?

24       THE COURT:   I will set it at 9:30, Wednesday.

25       Does that make any problems?

1          MR. ADELMAN:  No, sir.

2          THE COURT:  Gentlemen, what I will do ---

3          Jim, remind me of this.  From here on out I will

4     enter a rule on witnesses.

5          MR. ADELMAN:  Very well.

6          THE COURT:  It is rather belated.  Remind me of

7     that, Jim, when I take the Bench Wednesday at 9:30.

8          MR. ADELMAN:  Thank you.

9          MR. diGENOVA:  Yes, Your Honor, thank you.

10         THE COURT:  In light of the developments relative to

11    this newly presented testimony this case will be continued

12    and with some degree of regret.

13         This case will be continued until Wednesday of this

14    week at 9:30 and, Dr. Miller, at that time the Government --

15    Mr. Fuller, in the event he overlooked any questions he

16    wishes to put to you on direct examination, he will be given

17    the opportunity to do that.  But the main purpose of the

18    hearing will be to permit the Government to cross-examine

19    you.

20         Now who represents the hospital?  Who is here

21    representing the hospital?

22         Come up.  Just come to the lectern, please.

23         MS. CAREY:  Good morning, Your Honor.

24         THE COURT:  Your name is what?

25         MS. CAREY:  Your Honor, I am Jan Carey from the

1    Legal Office of the hospital.

2              THE COURT:  A legal subpoena will be issued to the

3    hospital to make available certain materials and you will

4    honor the subpoena.

5              And if there is any problem, confer with Mr.

6    Adelman and you advise any staff member of the hospital to

7    cooperate with the subpoena.

8              MS. CAREY:  May I ask a question, Your Honor?

9              Will the subpoena be addressed to Mr. Hinckley as

10   well as to the hospital?

11             THE COURT:  Well, it will probably be addressed

12   both to Mr. Hinckley and to the hospital.

13             MS. CAREY:  Very well, Your Honor.

14             THE COURT:  Now meanwhile, pending this matter,

15   I don't think I need advise you, but pending this matter you

16   would take no steps to carry out what was proposed in Mr.

17   Henneberry's recent letter of March 27th?

18             MS. CAREY:  Yes, Your Honor.

19             THE COURT:  Surely.  All right, thank you.

20             Now, Dr. Miller, this will resume on Wednesday

21   morning at 9:30.

22             THE DEPUTY MARSHAL:  All right.

23             This Honorable Court stands adjourned.

24             (Whereupon, at 11:25 a.m. the Court adjourned,

25   to reconvene for further hearing at 9:30 a.m., Wednesday,

     April 15, 1987.)