1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - X
                            :
UNITED STATES OF AMERICA,   :
                            :
         VS.                :        CRIMINAL ACTION
                            :        NO. 81-306
JOHN W. HINCKLEY, JR.,      :
                            :
         DEFENDANT          :
                            :
- - - - - - - - - - - - - - X

                    WASHINGTON, D. C.

                    WEDNESDAY, APRIL 15, 1987

        THE ABOVE-ENTITLED MATTER CAME ON FOR HEARING BEFORE

THE HONORABLE BARRINGTON D. PARKER, UNITED STATES DISTRICT

JUDGE, AT 3:00 P.M.

    APPEARANCES:

        ON BEHALF OF THE GOVERNMENT:

                JOSEPH DI GENOVA, UNITED STATES ATTORNEY
                ROGER ADELMAN, AUSA
                JOHN OLIVER BIRCH, AUSA
                THOMAS ZENO, AUSA
                TIMOTHY REARDON, AUSA
                ROBERT R. CHAPMAN, AUSA
                JOHN FACCIOLA, AUSA

        ON BEHALF OF THE DEFENDANT:

                VINCENT FULLER, ESQUIRE
                JUDITH MILLER, ESQUIRE


                    GORDON A. SLODYSKO
                 OFFICIAL COURT REPORTER
                 4806-A  U.S. COURTHOUSE
                 WASHINGTON, D. C. 20001
                      (202) 535-3404

P R O C E E D I N G S

THE DEPUTY CLERK:  CRIMINAL CASE NO. 81-0306, UNITED

STATES VERSUS JOHN W. HINCKLEY, JR.  U. S. ATTORNEY JOSEPH

DI GENOVA AND MR. ROGER ADELMAN FOR THE GOVERNMENT, MR. VINCENT

FULLER AND MS. JUDITH MILLER FOR THE DEFENDANT.

MR. FULLER:  READY, YOUR HONOR.

MR. ADELMAN:  READY.

THE COURT:  JUST FOR THE RECORD, EARLY THIS AFTERNOON

THE COURT RECEIVED A LETTER FROM DR. PRESCOTT, THE

SUPERINTENDENT OF THE HOSPITAL, ST. ELIZABETH'S HOSPITAL, WHICH

ENDS WITH THE PARAGRAPH -- AFTER A RECITAL OF CERTAIN EVENTS

THAT HAD TAKEN PLACE, ENDS WITH THE PARAGRAPH, "FOR

ADMINISTRATIVE REASONS AND IN ORDER TO FURTHER ASSESS THE

CLINICAL SIGNIFICANCE OF WRITINGS AND OTHER MATERIALS BELONGING

TO MR. HINCKLEY WHICH WERE HERETOFORE UNEXAMINED BY THE HOSPITAL

STAFF, THE SUPERINTENDENT OF ST. ELIZABETH'S HOSPITAL

RESPECTFULLY REQUESTS THAT THE RECOMMENDATION FOR AN EASTER

VISIT FOR MR. HINCKLEY BE WITHDRAWN AT THIS TIME."

I COMMUNICATED THIS FACT, OR AT LEAST THAT I HAD

RECEIVED THIS MEMORANDUM TO BOTH COUNSEL FOR MR. HINCKLEY AND

COUNSEL FOR THE GOVERNMENT, AND I INDICATED TO THEM HOW I FELT

ABOUT THIS MATTER.  AND, MR. ADELMAN, YOU HAVE REQUESTED TO COME

BEFORE THE COURT?

