UNITED STATES DISTRICT COURT          **F I L E D**
FOR THE DISTRICT OF COLUMBIA

JUN − 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

)
UNITED STATES OF AMERICA,          )
)
)
v.          )          Criminal No. 81-0306 (PLF)
)
JOHN W. HINCKLEY, JR.          )
)
_____)

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on John W. Hinckley, Jr.'s motion to vacate the

1987 stipulated order. The Court has considered the motion, the government's opposition,

Mr. Hinckley's reply memorandum, the District of Columbia's position on the stipulation with

regard to the two-week notice provision for outings, and the government's supplemental

opposition to the motion.

On April 22, 1987, Saint Elizabeths Hospital and the United States entered into a

stipulation that reads as follows:

> It is hereby stipulated, subject to approval of the Court, that
> should St. Elizabeths Hospital propose that defendant be released
> from the grounds of St. Elizabeths Hospital accompanied by
> Hospital personnel, the Hospital shall provide two weeks written
> notice to this Court, to the United States Attorney for the District
> of Columbia and to counsel for defendant.

The stipulation was signed by the Superintendent of Saint Elizabeths Hospital and the legal

advisor to the Hospital, and by the United States Attorney and several of his Assistants on behalf

of the United States.  Mr. Hinckley was not a party to the stipulation.  Judge Barrington D. Parker

entered an order approving the stipulation on April 24, 1987.

                In his motion to vacate, Mr. Hinckley argues that the notice requirement of the

1987 stipulation should be removed so that Mr. Hinckley may more easily participate in so-called

"B-city" visits in the District of Columbia under Hospital supervision.  Mr. Hinckley notes that

he has been denied the opportunity to participate in some of these therapeutic visits because of

the stipulation's two-week notice requirement which, he says, materially interferes with his

treatment.  Mr. Hinckley also argues that (1) since he was not a party to the "stipulation" it was

not really a stipulation agreed to by the parties to this case in the first place; (2) the stipulation

should be vacated because one of the parties to the stipulation (the Hospital) now seeks to

withdraw from the stipulation because it no longer believes that the notice requirement is

necessary; and (3) once the District of Columbia Circuit held that B-city visits were within the

discretion of the Hospital alone, and not the Court, there was no longer any authority for the

Court to place conditions on any such visits.  See Hinckley v. United States, 163 F.3d 647 (D.C.

Cir. 1999).[1]

                The Hospital supports Mr. Hinckley's motion to vacate.  It states:

                Currently, the District of Columbia submits that the
stipulation restricts the ability of Mr. Hinckley to participate in
therapeutic outings that are available to his peers.  Approximately
every two (2) months, Saint Elizabeths Hospital receives tickets to
area events on the day that the event is to occur.  Based on the
stipulation, Mr. Hinckley is precluded from participating in these
outings.  Mr. Hinckley would benefit from these therapeutic outings
as it would provide him greater opportunity to socialize with his

---

[1]     The first argument is much less persuasive than the second for the reasons
pointed out by the government at page 10 of its Supplemental Opposition.

2

peers thereby supporting his goals of developing relationships, decreasing isolation, and coping with depression and loneliness. Additionally, it would allow the treatment team to observe Mr. Hinckley in impromptu community social situations.

The District of Columbia would continue to notify the Secret Service of any outing. The Director of the Forensic Program or his designee would provide notice to the Secret Service when an outing was planned. Thus, the District of Columbia requests and supports the removal of the two week notice provision of the stipulation.

The United States argues that the stipulation, approved by the Court in 1987, is a court order which constitutes the law of the case. It also argues that by failing to challenge this order previously in this Court and, more importantly, on two occasions in the court of appeals, Mr. Hinckley has waived his right to raise the issue of the validity of the court-ordered stipulation now. Furthermore, the government argues that with expanded privileges for Mr. Hinckley having been authorized by the Court both in the environs of the District of Columbia and much farther away in his parents' community, the notice requirement is at least as important, if not more so than it has always been. It argues that the 1987 stipulation should remain in place for B-city visits "because it maintains a balance between the Hospital's discretion to allow Mr. Hinckley to take trips into the city under supervision and the need for law enforcement to plan for Mr. Hinckley's movements in the District of Columbia," because it gives law enforcement the time it needs "to coordinate surveillance of Mr. Hinckley with plans for the protection and movement of prominent persons," and because it "has allowed law enforcement to coordinate its activities in the District of Columbia."[2] According to the government, that surveillance also has

---

[2] Traditionally, once the United States has been given notice, it notifies the Secret Service of Mr. Hinckley's upcoming B-city trips into the District of Columbia community or environs.

yielded valuable information concerning Mr. Hinckley's actions and behavior during his B-city visits.

Upon careful consideration of the arguments, both factual and legal, that have been proffered by the parties and the entire record in this case,[3] it is hereby

ORDERED that Mr. Hinckley's motion to vacate the 1987 stipulated order is GRANTED in part and DENIED in part; and it is

---

[3]     The Court has presided over extensive evidentiary hearings concerning Mr. Hinckley, each hearing lasting four to five days, on three occasions since the fall of 2003. During those hearings, the Court has heard testimony from numerous psychiatrists and psychologists and made numerous findings of fact regarding Mr. Hinckley's diagnosed mental conditions and disorders, and the risk factors associated with those diagnoses. See United States v. Hinckley, 292 F.Supp.2d 125, 146-47 (D.D.C. 2003) ("Hinckley I"); United States v. Hinckley, 346 F.Supp.2d 155, 176-77 (D.D.C. 2004) ("Hinckley II"); United States v. Hinckley, 407 F. Supp.2d 248, 263-65 (D.D.C. 2005) ("Hinckley III").

FURTHER ORDERED that Saint Elizabeths Hospital shall provide 96 hours written notice to this Court, to the United States Attorney for the District of Columbia, and to counsel for the defendant prior to any B-city outings on which Mr. Hinckley will be taken.[4]

PAUL L. FRIEDMAN
United States District Judge

DATE: 6\1\07

---

[4] The 1987 Stipulation and its notice requirement for Hospital-supervised "B-city" visits have nothing to do with the conditional releases without Hospital supervision that the Court has authorized pursuant to D.C. Code § 24-301(e) since December 2003. See United States v. Hinckley, 163 F.3d at 656 (holding that B-city privilege or pass is not a conditional release pursuant to Section 301 of the D.C. Code, and therefore does not require district court's approval, because outing is limited in nature and Mr. Hinckley will be guarded and his movements restrained by the Hospital during the outing). Whenever the Court has authorized conditional releases without Hospital supervision, the Court has required the Hospital to develop a detailed itinerary and submit it to the Court under seal two weeks prior to each outing, or, since the most recent hearing, an itinerary covering two outings. See Hinckley I, 292 F. Supp.2d at 151; Hinckley II, 346 F. Supp.2d at 181; Hinckley III, 407 F. Supp.2d at 267-68.