UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOHN W. HINCKLEY, JR. )<br>) | Criminal No. 81-0306 (PLF) |

## ORDER

For the reasons set forth in the Opinion issued this same day, it is hereby

ORDERED that the petition of St. Elizabeths Hospital, joined by Petitioner John W. Hinckley, Jr., for full-time convalescent leave to Williamsburg, Virginia, with conditions, is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that Petitioner John W. Hinckley, Jr. is permitted to reside full-time in Williamsburg, Virginia, on convalescent leave, which shall begin no sooner than August 5, 2016. The Hospital shall notify the Court, counsel for the government, counsel for Mr. Hinckley, and the U.S. Secret Service as to when Mr. Hinckley will travel to Williamsburg, Virginia, to begin convalescent leave; and it is

FURTHER ORDERED that such convalescent leave is subject to the following conditions:

1. Prior to placement on convalescent leave, St. Elizabeths Hospital (the "Hospital") and the Williamsburg treatment team — defined for these purposes as Dr. Deborah Giorgi-Guarnieri, Mr. Jonathan Weiss, and Mr. Carl Beffa — shall provide each other, the Court,

counsel for the government and for Mr. Hinckley, and the United States Secret Service with a list of all treatment team providers, their telephone numbers, and email addresses. Both the Hospital and the Williamsburg treatment team shall notify counsel for the government and for Mr. Hinckley of any changes in the contact information.

2. While on convalescent leave, Mr. Hinckley shall notify Mr. Weiss before going to any private residences.

3. The Department of Behavioral Health at St. Elizabeths Hospital — through the Forensic Outpatient Department or "FOPD" and its Director, Dr. Nicole Johnson — shall have the ultimate responsibility for ensuring that Mr. Hinckley receives appropriate psychiatric treatment and medication while residing in Williamsburg, Virginia, on convalescent leave.

4. Mr. Hinckley shall travel to the FOPD at 35 K Street N.E., Washington D.C., as often as clinically indicated but not less than once per month for monitoring of his mental condition and compliance with these conditions of his convalescent leave. Following his placement on convalescent leave, Mr. Hinckley shall participate in an individual psychotherapy session with Dr. Sidney Binks at the FOPD during his monthly FOPD visit. Following six months on convalescent leave, Mr. Hinckley's therapeutic relationship with Dr. Binks may terminate. Upon completion of his appointments at the FOPD, Mr. Hinckley shall return directly to his mother's home in Williamsburg, Virginia, unless there is an emergency that requires him to remain in Washington, D.C., overnight consistent with paragraph 5 of this Order.

5. The FOPD shall notify the United States Secret Service, counsel for Mr. Hinckley and counsel for the government of the date and time of Mr. Hinckley's scheduled FOPD appointment. They shall provide the intended travel route and time of departure from Williamsburg, Virginia. Notice shall be provided to all parties at least two weeks prior to the

scheduled appointment. Mr. Hinckley shall travel directly to and from the FOPD on the designated route and may do so unaccompanied. If an emergency causes Mr. Hinckley to be delayed for more than thirty minutes, he shall notify the FOPD, and the FOPD shall immediately notify the Secret Service. If construction or an accident forces Mr. Hinckley to take an alternate route to or from Washington, D.C., Mr. Hinckley shall notify the FOPD as soon as possible, and the FOPD shall immediately notify the Secret Service. If Mr. Hinckley must spend the night in the District of Columbia or surrounding area due to an emergency, the FOPD shall immediately notify the United States Secret Service, counsel for the government, and counsel for Mr. Hinckley, and shall provide them with the location of Mr. Hinckley's accommodations for the night.

6. Dr. Nicole Johnson, Director of Forensic Services, at the FOPD shall conduct weekly telephone calls with Mr. Hinckley to assess the status of risk factors. She shall prepare a progress note summarizing the content of these weekly telephone calls. For the first six months of Mr. Hinckley's outplacement, Dr. Johnson shall speak with Mrs. Joann Hinckley at least once per week. Thereafter, the FOPD shall maintain telephone contact with Mrs. Hinckley twice monthly. Dr. Johnson shall document her contact with Mr. Hinckley and his mother in Mr. Hinckley's medical chart. Dr. Johnson shall consult with each member of the Williamsburg treatment team and a family member of Mr. Hinckley's prior to the monthly FOPD visits. Dr. Johnson shall submit the monthly progress notes of all Williamsburg treatment providers along with the monthly summary drafted by Mr. Weiss, see paragraph 7 of this Order, and her own progress notes to the Court and both counsel every month. Dr. Johnson shall corroborate Mr. Hinckley's self-report with the reports of treatment providers and family members by noting and addressing any discrepancies.

