# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 81-306 (PLF) |
| v. | ) | |
| | ) | |
| JOHN W. HINCKLEY, JR. | ) | |
| | ) | |

---

## CONSENT ORDER

This matter came before the Court upon an agreement by the Government and Mr. Hinckley for a modification of the terms of his convalescent leave. The parties and the Court have considered the Department of Behavioral Health's recommendation for modifications to Mr. Hinckley's July 27, 2016, release on convalescent leave to reside in the community and the Government's expert reports in support of the modifications proposed by the Department of Behavioral Health.

On June 21, 1982, a jury found Mr. Hinckley not guilty by reason of insanity on numerous charges related to the attempted assassination and severe wounding of President Ronald Reagan as well as the severe wounding of Presidential Press Secretary James Brady, Secret Service Agent Timothy McCarthy, and Metropolitan Police Officer Thomas Delahanty. He was committed to Saint Elizabeths Hospital for an indeterminate period of time following a *Bolton* hearing.[1]

On December 17, 2003, he was granted his first conditional release for community privileges. Since that date his conditional release privileges have been gradually expanded by the

---

[1] *Bolton v. Harris*, 395 F.2d 642 (D.C. Cir 1968).

Court.[2] The most recent hearing occurred over several days in April and May, 2015.  Thereafter, on July 27, 2016, this Court issued an Opinion and Order granting Mr. Hinckley convalescent leave to reside full-time in the community.

Pursuant to that Order, on September 10, 2016, Mr. Hinckley was placed on convalescent leave to reside with his mother in Williamsburg, Virginia.  Pursuant to the Court's Order, the Department of Behavioral Health has submitted monthly compliance reports to the Court and counsel.  Those reports have consistently indicated that Mr. Hinckley has been compliant with all the conditions of his release and has remained mentally stable.  Also, pursuant to Condition 32 of the the Court's Order, the Department of Behavioral Health completed an updated risk assessment of Mr. Hinckley on July 27, 2018.[3]  Thereafter, they recommended several modifications to Mr. Hinckley's convalescent leave privileges in an August, 2018 letter to the Court and counsel.

The government retained two independent experts to review DBH's risk assessment and proposed modifications to Mr. Hinckley's conditional release privileges. On October 16, 2018, Dr. Raymond Patterson, a forensic psychiatrist, submitted his response in support of DBH's proposed modifications to Mr. Hinckley's conditional release.  Thereafter, on October 22, 2018, Dr. Mitchell Hugonnet, a forensic psychologist, submitted his risk assessment of Mr. Hinckley, which also supported DBH's proposed modifications to Mr. Hinckley's conditional release.[4]

---

[2] This Court has heard several evidentiary hearings in which it has issued lengthy opinions detailing Mr. Hinckley's mental condition, treatment compliance and progression towards full convalescent leave in the community (See Opinions dated 12/17/03, 11/24/04, 12/30/05, 11/21/06, 6/19/07, 6/16/09, 12/20/13, and 7/27/16).

[3] Condition 32 of the Court's July 27, 2016 Order, required the Department of Behavioral Health to conduct an updated risk assessment within 18 months of the Court's Order in order to address Mr. Hinckley's compliance and whether any changes in the conditions of his release were warranted. The completion of the risk assessment was delayed after Dr. Katherine Murphy, a forensic psychologist who conducted the 2015 risk assessment of Mr. Hinckley, withdrew from the case.  A new evaluator, Dr. Samantha Benesh, who was unfamiliar with Mr. Hinckley's case, was retained by DBH and produced the required updated risk assessment.

[4] Both experts opposed DBH's recommendation to eliminate the requirement for Mr. Hinckley to maintain a daily log of his activities, finding that the logs were clinically and therapeutically beneficial to Mr. Hinckley.