I MAY SAY THAT PRIOR TO RECEIVING THIS LETTER, EARLY

THIS MORNING THE DOCUMENTS AND THE INFORMATION THAT WAS REQUIRED

1    OF THE HOSPITAL AND THE DEFENDANT WERE SUBMITTED TO THE COURT.

2          MR. ADELMAN:   THANK YOU.

3          YOUR HONOR, WE DID ASK TO BE HEARD ON ONE MATTER, AND

4    IT IS ONE OF SUBSTANTIAL SIGNIFICANCE IN LIGHT OF THE

5    DEVELOPMENTS THAT WE HAVE SEEN IN THIS COURT IN THE LAST FEW

6    DAYS.   THAT MATTER HAS TO DO WITH JUST WHAT YOUR HONOR

7    MENTIONED, WHICH IS THAT THE COURT ORDERED CERTAIN MATERIALS

8    FROM MR. HINCKLEY'S ROOM TO BE PRODUCED, OTHERS TO BE INDEXED,

9    AND THOSE MATERIALS WERE PRODUCED UNDER THE COURT'S ORDER AND

10   ARE IN CHAMBERS.   WE ASKED TO BE HEARD WITH RESPECT TO THOSE.

11         WITH REGARD TO THOSE, YOUR HONOR, WE HAVE AN ORDER WE

12   ARE GOING TO TENDER TO THE COURT THAT IS, WE BELIEVE, WHOLLY

13   WARRANTED IN THIS CASE, AND ASKS YOUR HONOR, UPON OUR

14   APPLICATION, TO ORDER THAT THE ORIGINAL COPIES OF THESE

15   MATERIALS, IN OTHER WORDS, EVERYTHING IN THE COURT'S CHAMBERS,

16   BE SEALED BY THE CLERK OF THIS COURT, AND FURTHER ORDER THAT

17   COPIES OF THE MATERIALS BE MADE AND THAT ONE COPY BE RETURNED TO

18   THE HOSPITAL, ANOTHER COPY GIVEN TO MR. HINCKLEY, A THIRD COPY

19   GIVEN TO THE UNITED STATES.

20         THE REASON FOR THIS APPLICATION, YOUR HONOR, IS, AS

21   INDICATED, THAT WE HAVE SEEN AND HEARD EVIDENCE ALREADY THAT

22   RAISES DOUBTS IN AT LEAST THE GOVERNMENT'S MIND AS TO THE

23   MANAGEMENT OF MR. HINCKLEY'S CASE AT THE HOSPITAL.   SECONDLY, AS

24   WE ALL KNOW, THE COURT HAS THE ULTIMATE RESPONSIBILITY HERE IN

25   MR. HINCKLEY'S CASE, NOT ONLY NOW, BUT IN THE FUTURE.   AS LONG

1    AS MR. HINCKLEY IS AT THE HOSPITAL, YOUR HONOR HAS JURISDICTION,

2    YOUR HONOR HAS THE RESPONSIBILITY AND YOUR HONOR HAS THE

3    OBLIGATION TO DECIDE WHEN AND IF HE IS RELEASED AND UNDER WHAT

4    CIRCUMSTANCES.

5    BECAUSE THESE MATERIALS ARE CRITICAL, WE BELIEVE, TO

6    THE COURT'S DETERMINATION NOT ONLY NOW, EVEN THOUGH THE ISSUE

7    HAS BEEN WITHDRAWN, BUT IN THE FUTURE FOR RELEASE APPLICATIONS,

8    WE BELIEVE THAT IT IS NECESSARY THAT THE COURT TAKE STEPS NOW TO

9    PRESERVE THESE MATERIALS BY VIRTUE OF THIS ORDER.  THE ORDER

10   WOULD NOT DENY A COPY OF THE MATERIALS EITHER TO MR. HINCKLEY OR

11   THE HOSPITAL FOR WHATEVER THERAPEUTIC OR PERSONAL REASONS THAT

12   THEY SEE FIT.  IT WOULD INSURE, HOWEVER, THAT THE ORIGINAL

13   COPIES REMAIN SEALED IN THE RECORD OF THIS COURT.  LIKEWISE, A

14   COPY OF THE MATERIALS WOULD BE GIVEN TO THE GOVERNMENT.

15   FOR THAT LAST REASON, OF COURSE, YOUR HONOR, WE HAVE AN

16   INDEPENDENT RESPONSIBILITY WITH REGARD TO THIS CASE TO BRING TO

17   THE COURT'S ATTENTION AT THE NEXT HEARING OR INQUIRY OUR VIEW OF

18   THE EVIDENCE.  WE HAVE AN INDEPENDENT RESPONSIBILITY, BECAUSE OF

19   THE MAGNITUDE OF THIS CASE, OF COURSE, TO KEEP THIS MATERIAL AND

20   MAKE USE OF IT WITH RESPECT TO FURTHER HEARINGS.

21   WHAT I'M SAYING, IN OTHER WORDS, IS THIS IS NOT THE END

22   OF THIS PROCESS.  THIS PARTICULAR APPLICATION HAS BEEN

23   WITHDRAWN, BUT I KNOW YOUR HONOR KNOWS THAT THE HOSPITAL IN MANY

24   CASES OFTEN COMES BACK IN A SHORT TIME, OR EVEN A LONG TIME

25   LATER, AND ASKS FOR ANOTHER EXAMINATION.

1      WE TAKE THIS MEASURE AND ASK YOUR HONOR TO TAKE THIS

2    MEASURE NOT WITHOUT PRECEDENT.  IN 1978, IN THE CASE OF UNITED

3    STATES VERSUS LEWIS ECKER, BEARING OUR COURT'S NUMBER 1481-67, A

4    SOMEWHAT SIMILAR EVENT OCCURRED.  I THINK I SHOULD RECOUNT IT TO

5    YOUR HONOR, BECAUSE IT'S IMPORTANT TO UNDERSTAND THE

6    SIMILARITIES.  THAT CASE INVOLVED MR. LEWIS ECKER, WHO IS A

7    PATIENT AT ST. ELIZABETH'S HOSPITAL.  HE HAD BEEN COMMITTED

8    THERE IN 1967 AFTER COMMITTING A MURDER OF THE SECRETARY OF

9    SENATOR PEARSON OF KANSAS.  HE REMAINED IN THE HOSPITAL ALL THAT

10   TIME.  THE HOSPITAL SOUGHT TO RELEASE MR. ECKER ON SEVERAL

11   OCCASIONS.  AND YOUR HONOR PROBABLY RECALLS THE NAME BECAUSE HE

12   IS THE SUBJECT OF THE ECKER CASES THAT WE HAVE ALREADY DISCUSSED

13   WITH THE COURT.  WELL, THERE WAS A HEARING HELD UPON THE

14   HOSPITAL'S APPLICATION UNDER SECTION 301(E) FOR RELEASE.  DURING

15   THE HEARING, IT DEVELOPED IN TESTIMONY IN FRONT OF JOHN LEWIS

16   SMITH OF THIS COURT THAT MR. ECKER HAD VAST AMOUNTS OF MATERIAL

17   OF A VERY BIZARRE SEXUAL NATURE IN HIS POSSESSION AT THE

18   HOSPITAL.  JUDGE SMITH DIRECTED THAT THAT MATERIAL BE BROUGHT TO

19   HIM.  HE SEALED IT ON OUR APPLICATION, YOUR HONOR.  AND TODAY IT

20   REMAINS SEALED IN THE VAULT OF THE COURT.