7. Mr. Jonathan Weiss, a licensed clinical social worker, will provide case management services to Mr. Hinckley. Mr. Hinckley shall meet with Mr. Weiss as often as required by Mr. Weiss but not less than twice per month. Mr. Weiss will make recommendations to Mr. Hinckley and the FOPD treatment team for opportunities to increase Mr. Hinckley's socialization, enrichment, or mental health support in the Williamsburg community, and will assist Mr. Hinckley in pursuing these opportunities. He also will assist Mr. Hinckley in finding paid employment and volunteer positions. Mr. Weiss will consult with each of Mr. Hinckley's work and volunteer supervisors no less than once a month to confirm Mr. Hinckley's attendance and adequate work performance. These reports shall be integrated into Mr. Weiss's monthly progress notes for Mr. Hinckley's case management. If Mr. Weiss or any other treatment provider learns that Mr. Hinckley has been absent from his volunteer, work or other activities for more than 12 hours without prior notice to a member of the treatment team or the FOPD, that individual shall immediately notify the FOPD, who shall immediately notify the Williamsburg treatment team, counsel for the government, and counsel for Mr. Hinckley. Prior to Mr. Hinckley's monthly FOPD appointment, Mr. Weiss will provide written feedback to the FOPD and Williamsburg treatment teams, summarizing any contact with Mr. Hinckley related to case management and recommendations. He will also participate in monthly telephone conference calls with the FOPD treatment team and the other Williamsburg treatment providers prior to Mr. Hinckley's scheduled monthly FOPD appointment. Mr. Weiss will collect monthly progress notes from the Williamsburg providers, and the notes of any contact with the Hinckley family and any volunteer or work supervisors. He shall draft a summary of these materials for the Court. Mr. Weiss shall deliver these documents and the summary to Dr. Johnson every month in advance of Mr. Hinckley's monthly appointment with FOPD. Mr. Weiss will also

corroborate Mr. Hinckley's self-report with the reports of treatment providers and family members by noting and addressing any discrepancies.

8. While on convalescent leave, Mr. Hinckley shall participate in structured activities in the Williamsburg, Virginia, community, such as a volunteer position or positions and/or paid employment, which are approved by Mr. Weiss and the FOPD. He shall be responsible for volunteering and/or working at least three days each week. Mr. Hinckley shall provide a weekly schedule of his volunteer/employment activities to Mr. Weiss and the FOPD in advance. Mr. Hinckley shall consent to any employer or volunteer organization speaking with any treatment provider involved in his care. Mr. Hinckley shall promptly notify Mr. Weiss and the FOPD of any changes in his place(s) of employment and/or volunteer activities. Mr. Weiss will be the primary point of contact with the United States Secret Service regarding Mr. Hinckley's volunteer, employment, and planned recreation activities in Williamsburg.

9. Dr. Giorgi-Guarnieri will provide psychiatric treatment to Mr. Hinckley, monitor Mr. Hinckley's risk factors, and prescribe medication for Mr. Hinckley as often as she determines is clinically indicated but not less than twice per month. After the first six months of convalescent leave, the frequency of Mr. Hinckley's appointments with Dr. Giorgi-Guarnieri may reduce to monthly, as opposed to twice monthly, if each member of the Williamsburg treatment team and Dr. Johnson agree that such a reduction is clinically indicated and appropriate for risk management. Dr. Giorgi-Guarnieri shall promptly notify the FOPD of any changes in Mr. Hinckley's prescribed psychiatric medication. Dr. Giorgi-Guarnieri will monitor Mr. Hinckley for any signs of deterioration or decompensation in his mental condition and will be especially alert for anger, psychosis, depression, any ideas of elopement, endangerment to self or others, noncompliance with the conditions of convalescent leave, or rejection of the

supervision provided to Mr. Hinckley by his family members. If any such symptoms or behaviors are detected, she will immediately notify designated staff at the FOPD. Dr. Giorgi-Guarnieri will continue to assess and monitor the risk factors identified in the Hospital's checklists, which she will complete and return to the FOPD and other members of the Williamsburg treatment team, along with written feedback summarizing her contact with Mr. Hinckley prior to his scheduled monthly FOPD appointment. Dr. Giorgi-Guarnieri also will participate in monthly telephone conference calls with the FOPD and other Williamsburg treatment providers prior to Mr. Hinckley's scheduled monthly FOPD appointment. If necessary, Dr. Giorgi-Guarnieri will facilitate acute hospitalization for psychiatric emergencies. She shall immediately notify the FOPD of any psychiatric emergency. The FOPD shall notify the Court and counsel within 24 business hours.