Condition 32 of the Court's July 27, 2016 Order, required the parties to "meet and come to a mutual agreement regarding proposed reductions in the conditions of convalescent leave and/or the frequency of Mr. Hinckley's appointments to be submitted to the Court for approval." Accordingly, based upon the review of the DBH monthly status letters, the DBH risk assessment and recommendation for modifications to Mr. Hinckley's conditional release privileges, and the government expert reports, as well as the proposed consent order submitted by counsel for the United States and for Mr. Hinckley, this Court finds that Mr. Hinckley will not pose a danger to himself or others if he is permitted to continue residing full-time in Williamsburg, Virginia, on convalescent leave under the proposed conditions.

**ORDERED** that such convalescent leave is subject to the following conditions:

1.   Mr. Hinckley may continue to reside full-time in Williamsburg, Virginia, on convalescent leave. He currently resides with his mother in her home. At the FOPD and Williamsburg treatment team's discretion he may reside either independently, with roommates or with a family member in pre-approved housing within a 75 mile radius of Williamsburg, Virginia. Prior to moving to a new residence, he shall obtain approval from the FOPD and Williamsburg treatment teams and the FOPD shall notify the Court and counsel of the plan for his move to a new residence including the designated residence and the names of any family members or roommates that may also reside in the residence.

2. The Department of Behavioral Health at St. Elizabeths Hospital – through the Forensic Outpatient Department or "FOPD" and its Deputy Chief Clinical Officer, Dr. Nicole Johnson – shall have the ultimate responsibility for ensuring that Mr. Hinckley receives appropriate psychiatric treatment and medication while residing in Williamsburg, Virginia, on convalescent leave.

3

3. Mr. Hinckley shall maintain monthly contact with the FOPD. He shall travel to the FOPD at 35 K Street N.E., Washington, D.C., as often as clinically indicated but not less than once every two months for monitoring of his mental condition and compliance with these conditions of his convalescent leave. On the alternating month that he does not travel to the FOPD he shall participate in a remote face-to-face appointment with Dr. Nicole Johnson via Skype, Face Time or another similar application. Upon completion of his bi-monthly in person appointments with the FOPD, Mr. Hinckley shall return directly to his residence in Virginia, unless there is an emergency that requires him to remain in Washington, D.C. overnight consistent with paragraph 4 of this Order. Upon prior notice to the United States Secret Service and approval by the FOPD, Mr. Hinckley may visit his attorney's office located at 1825 Eye Street, N.W., Washington, D.C. 20006 following his FOPD appointment. Upon completion of his business with his attorney he shall return directly to his residence following the pre-approved travel route.

4. The FOPD shall notify the United States Secret Service, counsel for Mr. Hinckley and counsel for the government of the date and time of Mr. Hinckley's scheduled FOPD appointment as well as any appointment he may schedule with his attorney. They shall provide the intended travel route and time of departure from his residence and if relevant from the FOPD to his attorney's office. Notice shall be provided to all parties at least two weeks prior to the scheduled appointment(s). Mr. Hinckley shall travel directly to and from the FOPD and when relevant to and from his attorney's office on the designated route and may do so unaccompanied. If an emergency causes Mr. Hinckley to be delayed for more than thirty minutes, he shall notify the FOPD, and the FOPD shall immediately notify the United States Secret Service. If construction or an accident forces Mr. Hinckley to take an alternate route to or from Washington, D.C. Mr. Hinckley shall notify the FOPD as soon as possible, and the FOPD shall immediately notify the

4

United States Secret Service. If Mr. Hinckley must spend the night in the District of Columbia or surrounding area due to an emergency, the FOPD shall immediately notify the United States Secret Service, counsel for the government, and counsel for Mr. Hinckley, and shall provide them with the location of Mr. Hinckley's accommodations for the night.