21      THE COURT:  YES.  BUT DID HE SHARE IT WITH THE

22   GOVERNMENT?  THAT'S ONE THING THAT YOU ARE ASKING HERE.

23      MR. ADELMAN:  WE ARE.  HE DID NOT.

24      THE COURT:  DID HE SHARE IT WITH THE GOVERNMENT?

25      MR. ADELMAN:  HE DID NOT, BECAUSE WE HAD ALREADY --

1   THE COURT:   THEN WHY SHOULD THE COURT SHARE IT WITH

2   YOU?

3   MR. ADELMAN:   BECAUSE WE ALREADY SAW IT.   WE SAW IT

4   FIRST.

5   THE COURT:   YOU HAVEN'T SEEN WHAT I'VE SEEN, HAVE YOU?

6   MR. ADELMAN:   NO, SIR.   BUT WE RECEIVED THE MATERIAL

7   AND GAVE IT TO JUDGE SMITH.   THE POINT IS, AND THE ONE I'M

8   GETTING TO IS THE PERMANENCY ASPECT, WHICH IS THE NEED TO HAVE

9   THIS MATERIAL PRESERVED.   JUDGE SMITH FELT, AND I THINK YOUR

10  HONOR WOULD ON THIS RECORD FEEL, THAT THERE IS A NEED FOR THE

11  COURT TO HAVE THE MATERIAL IN ITS FILE FOR THE FUTURE.   JUDGE

12  SMITH KEPT THAT MATERIAL BECAUSE, AS IT TURNED OUT, THERE WERE

13  FUTURE HEARINGS IN MR. ECKER'S CASE.   I THINK THERE HAVE BEEN

14  SEVERAL SINCE THEN.   AND FROM TIME TO TIME THAT MATERIAL HAS

15  BECOME RELEVANT.

16  I MIGHT ADD, MR. ECKER IS STILL AT THE HOSPITAL.

17  NOW, AS I SAY, THE APPLICATION IS TO THE COURT TO ISSUE

18  THE ORDER.   WE BELIEVE THERE IS RATIONAL AUTHORITY FOR IT.   IF I

19  CAN, I WILL HAND UP THE ORIGINAL COPY TO YOUR HONOR.

20  THE COURT:   HAVE YOU SHARED IT WITH MR. FULLER?

21  MR. ADELMAN:   I WILL.

22  THE COURT:   HAVE YOU SHARED IT WITH THE HOSPITAL'S

23  REPRESENTATIVE?

24  MR. ADELMAN:   I HAVE GIVEN COPIES BOTH TO COUNSEL FOR

25  MR. HINCKLEY AND COUNSEL FOR THE HOSPITAL, YOUR HONOR.

1    THE ORDER, AS INDICATED, WOULD SIMPLY TRANSMIT THE

2    ORIGINAL COPIES TO THE CUSTODY OF THE CLERK UNTIL YOUR HONOR

3    FURTHER DIRECTS AND, OF COURSE, HAVE COPIES MADE FOR THE PARTIES

4    AND THE HOSPITAL. WE BELIEVE IT'S FULLY WARRANTED HERE.

5    AND I MIGHT POINT OUT, YOUR HONOR, ONE REASON IN

6    PARTICULAR WE BRING THIS TO THE COURT'S ATTENTION IS THE SENSE

7    THAT THE GOVERNMENT HAS, AT LEAST, AND PERHAPS THE COURT SHARES,

8    THAT THERE HAS BEEN SOME DIFFICULTY WITH THE MANAGEMENT OF THIS

9    CASE OVER AT THE HOSPITAL. AND NOW THAT THESE MATERIALS ARE

10   HERE IN THE COURT, WE WANT TO BE ASSURED THAT THEY REMAIN HERE.

11   THE COURT: I DON'T KNOW WHAT SENSE YOU FEEL THAT I

12   HAVE. I DON'T HAVE THAT SENSE. YOU KNOW, THERE ARE PROBLEMS

13   AND YOU ALWAYS HAVE PROBLEMS WHEN HUMAN BEINGS ARE INVOLVED.

14   MR. ADELMAN: YES. I THINK YOUR HONOR IS DIRECTING FOR

15   A PARTICULAR EXAMPLE OR TWO. AND, OF COURSE, THAT GIVES RISE TO

16   THE ISSUE ABOUT THE BUNDY LETTERS. THE BUNDY LETTERS, OF

17   COURSE, WERE REVEALED FIRST MONDAY THROUGH THE EXAMINATION OF

18   DR. MILLER. YOUR HONOR CALLED US TO THE BENCH AND MADE INQUIRY

19   AND DIRECTED THE PARTIES TO LOOK INTO THAT. AND IT TURNS OUT

20   THAT THE BUNDY LETTERS BECAME KNOWN TO DR. TURKUS I BELIEVE ON

21   APRIL 7TH, 1987, BUT HAD NEVER BEEN REVEALED TO THIS COURT UNTIL

22   THE TIME DR. MILLER TESTIFIED ABOUT THEM. THESE ARE VERY

23   SERIOUS PROBLEMS IN A VERY SERIOUS CASE.

24   I MIGHT SAY, YOUR HONOR, WE ARE ASKING FOR THIS ORDER

25   BECAUSE IT REALLY RUNS TO THE COURT. THE COURT'S OBLIGATION IS

1    PARAMOUNT HERE.   YOUR HONOR, UNDER THE STATUTES AND UNDER THE

2    ECKER CASE, IRONICALLY, THE COURT OF APPEALS CASE IN ECKER, HAS

3    AUTHORITY TO CONDUCT INVESTIGATION AND INDEPENDENT

4    DETERMINATION.

5            NOW, YOUR HONOR HAS POINTED OUT ALREADY THAT THE

6    APPLICATION HAS BEEN WITHDRAWN, AND WE CONCEDE THAT.   BUT IN THE

7    FUTURE, MAY IT BE THREE MONTHS OR FOUR MONTHS OR TEN MONTHS OR A

8    YEAR, THE MATTER MAY BE BEFORE YOUR HONOR AGAIN.   AND WE POINTED

9    OUT EARLIER THAT MR. HINCKLEY'S WRITINGS SEEM TO BE A CRITICAL

10   FOCUS WHEN WE LOOK AT HIS MENTAL CONDITION.   WE WANT TO BE SURE

11   AND ASK YOUR HONOR TO BE SURE THAT THE WRITINGS ARE PRESERVED IN

12   A WAY THAT YOUR HONOR CAN REVIEW THEM IN AN APPROPRIATE FASHION

13   AND THE PARTIES CAN LITIGATE TO THE EXTENT THAT THEY CAN

14   PROPERLY DO SO WITH RESPECT TO THOSE WRITINGS.

15           WE BELIEVE THIS IS A MODEST REQUEST.   WE BELIEVE THIS

16   IS A NECESSARY REQUEST.   AND WE BELIEVE THIS IS A REQUEST THAT

17   IS PARTICULARLY NECESSARY IN THIS CASE, IN A CASE OF THIS

18   MAGNITUDE BEFORE THIS COURT.

19           THAT'S OUR APPLICATION, AND WE WOULD ASK YOUR HONOR TO

20   SIGN THE ORDER AS PRESENTED ON OUR APPLICATION.

21           THE COURT:   I MAKE THIS OBSERVATION.   I MADE IT

22   INITIALLY.   THE AUTHORITY YOU CITE IS NOT AUTHORITY FOR THE

23   PROPOSITION THAT YOU ADVANCE HERE IN THIS MEMORANDUM.   OF