    10. Mr. Carl Beffa will continue to serve as Mr. Hinckley's individual and group therapist in the Williamsburg area. Mr. Hinckley will meet at least three times a month with Mr. Beffa for individual therapy sessions and at least once weekly for group therapy sessions. After the first six months of convalescent leave, the frequency of Mr. Hinckley's individual psychotherapy appointments with Mr. Beffa may reduce to twice monthly, as opposed to three times a month, if each member of the Williamsburg treatment team and Dr. Johnson agree that such a reduction is clinically indicated and appropriate for risk management. Prior to Mr. Hinckley's monthly FOPD appointment, Mr. Beffa will provide written feedback to the FOPD and the other members of the Williamsburg treatment team, summarizing his contacts with Mr. Hinckley. He will also participate in monthly telephone conference calls with Dr. Johnson at the FOPD and all Williamsburg treatment providers prior to Mr. Hinckley's scheduled monthly FOPD appointment.

11. Dr. Johnson, Dr. Giorgi-Guarnieri, Mr. Weiss, and Mr. Beffa may increase the frequency of their appointments with Mr. Hinckley above the minimums required in this Order if, in their professional judgment, it is clinically indicated or would further assist Mr. Hinckley's integration into the Williamsburg community.

12. Mr. Hinckley shall participate in individual music therapy sessions at least once per month in Williamsburg, Virginia, with a board-certified music therapist. The music therapist shall agree to maintain monthly contact with the Williamsburg treatment team and with Dr. Johnson at the FOPD. Prior to Mr. Hinckley's monthly FOPD appointment, the music therapist will provide written feedback to the FOPD and the other members of the Williamsburg treatment team, summarizing his or her contact with Mr. Hinckley. He/She will report to the FOPD and the Williamsburg treatment team any emergency issues that may be disclosed during sessions. He/She will participate in monthly telephone conference calls with the FOPD and other Williamsburg treatment providers prior to Mr. Hinckley's scheduled monthly FOPD appointment.

13. The Williamsburg treatment team — Dr. Giorgi-Guarnieri, Mr. Weiss, and Mr. Beffa — shall meet with Mr. Hinckley in person for monthly treatment planning conferences. They shall provide a copy of the treatment plan to the FOPD. At a frequency of not less than twice per year, Dr. Johnson shall meet in person with Mr. Hinckley and the Williamsburg treatment team for purposes of treatment planning and communication of treatment progress, concerns, and goals.

14. Mr. Hinckley will utilize the services of a Primary Care Physician ("PCP") in Williamsburg, Virginia, who will be identified by his family following clarification of benefits.

The PCP will be responsible for any medication for Mr. Hinckley's non-mental health medical concerns.

15. Mr. Hinckley shall comply with all requests by St. Elizabeths Hospital and/or the FOPD for information relating to any medical and/or psychiatric treatment he may receive by providers in the Williamsburg, Virginia community. Any health care provider shall provide all treatment information and records regarding Mr. Hinckley's care to the Hospital or the FOPD upon request.

16. The Hospital and Mr. Weiss shall continue to identify government assistance programs for which Mr. Hinckley may be eligible and shall work with him to apply for such programs.

17. Mr. Hinckley may not publicly display, physically or on the internet, any memorabilia, writings, paintings, photographs, art work, or music created by him, even anonymously, without approval from the Williamsburg treatment team. Before approving such a display, the Williamsburg treatment must first assess any risk involved in such activities, including the risk involved if the media or public identify Mr. Hinckley's work. Only after such a risk assessment may Mr. Hinckley's Williamsburg treatment providers, in consultation with Dr. Johnson, approve a display of Mr. Hinckley's memorabilia, writings, paintings, photographs, art work, or music. He may not participate in any public musical performance either individually or with a group.

18. Mr. Hinckley, his mother and his siblings will continue to adhere to the "Media Plan to be Utilized for Patient While on Conditional Release," which provides that any effort to contact the media, either by Mr. Hinckley or by his mother, in person or by any other means while Mr. Hinckley is on conditional release — now convalescent leave — will constitute

8

a violation of his conditions. If approached by media, Mr. Hinckley and the members of his family will decline to speak with them, and if the media persists, Mr. Hinckley and the members of his family will withdraw.

19. If Mr. Hinckley should receive any communication either by mail, phone, or electronic communication relating to his offense and/or his notoriety, he shall immediately notify Mr. Weiss and the FQPD and shall not respond to the communication.

20. Mr. Hinckley shall abide by all laws, shall not consume alcohol, illegal drugs, or controlled substances absent prescription, shall not possess any firearm, weapon, or ammunition, and shall not be arrested for cause. He shall comply with all requests for drug and/or alcohol screening.