5. Dr. Nicole Johnson, Deputy Chief Clinical Officer , shall conduct telephone calls with Mr. Hinckley to assess the status of risk factors as often as clinically indicated but not less than twice per month. She shall prepare a progress note summarizing the content of the telephone calls. Dr. Johnson shall also speak with Mrs. Joann Hinckley as often as clinically indicated but not less than once per month. Dr. Johnson shall document her contact with Mr. Hinckley and his mother in Mr. Hinckley's medical chart. Dr. Johnson shall consult with each member of the Williamsburg treatment team and a family member of Mr. Hinckley's prior to the bi-monthly in-person FOPD appointments. Dr. Johnson shall submit the progress notes of all Williamsburg treatment providers along with the summary drafted by Mr. Weiss, see paragraph 6 of this Order, and her own progress notes to the Court and both counsel every two months. Dr Johnson shall corroborate Mr. Hinckley's self-report with the reports of treatment providers and family members by noting and addressing any discrepancies.

6. Mr. Jonathan Weiss, a licensed clinical social worker, will provide case management services to Mr. Hinckley. Mr. Hinckley shall meet with Mr. Weiss as often as clinically indicated but not less than twice per month. Mr. Weiss will make recommendations to Mr. Hinckley and the FOPD treatment team for opportunities to increase Mr. Hinckley's socialization, enrichment, or mental health support in the Williamsburg community, and will assist Mr. Hinckley in pursuing these opportunities. He also will assist Mr. Hinckley in finding paid employment and volunteer positions.-Mr. Weiss will consult with each of Mr. Hinckley's work and volunteer supervisors no

less than once a month to confirm Mr. Hinckley's attendance and adequate work performance. These reports shall be integrated into Mr. Weiss's monthly progress notes for Mr. Hinckley's case management. If Mr. Weiss or any other treatment provider learns that Mr. Hinckley has been absent from his volunteer, work or other activities for more than 12 hours without prior notice to a member of the treatment team or the FOPD, that individual shall immediately notify the FOPD, who shall immediately notify the Williamsburg treatment team, counsel for the government, and counsel for Mr. Hinckley. Prior to Mr. Hinckley's bi-monthly in person FOPD appointments, Mr. Weiss shall provide written feedback to the FOPD and Williamsburg treatment teams, summarizing any contact with Mr. Hinckley related to case management and recommendations. He will also participate in bi-monthly telephone conference calls with the FOPD treatment team and the other Williamsburg treatment providers prior to Mr. Hinckley's scheduled in-person appointments with the FOPD. Mr. Weiss will collect monthly progress notes from the Williamsburg providers, and the notes of any contact with the Hinckley family and any volunteer or work supervisors. He shall draft a summary of these materials for the Court. Mr. Weiss shall deliver these documents and the summary to Dr. Johnson every other month in advance of Mr. Hinckley's in-person appointment with FOPD. Mr. Weiss will also corroborate Mr. Hinckley's self-report with the reports of treatment providers and family members by noting and addressing any discrepancies.

7. While on convalescent leave, Mr. Hinckley shall participate in structured activities in the Williamsburg, Virginia, community, such as a volunteer position or positions and/or paid employment, which are approved by Mr. Weiss and the FOPD. He shall be responsible for volunteering and/or working at least three days each week. Mr. Hinckley shall provide a weekly schedule of his volunteer/employment activities to Mr. Weiss and the FOPD in advance. Mr.

Hinckley shall consent to any employer or volunteer organization speaking with any treatment provider involved in his care. Mr. Hinckley shall promptly notify Mr. Weiss and the FOPD of any changes in his place(s) of employment and/or volunteer activities. Mr. Weiss will be the primary point of contact with the United States Secret Service regarding Mr. Hinckley's volunteer, employment, and planned recreation activities in Williamsburg.