24   COURSE, MR. FULLER AND THE HOSPITAL CAN ADDRESS THAT.

25           AM I TO UNDERSTAND NOW THAT JUDGE SMITH DID ENTER AN

1    ORDER BUT HE DID NOT AT THE SAME TIME ENTER AN ORDER ALLOWING

2    THAT COPIES OF THOSE DOCUMENTS BE TURNED OVER TO THE GOVERNMENT?

3            MR. ADELMAN:  I HAVE THE BEST -- MR. CROWLEY WAS THE

4    CLERK, YOUR HONOR.

5            THE COURT:  OH, NO, HE MAY HAVE BEEN THE CLERK, BUT HIS

6    MEMORY IS NO BETTER THAN MINE AT THIS POINT.

7            MR. ADELMAN:  I'LL TELL YOU WHAT HAPPENED.  WE ALREADY

8    HAD THE DOCUMENTS AND THEY WERE DELIVERED TO US, AND COPIES WERE

9    MADE AND THEN BROUGHT TO THE CLERK, AND THEN MR. CROWLEY, AT THE

10   COURT'S DIRECTION, SEALED THEM.

11           I WANT YOUR HONOR TO UNDERSTAND ONE THING ABOUT THAT,

12   THOUGH.  IN THAT CASE, JUDGE SMITH WAS IN THE MIDDLE OF A 301

13   HEARING, AND HE HEARD THINGS THAT CAUSED HIM TO BE DISTURBED

14   ABOUT THE MANAGEMENT OF MR. ECKER'S CASE.  HE TERMINATED THE

15   HEARING AND HE SAID, "I WANT THIS INVESTIGATED, I WANT THIS

16   LOOKED INTO."  AND IT WAS IN THAT MODE, IF YOU WILL -- WE HAD A

17   BREAK OF SEVERAL WEEKS OR EVEN MONTHS, I BELIEVE.  IT WAS IN

18   THAT MODE THAT THESE MATERIALS WERE PRODUCED, BROUGHT TO US --

19   SORRY, YOUR HONOR -- BROUGHT THEN TO JUDGE SMITH, AND THE ORDER

20   WAS SIGNED.

21           THE COURT:  I THINK SOMEBODY IS TRYING TO TELL YOU

22   SOMETHING.

23           MR. ADELMAN:  I THINK SO, TOO.

24           BUT IN ALL SERIOUSNESS, YOUR HONOR, WE BELIEVE THAT

25   THERE ARE STRONG PARALLELS HERE.  I WOULD NOT BE ARGUING TO YOUR

1   HONOR THIS IS STRAIGHT UP-AND-DOWN PRECEDENT; I COULDN'T AS AN

2   OFFICER OF THE COURT TELL YOU THAT.  BUT I THINK IT IS VIRTUALLY

3   SIMILAR.  AND EVEN IF THERE WEREN'T ECKER ON THE BOOKS OR ECKER

4 - CASE IN EXISTENCE, I THINK THE COURT'S AUTHORITY HERE IN THIS

5   UNIQUE SITUATION, UNDERSCORED BY THE ACTIVITIES OF THE HOSPITAL

6   WE HAVE SEEN IN THIS CASE AT THIS TIME IN THIS PROCEEDING --

7           THE COURT:  WELL, MR. ADELMAN, MAY I ASK THIS QUESTION:

8   DO YOU SEE ANYTHING DELIBERATE ABOUT THE ACTIVITY OF THE

9   HOSPITAL?  OR ARE YOU SUGGESTING THAT?

10          MR. ADELMAN:  WE HAVE GREAT CONCERN.  I'M NOT PREPARED

11  TO ASSIGN A QUALITATIVE ADJECTIVE TO IT, BUT WE ARE REALLY

12  CONCERNED, YOUR HONOR, ABOUT WHAT HAS BEEN FORTHCOMING FROM THE

13  HOSPITAL, WHETHER WE ARE GETTING THE WHOLE STORY.  THE BUNDY

14  LETTERS ARE MY POINT OF DEPARTURE.  FOR GOODNESS' SAKE, YOUR

15  HONOR, HERE WE HAVE A SITUATION WHERE MR. HINCKLEY IS COMMUNI-

16  CATING WITH A MASS MURDERER.  DR. TURKUS, WE LEARN, FINDS OUT

17  ABOUT IT ON APRIL 7, MAKES NO ENTRY IN THE HOSPITAL RECORDS

18  UNTIL AFTER IT'S BROUGHT UP, AND FINALLY MAKES AN ENTRY ON

19  APRIL 13.

20          THE COURT:  MR. ADELMAN, THAT'S JUST THE BEGINNING OF

21  IT.

22          MR. ADELMAN:  YES.

23          THE COURT:  WE DON'T KNOW HOW IT BEGAN, YOU KNOW.  WE

24  DON'T KNOW THE BEGINNING OF IT AT ALL.

25          MR. ADELMAN:  I KNOW THAT MUCH.

1          THE COURT:  WE KNOW THAT IT DID TAKE PLACE.

2          MR. ADELMAN:  YES.

3          THE COURT:  BUT WE KNOW NOTHING ABOUT THE ORIGIN OF IT,

4     HOW IT DEVELOPED AND THAT SORT OF THING.

5          MR. ADELMAN:  THAT'S RIGHT.  AND, INDEED, THAT REALLY

6     IS MY POINT, TOO, YOUR HONOR.  SINCE WE DON'T KNOW AND IT LOOKS

7     LIKE NOW WE WON'T KNOW AT THIS HEARING, DON'T WE HAVE TO TAKE

8     THE PRECAUTION IN JOHN HINCKLEY'S CASE, A POTENTIAL PRESIDENTIAL

9     ASSASSIN, TO BE SURE THAT WHEN THIS RECORD IS FULLY DEVELOPED

10    BEFORE YOUR HONOR AT THE NEXT PROCEEDING, WHEN DR. TURKUS AND

11    THE HOSPITAL COME FORWARD AGAIN, THAT WE HAVE THE MATERIALS IN

12    FILE TO EXAMINE HER ON THIS AND OTHER MATTERS.  THAT'S ALL WE

13    ARE ASKING.  WE THINK IT'S --

14         THE COURT:  WELL, OF COURSE, THAT RAISES A QUESTION OF

15    JUST WHAT RIGHTS THIS PERSON HAS.  MR. FULLER CAN ADDRESS THAT.

16         MR. ADELMAN:  I'M SURE HE WILL.

17         I JUST WANT TO CLOSE BY SAYING THAT YOUR HONOR

18    THROUGHOUT THIS PROCEEDING, AS FAR AS WE'RE CONCERNED, HAS BEEN

19    TOTALLY CONSIDERATE OF THE GOVERNMENT; YOU HAVE VIEWED THIS

20    MATTER EQUITABLY.  AND IN THIS PARTICULAR SITUATION, SINCE WE

21    HAVE REACHED A PARTING, IF YOU WILL, THAT IS TO SAY, ON THIS

22    PROCEEDING, WHERE THE ISSUE IS BECOMING UNJOINED, ALL WE ARE

23    ASKING IS THAT YOU TAKE THIS IMPORTANT STEP TO PRESERVE THE

24    RECORD.  OTHERWISE, THERE IS A GREAT FEAR ON OUR PART THAT THESE

25    MATERIALS WILL BE RETURNED TO MR. HINCKLEY AND BEYOND THE

1    COURT'S CONTROL, AND WE'LL NEVER SEE THEM AGAIN.   THERE MAY WELL