21. Mr. Hinckley shall have no contact whatsoever with the following persons: Jodie Foster or any member of her family, any member of former President Ronald Reagan's family (including descendants), any member of James Brady's family (including descendants), Thomas Delahanty or any member of his family, Timothy McCarthy or any member of his family, and Jeanette Wick or any member of her family. Mr. Hinckley shall stay away from them, their homes and/or their place(s) of employment, and shall not communicate or attempt to communicate with them either directly or indirectly, through any other person, by telephone, written message, electronic message, social media, or any other means.

22. Mr. Hinckley may only reside in the community with his mother at her home in Williamsburg, Virginia for at least the first full year of convalescent leave. After a year on convalescent leave, following the comprehensive risk assessment conducted by the Hospital, Mr. Hinckley may reside in a separate residence, either alone or with roommates, or in a group home within a 30-mile radius of Williamsburg, provided that all members of the Williamsburg

treatment and Dr. Johnson agree and approve the selected living situation. Until that time, Mr. Hinckley may not stay at any location other than his mother's home without prior approval by his case manager, Mr. Jonathan Weiss, and the FOPD. If his mother or one of his siblings is not present at his mother's home, Mr. Hinckley may not have an overnight non-family guest.

23. If for any reason Mrs. Joann Hinckley is not able to adequately monitor Mr. Hinckley in her home, assuming Mr. Hinckley has not yet transitioned to a separate residence, Ms. Diane Sims or Mr. Scott Hinckley agrees to travel to Williamsburg as soon as possible and remain in the home with Mr. Hinckley until the FOPD and the Williamsburg team develop an alternative plan for Mr. Hinckley's convalescent leave and present the plan in writing to the Court and counsel for review. If the government objects to the plan within one week of receiving notice, then the alternative plan will not be implemented without the approval of this Court. Mr. Hinckley shall remain on convalescent leave unless the FOPD and the Williamsburg treatment team determine that Mr. Hinckley should be returned to the Hospital until an alternative plan is approved. If for any reason Ms. Sims or Mr. Scott Hinckley are unable to travel to Williamsburg or remain in Williamsburg with Mr. Hinckley, Mr. Hinckley shall be returned to inpatient status at the Hospital.

24. No tracking device need be installed on any vehicles driven by Mr. Hinckley. Mr. Hinckley shall provide the make, model, and license numbers of any cars he may drive to the FOPD. The FOPD shall provide this information to the United States Secret Service. The FOPD shall immediately notify counsel for the government and for Mr. Hinckley of any changes in the vehicles Mr. Hinckley drives.

25. Mr. Hinckley shall carry a GPS-enabled cell phone whenever he is away from his mother's residence. Mr. Hinckley shall provide the cell phone company, subscriber

information, and phone number of this cell phone to Dr. Giorgi-Guarnieri, Mr. Weiss, and the FOPD. The FOPD shall provide this information to the U.S. Secret Service. If the cell phone number, cell phone company, or any subscriber information changes, Mr. Hinckley must immediately inform Dr. Giorgi-Guarnieri, Mr. Weiss, and the FOPD. The FOPD shall immediately notify the U.S. Secret Service of any changes relating to Mr. Hinckley's cell phone. Dr. Johnson and the members of the Williamsburg treatment team are authorized to access the GPS data from Mr. Hinckley's cell phone.

26. Mr. Hinckley may be permitted to drive unaccompanied only within a thirty mile radius of Williamsburg, Virginia, unless he is traveling to Washington, D.C., for the purpose of his monthly scheduled appointment with his FOPD treatment team. He may travel up to fifty miles outside of Williamsburg if he is accompanied by a Williamsburg treatment team member or a family member. Except for his scheduled monthly visit to the FOPD in Washington, D.C., if Mr. Hinckley desires to travel further than fifty miles outside of Williamsburg, he must make a request to the FOPD at least seven business days in advance. The FOPD shall notify counsel for the government and for Mr. Hinckley in writing the next business day following receipt of the request. If the government files an objection, Mr. Hinckley may not travel unless approved by the Court.

27. Mr. Hinckley shall not knowingly travel to areas where the current or former Presidents, Vice Presidents, members of Congress, senior members of the Executive Branch, or any U.S. Secret Service protectee are or will be present imminently, whether in the District of Columbia, Williamsburg, or any other area. If Mr. Hinckley enters such an area, he shall leave the area immediately if requested by law enforcement or as soon as he becomes aware that an above individual is or will be present at that location.