8. Dr. Giorgi-Guarnieri will provide psychiatric treatment to Mr. Hinckley, monitor Mr. Hinckley's risk factors, and prescribe medication for Mr. Hinckley as often as she determines is clinically indicated but not less than once per month.  Dr. Giorgi-Guarnieri shall promptly notify the FOPD treatment team of any changes in Mr. Hinckley's prescribed psychiatric medication. Dr. Giorgi-Guarnieri will monitor Mr. Hinckley for any signs of deterioration or decompensation in his mental condition and will be especially alert for anger, psychosis, depression, any ideas of elopement, endangerment to self or others, noncompliance with the conditions of convalescent leave, or rejection of the supervision provided to Mr. Hinckley by his family members.  If any such symptoms or behaviors are detected, she will immediately notify designated staff at the FOPD. Dr. Giorgi-Guarnieri will continue to assess and monitor the risk factors identified in the Hospital's checklists, which she will complete and return to the FOPD and Williamsburg treatment teams along with written feedback summarizing her contact with Mr. Hinckley prior to his scheduled in-person FOPD appointment.  Dr. Giorgi-Guarnieri also will participate in bi-monthly telephone conference calls with the FOPD treatment team and other Williamsburg treatment providers prior to Mr. Hinckley's scheduled in-person FOPD appointment.  If necessary, Dr. Giorgi-Guarnieri will facilitate acute hospitalization for psychiatric emergencies.  She shall immediately notify the FOPD of any psychiatric emergency.  The FOPD shall notify the Court and counsel within 24 business hours.

7

9. Mr. Carl Beffa will continue to serve as Mr. Hinckley's individual and group therapist in the Williamsburg area. Mr. Hinckley will meet at least once weekly with Mr. Beffa for group therapy sessions and as often as clinically indicated but not less than twice per month for individual therapy sessions with Mr. Beffa. Prior to Mr. Hinckley's in-person FOPD appointment, Mr. Beffa will provide written feedback to the FOPD and Williamsburg treatment team, summarizing his contacts with Mr. Hinckley. He will also participate in bi-monthly telephone conference calls with Dr. Johnson at the FOPD and all Williamsburg treatment providers prior to Mr. Hinckley's scheduled in-person FOPD appointment.

10. Dr. Johnson, Dr. Giorgi-Guarnieri, Mr. Weiss, and Mr. Beffa may increase the frequency of their appointments with Mr. Hinckley above the minimums required in this Order if, in their professional judgment, it is clinically indicated or would further assist Mr. Hinckley's continued integration into the Williamsburg community.

11. Mr. Hinckley shall participate in individual music therapy sessions at least once per month in Williamsburg, Virginia, with a board-certified music therapist. The music therapist shall agree to maintain monthly contact with the Williamsburg treatment team and with Dr. Johnson at the FOPD. Prior to Mr. Hinckley's in-person FOPD appointment, the music therapist will provide written feedback to the FOPD and the other members of the Williamsburg treatment team, summarizing his or her contact with Mr. Hinckley. He/She will report to the FOPD and the Williamsburg treatment team any emergency issues that may be disclosed during sessions. He/She will participate in bi-monthly telephone conference calls with the FOPD and other Williamsburg treatment providers prior to Mr. Hinckley's scheduled in-person FOPD appointment.

12. The Williamsburg treatment team – Dr. Giorgi-Guarnieri, Mr. Weiss, and Mr. Beffa – shall meet with Mr. Hinckley in person once per month for treatment planning conferences. They

shall provide a copy of the treatment plan to the FOPD. At a frequency of not less than twice per year, Dr. Johnson shall meet in person with Mr. Hinckley and the Williamsburg treatment team for purposes of treatment planning and communication of treatment progress, concerns, and goals.

13. Mr. Hinckley will utilize the services of a Primary Care Physician ("PCP") in Williamsburg, Virginia, who will be identified by his family following clarification of benefits. The PCP will be responsible for any medication for Mr. Hinckley's non-mental health medical concerns.

14. Mr. Hinckley shall comply with all requests by St. Elizabeths Hospital and/or the FOPD for information relating to any medical and/or psychiatric treatment he may receive by providers in the Williamsburg, Virginia community. Any health care provider shall provide all treatment information and records regarding Mr. Hinckley's care to the Hospital or the FOPD upon request.

15. The FOPD and Mr. Weiss shall continue to identify government assistance programs for which Mr. Hinckley may be eligible and shall work with him to apply for such programs.