2    BE THINGS IN THERE THAT ARE CRITICAL TO THIS COURT'S DETERMI-

3    NATION OF HIS MENTAL CONDITION, AND, YOUR HONOR, MAY WELL BE

4    CRITICAL TO THE SAFETY OF OTHERS.   AND I WOULD SUGGEST

5    RESPECTFULLY --

6              THE COURT:  HAVE YOU DISCUSSED THIS MATTER WITH MR.

7    FULLER BEFORE --

8              MR. ADELMAN:  NO.

9              THE COURT:  SO HE IS NOT --

10             MR. ADELMAN:  HE MAY AGREE TO IT, YOUR HONOR.  BUT IN

11   ANY EVENT, OUR POSITION IS A VERY STRONG ONE, AND THAT IS THAT

12   PUBLIC SAFETY AND THE COURT'S RESPONSIBILITY ARE PARAMOUNT HERE,

13   AND WE ASK YOUR HONOR TO ENTER THE ORDER.

14             THE COURT:  VERY WELL.

15             MR. ADELMAN:  THANK YOU.

16             MR. FULLER:  MAY I BE HEARD, YOUR HONOR?

17             THE COURT:  CERTAINLY.

18             MR. FULLER:  YOUR HONOR, I THINK THE GOVERNMENT'S

19   REQUEST IS INAPPROPRIATE UNDER THE CIRCUMSTANCES OF THE CASE.   I

20   RECOGNIZE IT WOULD BE A BURDEN ON YOUR HONOR TO COMPLETE IF YOU

21   HAVEN'T ALREADY COMPLETED THE IN CAMERA REVIEW.  BUT I WOULD BE

22   AGREEABLE TO YOUR HONOR COMPLETING THAT IN CAMERA REVIEW AND IF,

23   INDEED, YOUR HONOR FINDS DOCUMENTS --

24             THE COURT:  I BEG YOUR PARDON?

25             MR. FULLER:  IF YOUR HONOR IN COMPLETING THE IN CAMERA

1    REVIEW OF THE DOCUMENTS --

2         THE COURT:  COMPLETING?

3         MR. FULLER:  COMPLETING.  IF YOU WERE TO DO THAT AND

4    COME ACROSS DOCUMENTS WHICH YOU THOUGHT TO BE RELEVANT TO THESE

5    PROCEEDINGS, I WOULD HAVE NO OBJECTION TO YOUR PRESERVING THOSE

6    DOCUMENTS FOR ANY FUTURE PROCEEDINGS.

7         I DO THINK IT IS ILL ADVISED THAT ALL THESE WRITINGS --

8    NONE OF WHICH I HAVE SEEN, BY THE WAY -- SHOULD BE REMOVED FROM

9    MR. HINCKLEY'S POSSESSION AND THAT HE BE TREATED IN SOME RATHER

10   BIZARRE AND UNUSUAL FASHION.  THESE ARE HIS WRITINGS.  I BELIEVE

11   HE ENJOYS THE RIGHT OF CORRESPONDING WITH PERSONS OUTSIDE THE

12   PREMISES OF ST. ELIZABETH'S, AND I THINK HE SHOULD BE ENTITLED

13   TO KEEP THOSE WRITINGS.

14        THERE ARE, I'M SURE, YOUR HONOR, NO SUCH WRITINGS THAT

15   RISE TO THE LEVEL OF THOSE MR. ADELMAN DESCRIBES IN THE ECKER

16   CASE, WHICH HAD TO DO WITH I THINK PORNOGRAPHIC TYPE LITERATURE.

17   THIS IS NOT OUR CASE.  I DON'T KNOW WITH WHOM MR. HINCKLEY

18   CORRESPONDS, NOR DO I KNOW WHAT IS SAID IN THAT CORRESPONDENCE.

19   AGAIN, IF YOUR HONOR FINDS THINGS IN THERE THAT REFLECT OR

20   SUGGEST SOME KIND OF STRANGE THINKING, STRANGE IDEATION, I

21   CERTAINLY HAVE NO OBJECTION TO YOUR HONOR SEPARATING THOSE AND

22   PRESERVING THE ORIGINALS.

23        I AM NOT, I WOULD SAY, QUALIFIED TO ADDRESS MR.

24   HINCKLEY'S CARE FROM A THERAPEUTIC POINT OF VIEW, BUT I HAVE

25   SEEN ENOUGH OF THIS CASE AND LEARNED ENOUGH THROUGH THE DEFENSE

1   OF THE CASE TO KNOW THAT ONE OF THE MOST IMPORTANT FEATURES MR.

2   HINCKLEY WAS DEPRIVED OF IN THE MONTHS AND YEARS LEADING UP TO

3   THE SHOOTING WAS HAVING PERSONAL RELATIONSHIPS WITH OTHER

4   PEOPLE.   AND I THINK TO THE EXTENT THIS COURT AND THE GOVERNMENT

5   INTRUDES UPON THE CONTINUING DEVELOPMENT AND THE CONTINUING

6   EVOLUTION OF HEALTHY INTERPERSONAL RELATIONSHIPS, YOUR HONOR, I

7   THINK IT NECESSARILY WOULD BE DISTURBING TO MR. HINCKLEY'S

8   CONTINUING RECOVERY.   I THINK THAT WHEN THE GOVERNMENT INTRUDES

9   AND COMES IN AND BRINGS INTO THE COURT ALL THE WRITINGS, I THINK

10  THE EFFECT IS GOING TO BE MR. HINCKLEY PERHAPS IS GOING TO STOP

11  WRITING, WHICH I THINK WOULD NOT BE PROPER FROM A THERAPEUTIC

12  POINT OF VIEW.

13      ONE MORE NOTE IN PASSING, YOUR HONOR.   I AM NOT HERE TO

14  DEFEND THE HOSPITAL.   HOWEVER, I HAVE TALKED TO THE HOSPITAL

15  STAFF FREQUENTLY.   I INDEED INTERVIEWED DR. TURKUS ON APRIL 3, I

16  BELIEVE, AT WHICH TIME SHE TOLD ME OF AN ARTICLE WHICH HAD BEEN

17  PUBLISHED IN SOME MAGAZINE WHICH DISCUSSED MANSON.   AND IT WAS

18  NO SUGGESTION THAT MR. HINCKLEY HAD EVER CORRESPONDED WITH

19  MANSON; IT WAS SIMPLY HE HAD RESPONDED TO A LETTER WHICH SOMEONE

20  SUGGESTED THAT HE DO SO.   DR. TURKUS WAS COMPLETELY OPEN ABOUT

21  THAT WITH ME.   LATER, DR. TURKUS, THROUGH COUNSEL, TOLD ME OF

22  THE BUNDY LETTER.

23      I POINT OUT TO THE COURT THAT ON MY INFORMATION, MR.

24  ADELMAN WAS TOO BUSY TO INTERVIEW DR. TURKUS; AND THAT, PERHAPS,

25  ACCOUNTS FOR THE REASON WHY MR. ADELMAN DID NOT KNOW ABOUT THE

1    MANSON INCIDENT OR THE BUNDY INCIDENT ON MONDAY OF THIS WEEK.

2         I WANT TO SAY ALSO FOR THE RECORD, YOUR HONOR, I WOULD

3    LIKE TO READ INTO THE RECORD DR. TURKUS' COMMENT ABOUT THE BUNDY