28. Mr. Hinckley shall complete a daily log of his activities while on convalescent leave, which shall include his work/volunteer hours, social contacts/meetings, scheduled appointments with treatment providers, errands and recreational activities. He shall review the log with Mr. Weiss and bring a copy of it to his monthly appointments at the FOPD for review. A copy of the monthly log shall be included in the documents provided to the Court and counsel each month. At Mr. Weiss' discretion, Mr. Hinckley may also be required to continue to develop weekly and/or monthly itineraries with the assistance of Mr. Weiss. The specificity of the itineraries, if any, shall be left to the discretion of Mr. Weiss.

29. Mr. Hinckley shall be permitted access to the internet. For at least the first six months of convalescent leave, Mr. Hinckley should not access any website or search for any information relating to Mr. Hinckley's crimes or his victims, weapons, or hardcore pornography. This condition may be revisited by Dr. Giorgi-Guarnieri, Mr. Weiss, Mr. Beffa, and Dr. Johnson after this six to twelve-month period and may be modified if in their judgment such modification is clinically appropriate. The FOPD shall advise the Court, the Secret Service, and counsel for the government and for Mr. Hinckley of any modification. Mr. Hinckley shall not create any accounts with, or upload content to, social media websites, including but not limited to, Facebook, Twitter, Instagram, YouTube, and LinkedIn without unanimous authorization from the Williamsburg treatment team and Dr. Johnson of the FOPD. Mr. Hinckley also shall not upload any content at all, including music or photographs, to the internet, even anonymously, without unanimous authorization from the Williamsburg treatment team and Dr. Johnson of the FOPD, after assessing the risk of his doing so in light of his pathology.

30. Mr. Hinckley shall: (1) provide the username and password for any online accounts, including email accounts to Mr. Weiss and the FOPD; (2) refrain from tampering with

or erasing any browser's Internet history; and (3) permit Dr. Johnson and the Williamsburg treatment team access to any computer or phone owned by Mr. Hinckley or his mother to review the Internet history at any time. Mr. Hinckley shall provide his username and password for any online accounts, including personal email, to the FOPD, Dr. Giorgi-Guarnieri, and Mr. Weiss. The FOPD shall provide this information to the U.S. Secret Service. Mr. Hinckley shall abide by any additional internet restrictions that the Williamsburg treatment team and Dr. Johnson agree should be imposed.

31. If for any reason, a member of the Williamsburg treatment team becomes temporarily or permanently unavailable, the FOPD shall immediately notify the Court and counsel. They shall identify an alternative treatment provider within a reasonable period of time and provide information about that provider to the Court and counsel. If the government objects to the appointment of said provider, it must set forth its objections in writing within two weeks of receiving notice of the replacement provider.

32. After a full year to eighteen months on convalescent leave, the Hospital will conduct an updated risk assessment, similar to those completed by Dr. Katherine Murphy for the 2013 and 2015 evidentiary hearings. If Mr. Hinckley's progress has continued, the updated risk assessment reveals no new areas of concern, and the Williamsburg treatment team and Dr. Johnson are in full agreement that a reduction in the conditions of convalescent leave and the frequency of Mr. Hinckley's appointments with his treatment providers is warranted, the Court encourages the Hospital, counsel for Mr. Hinckley, and counsel for the government to meet and come to mutual agreement regarding proposed reductions in the conditions of convalescent leave and/or the frequency of Mr. Hinckley's appointments to be submitted to the Court for approval.

If an agreement cannot be reached, the Hospital or Mr. Hinckley should file a motion with the Court.

33. If Dr. Johnson or Dr. Giorgi-Guarnieri determine that Mr. Hinckley is in need of inpatient treatment, Mr. Hinckley shall cooperate with transport to Saint Elizabeths Hospital. If Mr. Hinckley fails to cooperate with transport to St. Elizabeths Hospital, the FOPD shall arrange transport with local or federal law enforcement. The Court, counsel for the government, and counsel for Mr. Hinckley shall be notified immediately.

34. If the government, the Hospital, any of Mr. Hinckley's treatment providers in Williamsburg, or a Hinckley family member have any concerns that Mr. Hinckley has violated any condition of his convalescent leave, it or they shall immediately notify the FOPD. The FOPD promptly shall notify Dr. Giorgi-Guarnieri, Mr. Weiss, and counsel for the government and for Mr. Hinckley. Any concerns that the parties believe are significant, constitute a material breach of these conditions of convalescent leave, or reflect decompensation must be brought immediately to the attention of the Court and counsel for the government and for Mr. Hinckley.

SO ORDERED.

DATE: 7/27/16

_____
PAUL L. FRIEDMAN
United States District Judge