16. Mr. Hinckley may not publicly display, physically or on the internet, any memorabilia, writings, paintings, photographs, art work, or music created by him, even anonymously, without approval from the Williamsburg treatment team. Before approving such a display, the Williamsburg treatment team must first assess any risk involved in such activities, including the risk involved if the media or public identify Mr. Hinckley's work. Only after such a risk assessment may Mr. Hinckley's Williamsburg treatment providers, in consultation with Dr. Johnson, approve an anonymous display of Mr. Hinckley's memorabilia, writings, paintings, photographs, art work or music. Any display of these creative works must be facilitated and managed by his music therapist Nicole Drozd, MS, MC-BT (music) or Mr. Jonathan Weiss (art other than music). He may not receive any financial benefit from these displays and may not communicate with any

persons who may comment on the displays. This permission is specific to Ms. Drozd and Mr. Weiss. If Ms. Drozd and/or Mr. Weiss discontinue treatment with Mr. Hinckley or he begins music therapy and/or case management with another treatment provider, he must return to FOPD for approval to display his music and/or art under the supervision of the new treatment provider(s). He may not participate in any public musical performance either individually or with a group. He may not have his own website or post his private antique items on websites for financial gain.

17. Mr. Hinckley, his mother and his siblings will continue to adhere to the "Media Plan to be Utilized for Patient While on Conditional Release," which provides that any effort to contact the media, either by Mr. Hinckley or by his mother, in person or by any other means while Mr. Hinckley is on conditional release – now convalescent leave – will constitute a violation of his conditions. If approached by media, Mr. Hinckley and the members of his family will decline to speak with them, and if the media persists, Mr. Hinckley and the members of his family will withdraw.

18. If Mr. Hinckley should receive any communication either by mail, phone, or electronic communication relating to his offense and/or his notoriety, he shall immediately notify Mr. Weiss and the FOPD and shall not respond to the communication.

19. Mr. Hinckley shall abide by all laws, shall not consume alcohol, illegal drugs, marijuana, synthetic cannabinoids or controlled substances absent prescription, shall not possess any firearm, weapon, or ammunition, and shall not be arrested for cause. He shall comply with all requests for drug and/or alcohol screening.

20. Mr. Hinckley shall have no contact whatsoever with the following persons: Jodie Foster or any member of her family, any member of former President Ronald Reagan's family (including descendants), any member of James Brady's family (including descendants), Thomas Delahanty

or any member of his family, Timothy McCarthy or any member of his family, and Jeanette Wick or any member of her family. Mr. Hinckley shall stay away from them, their homes and/or their place(s) of employment, and shall not communicate or attempt to communicate with them either directly or indirectly, through any other person, by telephone, written message, electronic message, social media, or any other means.

21. No tracking device need be installed on any vehicles driven by Mr. Hinckley. Mr. Hinckley shall provide the make, model and license numbers of any cars he may drive to the FOPD. The FOPD shall provide this information to the United States Secret Service. The FOPD shall immediately notify counsel for the government and for Mr. Hinckley of any changes in the vehicles Mr. Hinckley drives.

22. Mr. Hinckley shall carry a GPS-enabled cell phone whenever he is away from his residence. Mr. Hinckley shall provide the cell phone company, subscriber information, and phone number of his cell phone to Dr. Giorgi-Guarnieri, Mr. Weiss, and the FOPD. The FOPD shall provide this information to the United States Secret Service. If the cell phone number, cell phone company, or any subscriber information changes, Mr. Hinckley must immediately inform Dr. Giorgi-Guarnieri, Mr. Weiss, and the FOPD. The FOPD shall immediately notify the United States Secret Service of any changes relating to Mr. Hinckley's cell phone. Dr. Johnson and members of the Williamsburg treatment team are authorized to access the GPS date from Mr. Hinckley's cell phone.