4    LETTER, IF THE COURT PERMITS.  IT'S A VERY BRIEF COMMENT WHICH

5    APPEARS IN HER NOTES.  MAY I DO SO?

6         THE COURT:  MAYBE I SHOULD READ IT FIRST.

7         MR. FULLER:  CERTAINLY.  IT'S THE TOP PARAGRAPH.

8         THE COURT:  I HAVE READ SOME OF HER NOTES.

9         MR. FULLER:  IT'S THE TOP PARAGRAPH IN THAT PROGRESS

10   NOTE, YOUR HONOR.

11        THE COURT:  WELL, I DON'T KNOW WHETHER IT'S NECESSARY.

12        MR. FULLER:  WELL, I THINK IT'S SIGNIFICANT, YOUR

13   HONOR, THAT DR. TURKUS, IN READING THE BUNDY MATERIALS,

14   CHARACTERIZED THEM AS BEING INNOCUOUS AND NOT AS SUGGESTIVE --

15        THE COURT:  WELL, THAT'S A NICE WAY OF AVOIDING MY

16   COMMENT THAT I DIDN'T THINK IT WAS NECESSARY.

17        MR. FULLER:  WELL, I DON'T MEAN TO DO THAT.

18        THE COURT:  ALL RIGHT.

19        MR. FULLER:  BUT, YOUR HONOR, WHAT BOTHERS ME IS THAT

20   MR. ADELMAN YESTERDAY STOOD HERE BEFORE YOUR HONOR AND SUGGESTED

21   THAT THE BUNDY LETTERS SUGGESTED MR. HINCKLEY WAS FASCINATED

22   WITH THE BUNDY MOVIE IN MUCH THE SAME FASHION HE WAS WITH "TAXI

23   DRIVER".  THAT'S BASELESS.  AND TODAY ON THE FRONT PAGE OF THE

24   WASHINGTON POST, THAT'S THE LEAD OF THE STORY.  AND I THINK IT'S

25   UNFORTUNATE.

1          IN SHORT, YOUR HONOR, I THINK IT IS UNNECESSARY, IT IS

2     UNPRECEDENTED, THAT MR. HINCKLEY'S PRIVATE WRITINGS WOULD BE

3     SEALED AND THE ORIGINALS TAKEN FROM HIM AND COPIES GIVEN TO THE

4  -  GOVERNMENT.  I THINK IT'S INAPPROPRIATE.  I DO AGREE IF YOUR

5     HONOR SEES RELEVANT MATERIAL IN YOUR IN CAMERA REVIEW, THAT

6     THOSE, AND THOSE ALONE, BE SEALED, WITH NO COPIES TO THE

7     GOVERNMENT AT THIS TIME.

8          THANK YOU.

9          THE COURT:  MS. KEARY, WOULD YOU LIKE TO SAY SOMETHING?

10         MS. KEARY:  YES, YOUR HONOR.

11         THE COURT:  MS. KEARY REPRESENTS ST. ELIZABETH'S

12    HOSPITAL.

13         MS. KEARY:  YOUR HONOR, I BELIEVE I HAVE SOME

14    INFORMATION THAT MAY RESOLVE THIS ISSUE IN TERMS OF ASSISTING

15    THE COURT -- SOME INFORMATION ABOUT A PLAN THE HOSPITAL HAS

16    WHICH MAY WELL MEET THE CONCERNS OF THE U. S. ATTORNEY'S OFFICE

17    AS WELL AS ACCOMMODATE THE INTERESTS OF MR. HINCKLEY THAT HAS

18    BEEN EXPRESSED BY HIS COUNSEL.  THE HOSPITAL HAS DECIDED ON ITS

19    OWN TO MAKE A COPY OF ALL OF THE MATERIAL, ASSUMING THE COURT

20    WERE TO RETURN IT TO US TO ENABLE US TO DO THAT -- OF ALL THE

21    MATERIAL THAT THE HOSPITAL TURNED OVER TO THE COURT THIS MORNING

22    AS WELL AS ALL OTHER MATERIAL IN MR. HINCKLEY'S PERSONAL

23    POSSESSIONS, WHICH WAS SEEN LAST NIGHT IN THE PROCESS OF

24    OBTAINING THE MATERIAL TO COMPLY WITH THE COURT'S ORDER.  AND WE

25    PLAN TO PRESERVE THAT MATERIAL FOR ANY FUTURE POINT AT WHICH THE

1    HOSPITAL IS MAKING A RECOMMENDATION OR AT WHICH POINT HIS

2    CLIENT, MR. FULLER'S CLIENT IS ASKING FOR SOME RELEASE, AND AT

3    WHICH POINT THAT MATERIAL MIGHT BE RELEVANT.  BY PRESERVING IT,

4 -  THE HOSPITAL WOULD GUARANTEE THAT IT WAS AVAILABLE TO THE COURT

5    TO MAKE A DECISION AT THAT TIME AS TO ITS RELEVANCE FOR WHATEVER

6    FUTURE PROCEEDING.  BUT IT WOULD BE PRESERVED IN SOME SECURE AND

7    CONFIDENTIAL PLACE, AND WOULD NOT BE DISCLOSED AT THIS POINT BY

8    THE HOSPITAL.

9         SINCE THE HOSPITAL PLANS TO DO THAT AT ANY RATE, I

10   WANTED TO OFFER IT TO THE COURT AS SOMETHING THAT MAY BE AN

11   ALTERNATIVE.  THE HOSPITAL WOULD HAVE NO OBJECTION TO HAVING A

12   SEALED COPY OF THAT MATERIAL ON FILE WITH THE COURT AS WELL AS

13   AT THE HOSPITAL.

14        THE COURT:  WERE YOU WITH THE HOSPITAL WHEN THE CASE

15   THAT MR. ADELMAN REFERRED TO --

16        MS. KEARY:  YES, I WAS, YOUR HONOR.

17        THE COURT:  WERE YOU THERE AT THE HOSPITAL AT THAT

18   POINT?

19        MS. KEARY:  YES, I WAS, YOUR HONOR.

20        THE COURT:  CAN YOU SHED ANY INFORMATION ON THAT?  WERE

21   YOU IMMEDIATELY INVOLVED?

22        MS. KEARY:  I WAS, YOUR HONOR.  AND QUITE FRANKLY, I DO

23   NOT TOTALLY RECALL THE PRECISE DETAILS OF THE WAY IN WHICH THE

24   MATERIAL WAS TURNED OVER.  I WAS ATTEMPTING TO RECOLLECT THAT

25   EARLIER.

1        AS MR. ADELMAN SAID, IT WAS NOT AN EXACTLY ON-POINT

2   SITUATION, BUT IT HAS SIMILARITIES.

3        THE COURT:  DID YOU WANT TO SHARE WITH COUNSEL THE

4 - INFORMATION YOU SHARED WITH ME IN CHAMBERS WHEN YOU BROUGHT THE

5   HOSPITAL LETTER OVER, RELATIVE TO OTHER MATERIAL?

6        MS. KEARY:  I HAVE NOT DISCUSSED THAT WITH COUNSEL YET,

7   YOUR HONOR.  WOULD YOU LIKE US TO COME TO THE BENCH?

8        THE COURT:  WELL, COME TO THE BENCH.

9                    (AT THE BENCH)