23. Mr. Hinckley may be permitted to drive unaccompanied within a 75 mile radius of Williamsburg, Virginia, unless he is traveling to Washington, D.C., for the purpose of his scheduled FOPD appointment or meeting with his attorney. Except for his scheduled visits to the FOPD in Washington, D.C., if Mr. Hinckley desires to travel further than 75 miles outside of

Williamsburg, he must make a request to the FOPD at least seven business days in advance. The FOPD shall notify counsel for the government and for Mr. Hinckley in writing the next business day following receipt of the request. If the government files an objection, Mr. Hinckley may not travel unless approved by the Court.

24. Mr. Hinckley shall not knowingly travel to areas where the current or former Presidents, Vice Presidents, members of Congress, senior members of the Executive Branch, or any United States Secret Service protectee are or will be present imminently, whether in the District of Columbia, Williamsburg, or any other area. If Mr. Hinckley enters such an area, he shall leave the area immediately if requested by law enforcement or as soon as he becomes aware that an above individual is or will be present at that location.

25. Mr. Hinckley shall complete a daily log of his activities while on convalescent leave, which shall include his work/volunteer hours, social contacts/meetings, scheduled appointments with treatment providers, errands and recreational activities. He shall review the log with Mr. Weiss and bring a copy of it to his in-person FOPD appointments for review. A copy of his monthly log shall be included in the documents provided to the court and counsel every other month.

26. Mr. Hinckley shall be permitted access to the internet. He may not access any website or search for any information relating to his crimes or his victims, weapons, or hardcore pornography unless the Williamsburg treatment team and Dr. Johnson believe it is clinically appropriate. The FOPD shall advise the Court, the United States Secret Service, and counsel for the government and for Mr. Hinckley if they approve any of the above mentioned topics. Mr. Hinckley shall not create any accounts with, or upload content to, social media websites, including but not limited to Facebook, Twitter, Instagram, YouTube, and LinkedIn without unanimous

authorization from the Williamsburg treatment team and Dr. Johnson of the FOPD. Mr. Hinckley shall not personally upload any content at all, including music or photographs, to the internet .

27. Mr. Hinckley shall: (1) provide the username and password for any online accounts, including email accounts to Mr. Weiss and the FOPD; (2) refrain from tampering with or erasing any browser's Internet history; and (3) permit Dr. Johnson and the Williamsburg treatment team access to any computer or phone owned by Mr. Hinckley or his mother to review the Internet history at any time. Mr. Hinckley shall provide his username and password for any online account, including personal email, to the FOPD, Dr. Giorgi-Guarnieri, and Mr. Weiss. The FOPD shall provide this information to the U.S. Secret Service. Mr. Hinckley shall abide by any additional internet restrictions that the Williamsburg treatment team and Dr. Johnson agree should be imposed.

28. If for any reason, a member of the Williamsburg treatment team becomes temporarily or permanently unavailable, the FOPD shall immediately notify the Court and counsel. They shall identify an alternative treatment provider within a reasonable period of time and provide information about that provider to the Court and counsel. If the government objects to the appointment of said provider, it must set forth its objections in writing within two weeks of receiving notice of the replacement provider.

29. The Williamsburg treatment team and Dr. Johnson shall begin to identify alternative treatment providers in the Williamsburg area in order to facilitate Mr. Hinckley's transition to new providers when the current team members retire or leave the area. The FOPD shall provide updates on their progress identifying alternative providers and planning for transition from current providers to the new providers in their bi-monthly reports to the Court and counsel.

30. If the government, the FOPD, any of Mr. Hinckley's treatment providers in Williamsburg, or a Hinckley family member have concerns that Mr. Hinckley has violated any condition of his convalescent leave, it or they shall immediately notify the FOPD. The FOPD promptly shall notify Dr. Giorgi-Guarnieri, Mr. Weiss, and counsel for the government and for Mr. Hinckley. Any concerns that the parties believe are significant, constitute a material breach of these conditions of convalescent leave, or reflect decompensation must be brought immediately to the attention of the court and counsel for the government and Mr. Hinckley.

**SO ORDERED**

PAUL L. FRIEDMAN
United States District Judge

DATE: 11 | 16 | 18

14