10       THE COURT:  WHAT I HAD REFERENCE TO, GENTLEMEN, WAS THE

11  FACT THAT MS. KEARY WAS QUITE OPEN AND FORTHRIGHT WHEN SHE CAME

12  INTO CHAMBERS, IN ANSWER TO ONE OF THE QUESTIONS I PUT TO HER.

13  THERE ARE OTHER MATERIALS OF MR. HINCKLEY WHICH, BECAUSE OF THE

14  CONFINES OF THE CELL, ARE NOT IN THE CELL, BUT THEY ARE IN A

15  STORAGE BIN.  I JUST WANTED YOU TO KNOW.

16       I CAN SAY THIS, BUT I WILL SAY IT ON THE RECORD, MR.

17  ADELMAN.  I DON'T BELIEVE THAT IN ANY EVENT THIS MATERIAL SHOULD

18  BE SHARED WITH YOU AT THIS POINT.  IF IT IS MADE AVAILABLE AND

19  IT IS PRESERVED AND PROTECTED FOR FUTURE USE, YES.

20       LET'S GET BACK ON THE RECORD.

21                    (IN OPEN COURT)

22       THE COURT:  I AM PREPARED TO RULE AT THIS TIME ON THE

23  REQUEST OF MR. ADELMAN.  MR. ADELMAN, DID YOU WANT TO CONFER

24  WITH YOUR ASSOCIATES?

25       MR. ADELMAN:  YES.  THANK YOU, YOUR HONOR.

1           AFTER CONSULTATION HERE AT OUR TABLE, WE WOULD ACCEPT

2    THE COURT'S SUGGESTION HERE -- ACTUALLY, IT IS MS. KEARY'S, AS

3    WELL.  AS WE UNDERSTAND IT, THE COURT WOULD ENTER AN ORDER IN

4    WHICH THE MATERIALS WOULD BE SEALED, PRESERVED FOR THE COURT,

5    BUT NOT GIVEN TO THE GOVERNMENT.  WE WOULD WANT THE

6    UNDERSTANDING, HOWEVER, THAT AT THE NEXT HEARING, IF THERE IS A

7    NEXT HEARING, IN THE FUTURE, WE BE GIVEN THE OPPORTUNITY TO THEN

8    LOOK AT THE MATERIAL AT A REASONABLE TIME IN ADVANCE OF THE

9    HEARING SO THAT WE CAN MAKE OUR PRESENTATION IN AN APPROPRIATE

10   FASHION.

11           THE COURT:  DO YOU HAVE ANY PROBLEM WITH THE COURT'S

12   RETURNING THESE DOCUMENTS TO THE HOSPITAL, LET THE HOSPITAL

13   INVENTORY THE ARTICLES, PHOTOCOPY THEM, AND SEND THE PHOTOCOPIES

14   TO THE COURT?

15           MR. ADELMAN:  QUITE FRANKLY, YOUR HONOR, I DON'T KNOW

16   THE BULK OF THE MATERIALS, BUT WE WOULD RESPECTFULLY ASK YOUR

17   HONOR TO HAVE THE COPYING AND INVENTORYING -- OR THE COPYING

18   WORK DONE HERE IN THE COURTHOUSE UNDER THE JURISDICTION OF THE

19   COURT.  NOW, THAT MIGHT BE WORKED OUT THROUGH THE CLERK'S OFFICE

20   WITH THE HOSPITAL REPRESENTATIVE PRESENT.  WE JUST WANT TO BE

21   SURE THAT THE ORIGINALS STAY HERE AND ARE PROCESSED HERE.  BUT

22   ULTIMATELY, IF YOUR HONOR WISHES TO HAVE HOSPITAL PEOPLE ATTEND

23   THE COPYING OR PARTICIPATE IN IT HERE, THAT'S NO PROBLEM WITH

24   US.  BUT WE WANT TO HAVE THE ASSURANCE THEN, UPON YOUR HONOR'S

25   RULING, THAT AT A FUTURE HEARING ALL OF THE COPIES WILL BE

1   AVAILABLE TO US REASONABLY IN ADVANCE SO THAT WE MAY REVIEW THEM

2   AND USE THEM AS WE SEE FIT.

3          AND I ALSO UNDERSTAND NOW THAT THERE ARE OTHER

4   MATERIALS NOT HERE IN THE COURT THAT WOULD BE EMBRACED BY THIS

5   AMENDED ORDER.

6          THE COURT:   MR. ADELMAN -- YOU ROSE FOR A PURPOSE, MR.

7   FULLER?

8          MR. FULLER:   I WAS ASKED TO STOP BY MR. ADELMAN, SO I

9   WILL --

10         THE COURT:   I WAS ABOUT TO SAY, I DON'T KNOW WHAT SORT

11  OF PROBLEM THIS PRESENTS.

12         MR. ADELMAN:   I WANTED TO CLARIFY A SUGGESTION OF MR.

13  DI GENOVA, YOUR HONOR.   THE OTHER MATERIALS THAT WEREN'T

14  PRODUCED, THE MATERIALS APPARENTLY OUTSIDE OF THE ROOM IN OTHER

15  STORAGE AREAS, WE WOULD AGAIN EMPHASIZE, AS I DID A MOMENT AGO,

16  THAT THEY BE EMBRACED BY THIS COURT'S ORDER AS WELL.   SO, THAT'S

17  OUR POSITION.

18         MR. FULLER:   YOUR HONOR, WHAT THE GOVERNMENT SEEMS TO

19  BE SAYING IS THAT THEY ASK THAT THESE RECORDS BE PRESERVED AND

20  MADE AVAILABLE TO THEM WITHOUT FURTHER REVIEW BY THE COURT AT

21  SOME --

22         THE COURT:   NO.   IF THAT'S WHAT THEY'RE ASKING, I DON'T

23  THINK THEY WILL GET IT.   BUT I DON'T THINK THAT'S WHAT THEY'RE

24  ASKING.

25         MS. KEARY:   WELL, THAT'S WHAT I UNDERSTOOD MR. ADELMAN

1   JUST TO SAY.  AND IF THAT'S WHAT HE SAID, I STRONGLY OBJECT TO

2   THAT.

3           AGAIN, I DON'T KNOW WHERE YOUR HONOR IS IN THE PROCESS

4   OF IN CAMERA REVIEW.  IF YOU ARE NEAR THE END, I WOULD -- YOU

5   ARE NOT, I GUESS.

6           THE COURT:  I GAVE UP AFTER ABOUT FIVE MINUTES.

7           MR. FULLER:  I SEE.

8           THE COURT:  I WAS HAPPY TO GET WORD FROM THE HOSPITAL

9   OF THE LETTER THAT THEY WERE GOING TO SEND.

10          MR. FULLER:  WELL, THEN, I WOULD ASK THE DOCUMENTS BE

11  RETURNED TO ST. ELIZABETH'S AND MAKE THOSE PERSONS AT ST.

12  ELIZABETH'S WHO ARE TRAINED IN SEPARATING OUT SIGNIFICANT

13  DOCUMENTS IN THE COURSE OF A PSYCHIATRIC ANALYSIS -- THAT THEY

14  BE PERMITTED TO EXAMINE THEM AND, IF NEED BE, PRESERVE THEM ALL

15  FOR THE COURT'S FUTURE IN CAMERA INSPECTION.  I HOPE YOU ARE NOT

16  BURDENED WITH THAT.

17          THE COURT:  WELL, MR. FULLER, MR. ADELMAN, LET ME SAY

18  THIS.  I WILL CONSIDER THIS MATTER.  I WILL CONSIDER THIS

19  MATTER.  AND BEFORE I ENTER THE ORDER, I WILL ANNOUNCE IT TO YOU

20  GENTLEMEN, AND I SOLICIT ANY COMMENT OR REVIEW THAT YOU WISH.

21  AT THIS POINT, MY THINKING WOULD BE TO ATTEMPT TO WORK OUT A

22  SYSTEM WHERE THE DOCUMENTS WHICH ARE PRESENTLY IN THE CUSTODY OF

23  THE COURT COULD BE INVENTORIED ON THESE PREMISES WITH THE

24  ASSISTANCE OF SOMEONE FROM THE HOSPITAL AS TO THE SCHEME OF

25  INVENTORYING; THEN KEEP THE DOCUMENTS WHICH THE COURT HAS IN

1   POSSESSION, KEEP THEM HERE AND MAKE LEGIBLE COPIES FOR THE

2   HOSPITAL. THAT'S MY PRESENT THINKING. I DON'T KNOW WHETHER --

3             MR. FULLER: THAT'S AGREEABLE TO THE DEFENSE, AS WELL.

4             MR. ADELMAN: FINE.

5             MAY I RAISE ONE OTHER RELATED MATTER? MAY I?

6             THE COURT: YES.

7             MR. ADELMAN: WE SPOKE WITH MS. KEARY ABOUT A RELATED

8   ASPECT OF THIS, AND I BELIEVE SHE IS GOING TO ADDRESS THE COURT

9   REGARDING ACCOMPANIED VISITS. WE ASKED HER BEFORE THE HEARING

10  BEGAN AND SHE GAVE US THE ASSURANCE THAT THE HOSPITAL WOULD NOT

11  BE SEEKING AN ACCOMPANIED VISIT.

12            THE COURT: A WHAT?

13            MR. ADELMAN: A VISIT WITH ACCOMPANIMENT, YOUR HONOR.

14            THE COURT: WELL, YOU'RE MOVING TOO FAST.

15            MR. ADELMAN: I'M SORRY.

16            THE COURT: LET'S KIND OF CLEAR UP THIS MATTER FIRST.

17            MR. ADELMAN: FINE. BUT SHE INDICATED SHE WOULD SAY

18  THAT. AND THAT WOULD, THEN, PUT TO REST THE OTHER MOTION BEFORE

19  YOUR HONOR SO THAT THE COURT DOESN'T HAVE TO DEAL WITH IT. BUT

20  I DID WANT TO PUT THAT ON THE RECORD.

21            THE COURT: ALL RIGHT. COUNSEL, I WILL FASHION AN

22  ORDER, AND BEFORE I ENTER THE ORDER I WILL LET YOU KNOW WHAT IT

23  IS. AND IF YOU WISH TO MAKE ANY COMMENT, I WILL HEAR YOU IN ANY

24  EVENT. I THINK I COULD DEVELOP AN ORDER WHICH WOULD BE

25  SATISFACTORY TO ALL PARTIES CONCERNED. BUT I DO HAVE A FEELING,

1   MR. ADELMAN, WITH RESPECT TO TURNING OVER COPIES OF THE

2   DOCUMENTS TO YOU AT THIS TIME.

3          NOW, THE OTHER THING THAT I PLAN TO ENTER AN ORDER, I'M

4   GOING TO ENTER AN ORDER TERMINATING THE HEARING PROMPTED BY THE

5   LETTER OF THE SUPERINTENDENT OF MARCH 23RD.  I WILL DO THAT.

6   ANY PROBLEM WITH THAT?

7          MR. FULLER:  THAT'S AGREEABLE.

8          THE COURT:  VERY WELL.

9          MS. KEARY, DID YOU WISH TO MAKE A STATEMENT FOR THE

10  RECORD?

11         MS. KEARY:  YOUR HONOR, I HAVE NOTHING FURTHER TO SAY.

12  I THINK MR. ADELMAN WAS MERELY STATING THAT HE WANTED IT STATED

13  FOR THE RECORD THAT THE HOSPITAL DID NOT HAVE ANY ANTICIPATED

14  PLAN TO SEND MR. HINCKLEY ON AN ACCOMPANIED-BY-STAFF EASTER

15  VISIT.  AND THAT IS MY KNOWLEDGE, ALSO, THAT WE HAVE NO CURRENT

16  PLAN TO DO THAT.

17         I WOULD FURTHER STATE --

18         THE COURT:  DID YOU WANT TO MAKE ANY OTHER STATEMENT

19  FOR THE RECORD?

20         MS. KEARY:  I WOULD FURTHER STATE, YOUR HONOR, THAT

21  SHOULD THE HOSPITAL AT SOME FUTURE POINT DEVELOP SUCH A PLAN, WE

22  WOULD GIVE NOTICE TO YOUR HONOR AND TO THE SECRET SERVICE, AS IN

23  THE PAST, AND TO THE UNITED STATES ATTORNEY'S OFFICE.

24         THE COURT:  BEFORE IT IS UNDERTAKEN.

25         MS. KEARY:  YES, YOUR HONOR.

1          THE COURT:  ALL RIGHT.  VERY WELL, COUNSEL.

2          MR. ADELMAN:  THANK YOU, YOUR HONOR.

3          (WHEREUPON, AT 3:42 P.M., THE ABOVE-ENTITLED MATTER WAS

4     CONCLUDED.)

5

6

7

8

9

10

11                    CERTIFICATE OF REPORTER

12          I HEREBY CERTIFY THAT THE FOREGOING IS THE OFFICIAL

13     TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER AND

14     THAT IT IS COMPLETE AND ACCURATE, TO THE BEST OF MY KNOWLEDGE

15     AND ABILITY.

16

17     _____

18                    GORDON A. SLODYSKO
                      OFFICIAL COURT REPORTER

19

20

21

22

23

24

25