IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, Plaintiff, vs. JOHN W. HINCKLEY, JR., Defendant.

CR No. 81-306

Washington, D.C.
September 10, 2019
9:30 a.m.

TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE PAUL L. FRIEDMAN
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Government:

Kacie McCoy Weston
U.S. ATTORNEY'S OFFICE
FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, D.C. 20530
(202) 252-7509
kacie.weston@usdoj.gov

For the Defendant:

Barry William Levine
BLANK ROME LLP
1825 Eye Street, NW
Washington, D.C. 20006
(202) 420-2237
BLevine@BlankRome.com

APPEARANCES CONTINUED:

Court Reporter:                  William P. Zaremba
                                 Registered Merit Reporter
                                 Certified Realtime Reporter
                                 Official Court Reporter
                                 U.S. Courthouse
                                 333 Constitution Avenue, NW
                                 Room 6511
                                 Washington, D.C. 20001
                                 (202) 354-3249

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

DEPUTY CLERK: This is Criminal Action 81-306, United States versus John W. Hinckley.

Counsel, please step forward to the podium and state your appearances for the record.

MS. WESTON: Good morning, Your Honor. Kacie Weston on behalf of the United States.

THE COURT: Ms. Weston.

MR. LEVINE: Good morning, Your Honor. Barry Levine from Blank Rome on behalf of Mr. Hinckley.

THE COURT: Mr. Levine.

Okay. So we're here for a status conference with respect to John Hinckley.

And essentially in July of 2016, after we had a very lengthy evidentiary hearing, I entered an order, an opinion, releasing him to full convalescent leave, living full time in the Williamsburg community with his mother.

And at that time, there were a series of conditions that I imposed, some over the objection of Mr. Hinckley's lawyer. Based on the evidence and the situation then presented, there were a total of 34 conditions that were related to his convalescent leave.

And he'd come back to Washington once a month to visit professionals at St. Elizabeths, to check-in. Other than that, he had and has a professional team in

Williamsburg; a caseworker, a music therapist, a psychiatrist, a psychologist, individual therapy, group therapy. He's working.

And I get monthly reports. Maybe now they're every other month, I guess. I can't remember. But I read them with care. And had I had any concerns about anything I had read, I would have been in touch.

So last fall, we were scheduled to have a hearing. And one of the things that I guess I said in my 2016 opinion -- and Ms. Weston, Mr. Levine will correct me if I've misstated anything -- was that at some point down the road, we'd have another risk assessment, the doctor who does the risk assessments.

And we had a series of reports, I guess, last -- the summer of 2018 or thereabouts from Dr. Beenish and Dr. Patterson and others.

MR. LEVINE: That report was July 27, 2018, Your Honor.

THE COURT: And Dr. Beenish was the risk assessment person.

And then Dr. Patterson is the government's expert.

And there was another report.

And we were scheduled to have a hearing to deal with whether we needed -- or what to do in light of the risk assessment that was done last July.

And instead, the parties came to me and said, well, we don't think there's any need for a hearing because everybody seems to be pretty much in agreement about Mr. Hinckley's successful performance in Williamsburg and his continued lack of demonstration of any risk factors.

And so there was a consent order presented to me and suggested we didn't need a hearing, we didn't need an evidentiary hearing.

The consent order had many fewer conditions than the -- some fewer conditions, not as few as Mr. Levine would have liked, and different conditions.

And we had a status conference on November 16th, 2018, to discuss the consent order and for me to raise some questions and get some answers to some questions.

And after that, I signed the consent order.

I continued -- on November 16th, 2018, which is docket 663. And I continued to get reports from the treatment team in Williamsburg. And as I said, I read them carefully and we agreed we'd have a status conference to consider -- get an oral report on how things are going and whether there's any need to make any changes or there's any reason to have another risk assessment soon or not now but maybe later.

And that's sort of where I think we are. But if I've said anything wrong, you all can correct me and I'm

happy to hear what you each have to report.

MR. LEVINE: I think, Your Honor, your recitation is accurate.

I think it's time for more.

Mr. Hinckley has gone from cared for to caretaker. He has been taking care of his mother. He has been taking care of his brother. And has been -- as you accurately said, there's been no manifestation of any of the risk factors.

I think his behavior, his performance has been impeccable.

So what we think should happen, Your Honor, is there should be a further reduction in the conditions of release.

We think it could probably be done, some of those reductions, based on the record as it exists, without an additional risk assessment.

We do think that in due course, we're going to be filing a motion for an unconditional release.

If the Court believes that a risk assessment in that regard would be appropriate, we would have no objection.

We think the record is ample to support it now, but if the Court -- if it gives the Court greater comfort to have a risk assessment, we do not object to it.

We know that this all takes a great deal of time. I suspect that if we ask for a reduction of conditions, the government will want to have its expert review it.

So there would be our filing of a motion, there would be the government's review of the filing, probably a review of the treatment team opinions. And then, of course, there's getting it on the Court's calendar.

So if the Court believes that it's going to want a risk assessment for an unconditional release or even for reduction of some of the release conditions, we would ask that the Court, today, order the risk assessment.

THE COURT: Maybe it depends on what you're going to propose.

In other words, you said a few minutes ago that you're going to request further reductions in conditions. And I thought I heard you say in your view that some of them could be considered based on the existing record, which I took to mean that at least some of what you will be asking for wouldn't need a risk assessment. Now, the government may disagree, but that's what I thought I heard you say.

MR. LEVINE: That is correct. That is correct.

THE COURT: So would it make more sense for you to present a proposal before we decide how to proceed?

MR. LEVINE: I didn't hear you, Your Honor, I'm sorry.

THE COURT: Would it make more sense for you to present a proposal before we decide how to proceed or perhaps even to present the proposal to Ms. Weston and the hospital before you present it to me and see whether it's possible that there would be agreement on some or all of what you propose, as there was last time?

Or maybe it was the government who proposed and you said rather than insist on a hearing, you'll take half a loaf.

MR. LEVINE: I think that is what happened, Your Honor. We did agree to take less than we thought was appropriate.

But time is our enemy here.

Time --

THE COURT: Well, one of the things I want to ask you about but I don't want to interrupt you is, where do we -- time is our enemy in a number of respects, one of which I regret to say because it's just a fact.

Ms. Hinckley -- I mean, what has been done with respect to exploring alternative housing options either for John or for John and his brother, Scott? I know in some of the monthly reports, there was some discussion of getting a mortgage or a reverse mortgage on the property his mother owns. I assume that was to become more liquid.

But, you know, I haven't seen -- other than the

fact that we discuss it every time we're here and it's sometimes mentioned in the reports, I haven't seen anything, I don't think, in the reports saying that Mr. Weiss is prepared to propose a solution.

I did remember -- I do remember reading that he was talking to people at Colonial Behavioral Health. And I took that to mean -- again, Barry, I haven't read each of these reports in detail in the last day or two, but I took that to mean he was talking to Behavioral -- Colonial Behavioral Health, both to see if they could substitute for some of the current treatment providers because it would cost the family less money and also exploring whether some of that could be covered by either federal or state health insurance, but also, perhaps, the Colonial Behavioral Health was one of the alternatives in terms of living arrangements.

But I don't think I've seen anything recently about what's going on on the housing front, even though, like all of us, Ms. Hinckley isn't getting any younger. But she's in her 90s, we're not yet.

MR. LEVINE: And her health is stable.

But she's well into her 90s now, Your Honor, and John is principally taking care of her.

THE COURT: Taking care of her. Right.

MR. LEVINE: He takes her to her doctors, he does the shopping for the house, he keeps the household as is.

One of the things that his treatment providers have suggested is that he do some travel, travel in his own name; that he get a job in the industry that he likes, the music industry in particular.

THE COURT: But have efforts been made in that regard?

MR. LEVINE: Well, this is what we have in mind with respect to a reduction of the conditions, all the precursor to a motion for an unconditional release.

Of course, you know, it's an elaborate process to get -- if Mr. Hinckley is going to be able to travel, we're going to have to provide care for his mother, and that, as I said, is elaborate.

And before that is undertaken, we have to know that we could do it, so that would require permission from the Court.

So that's what we're engineering now.

THE COURT: Well, let me ask you a question, which you may not be able or willing to answer in open court:

To what extent is Scott, his brother, able to take care of his mother? And if John were off working or if John were traveling or whatever, is Scott up to the task of doing some of the things that John has been doing for his mother?

MR. LEVINE: Your Honor, while my opinion is surely not a professional one, I think he's --

THE COURT: Neither of them is a professional. Neither of them is a professional caregiver.

MR. LEVINE: Yes.

I think Scott is not able to do that.

Scott is having some of his own medical issues now and it is possible that he will be relocating to be with his daughter.

THE COURT: In Texas?

MR. LEVINE: No.

THE COURT: Not in Texas.

MR. LEVINE: And not nearby Virginia.

THE COURT: Not nearby Virginia and not back in Texas. Okay.

MR. LEVINE: Yes.

One of the things John, of course, would like to be able to do is to be able to see his sister who is in Texas.

THE COURT: I know she visits occasionally and she calls more frequently.

MR. LEVINE: Right.

And he has other relatives there, nieces, et cetera.

So the ambition here is to seek a court order allowing him to do some travel and to become -- to get a job in the music industry, possibly in California.

I know it has the support of the treatment team.

THE COURT: It hasn't appeared in any of the monthly reports I've read.

MR. LEVINE: That's correct, Your Honor.

THE COURT: It's never been mentioned before today, so far as I know.

MR. LEVINE: I think that's right, Your Honor.

I make this representation to the Court based on my conversations over the last two weeks.

THE COURT: Okay.

Anything else you want to say at the moment before I hear from Ms. Weston?

MR. LEVINE: No, Your Honor. I think that's satisfactory.

THE COURT: Okay. Thank you.

Ms. Weston.

MS. WESTON: Thank you, Your Honor.

Your Honor, first and foremost, the government would note that there is no motion pending before the Court.

Mr. Levine has also expressed to the government several different aspirations that he has on behalf of Mr. Hinckley or that Mr. Hinckley may have on behalf of himself and intentions of filing various motions.

However, at this point, there is no motion pending and we do not believe it's appropriate to consider any of

these requests until a motion is pending that sets forth the specific requests, whether that be a reduction in conditions or whether that be a request for unconditional release.

We believe that that filing of a motion can happen at any point that Mr. Levine wishes to file it and that that would trigger the beginning of all of those processes for the Court and for the government, at which point the government could consider whether or not we would be willing to agree to some reduction short of an additional risk assessment.

It might be the case that, depending on the nature of the reduction requested, that we might be able to agree to something.

I can tell you right now that travel to California to work in the music industry is probably not one of those things that we would agree to without a risk assessment, and something that, frankly, gives us great pause.

That type of work and type of aspiration that Mr. Hinckley had was one of the aspirations he had and what he was trying to do at the time of this underlying offense, and so that does give us great pause.

Perhaps traveling to see family or something short of that is something that with a risk assessment and an opinion of a treatment team, we might be willing to consider.

But none of that are we in a position to consider without an actual motion that sets forth what the requests are. And right now, there is nothing before the Court.

The other concern that we do have -- while we acknowledge that he is following the conditions as set forth, he is doing everything that he's been asked to do, as far as his daily activities.

The one thing that does still give the government pause and that Your Honor already sort of alluded to is that there does not seem to have been great progress made toward the long-term planning for the transition of his treatment to different providers upon the retirement of several of his current providers.

The only discussion of that at all in these reports that we've received is in the negative, which came from Colonial Behavioral Health declining to accept his treatment.

I do understand from the most recent report that Mr. Weiss and the other treatment providers are taking steps to try to potentially appeal that or see if there is a way to challenge their declination and see if he has a right to be served by them regardless. I don't believe that has concluded yet, but it does appear they're working on that.

But as of right now, there is no plan in place for the transition of his treatment.

And the government submits that one of the primary reasons Mr. Hinckley is doing as well as he is doing is because of the extensive structure that he has in his life.

THE COURT: Not just the structure but the people involved.

MS. WESTON: Absolutely.

THE COURT: I mean, there's no question in my mind that Mr. Weiss has been a very, very positive influence.

Mr. Beffa, whom I had some concerns about years ago, I think his group therapy sessions clearly are really good --

MS. WESTON: Absolutely.

THE COURT: -- and help with socialization.

And the music therapy --

MS. WESTON: Absolutely.

THE COURT: -- which is, I'm sure, one of the reasons Mr. Levine is thinking about what he's thinking about.

Music therapy, she's been great, and the therapy has been hugely successful and it's all good.

MS. WESTON: Absolutely.

THE COURT: And, of course, Dr. G-G, who may be retiring or moving, we keep hearing.

MS. WESTON: And the government does not disagree, Your Honor.

We believe that all those individuals, all the structure and the support that Mr. Hinckley has is absolutely instrumental to his success and has been during his time in Williamsburg.

And, therefore, we really have great hesitation about agreeing to any sort of unconditional, obviously, unless there was some significant plan in place to replace those systems.

But we think that we are nowhere near that discussion at this point in time. And that right now, the next step, should there be one, would be for defense to file a motion setting forth what it is they're seeking.

THE COURT: Okay.

So is there anybody here from the hospital?

MS. WESTON: Your Honor, unfortunately, Ms. Hnatowski, who was counsel for the hospital, just took a new position, and her last day in the office was, I believe, last Friday or, perhaps, the Friday before --

THE COURT: Okay.

MS. WESTON: -- and they are in the process of replacing her.

It was my understanding that someone may be here on her behalf. But I have not spoken to anyone yet this morning, so I don't know that there is.

THE COURT: Okay.

Because obviously whatever proposal Mr. Levine puts on the table, as always, their input is important.

They have often, I think almost always agreed with what -- in the early stages, they were making proposals and Mr. Levine would agree with them.

But in more recent years, I think that they have deferred to Mr. Hinckley and his lawyers and the treatment team in Virginia.

But obviously with -- and they only see him once a month or maybe once every two months now personally, although they do have phone conversations with him.

MS. WESTON: That's correct, Your Honor.

He comes up every other month now and has both phone conversations and Skype conversations in alternating months.

THE COURT: Yeah.

So he comes to visit the treatment team in D.C. -- the people at St. Elizabeths in D.C. every other month, but there are conversations with Mr. Hinckley and with -- by the people and with the treatment team.

MS. WESTON: Yes, Your Honor.

THE COURT: So the reports I get, I have input from St. Elizabeths, as well as each individual on the treatment team --

MS. WESTON: That's correct.

THE COURT: -- in Williamsburg.

But my only point is, they probably have less basis for either agreement or disagreement with anything that Mr. Levine would propose or that maybe you would say in response, but...

MS. WESTON: I think the hospital gives great deference to the treatment team members in Williamsburg, absolutely.

But I think that they would certainly take a position based upon their interactions and communications with the treatment team there.

THE COURT: Correct.

Okay. Mr. Levine.

MR. LEVINE: Your Honor, the government historically has opposed just about everything we've requested. I don't expect it to be much different.

I do know that over the course of years, I can say without doubt during the time he's been on convalescent leave, that his behavior, his performance, his compliance with the court order has been flawless. There has been no manifestation whatsoever of any dangerous behavior. There has been no symptom of any mental disease.

And I think it's worth re-stating that our obligation is to have him in the least restrictive custody -- least restrictive environment, consistent with

public safety. I think that is the first axiom that we apply.

And then we ask ourselves the question of whether he would be a danger to himself or others as a result of a mental disease. And there has been no manifestation of danger whatsoever, and there has been no symptom of mental disease whatsoever.

And we know this in the context of probably one of the most scrutinized citizens in our nation's history. He's watched and watched and watched. So we know that the statement with respect to his behavior is exactly as is reflected in the papers, and we think it is flawless.

The comment made by the government about Colonial Behavioral Health might be viewed as a negative comment is incorrect.

They said in their letter that they are declining this -- to take on this matter because the "Workload and paperwork involved in this case is simply more than CBH," Colonial Behavioral Health, "is staffed to handle."

Then it goes on to say that, we have noticed that the condition that -- that any changes in the assigned clinical team must be approved in advance by the Court. They're not able to do that.

And then they say, "For the record, our decision should in no way be construed as a rejection of Mr. Hinckley

either clinically or as an individual."

I mean, so this is not a negative report. This is just a report that says, they're not able, as a matter of their structure, to engage in the reporting requirements that this Court has required.

These are other reasons why we believe that it is important to, in a transition, in looking forward, to -- in anticipation of retirement of treatment team members, to reduce the conditions of release.

Thank you, Your Honor.

MS. WESTON: If I may just briefly, Your Honor.

I want to be clear. I was not indicating that Colonial Behavioral Health was saying something negative about Mr. Hinckley.

My point is that regardless of what they think about Mr. Hinckley himself, they are currently saying they can't handle the case.

The response to that should not be just to cut him loose with no plan. The response to that could potentially be to discuss what obligations they think they could handle and see if that's something the parties might be able to agree on so that it could be worked out.

But the right response to them saying, we just can't handle these obligations of this individual who has these special needs, should not be just to cut him loose

with absolutely no plan and no structure after he has been doing so well and being so successful with that kind of level of support and structure in his life.

THE COURT: Okay.

Well, it seems to me that, you know, Mr. Levine's, on behalf of Mr. Hinckley's, ultimate goal is unconditional release.

Typically if somebody is on convalescent release from St. Elizabeths Hospital, first of all, that typical patient is not John W. Hinckley. Secondly, that typical patient lives in the Washington Metropolitan area, and so it's very easy to find a group home or a family member or a spouse or a girlfriend or a boyfriend or a roommate and to report back to the hospital once a while.

It's not complicated in most cases where people have been found to no longer be a danger to themselves or others if they have their serious mental illnesses in full and complete remission as Mr. Hinckley has been for a long, long time. It's become much more complicated in this case, for a variety of reasons.

So the ultimate goal is unconditional release. But if the interim goal is fewer conditions while he is on conditional release, then I do think that Mr. Levine, in consultation with the treaters in Williamsburg, should submit a proposal, a motion and a proposal.

And the response from the government may be, we agree with one, two, and three, but not four, five, and six. And respect with to the others, we think we should have a risk assessment before we take a position.

I don't know what the government's response will be. It depends what the proposal is.

But I do think this, I've been concerned about this for a long time and I've said so: The housing situation has to be addressed.

If his mother becomes totally incapacitated or dies, and we all die, we've got John and Scott in this house.

And we've heard a little bit about Scott's situation.

And that's not a good thing probably, particularly if Scott may be going to live with his daughter, and then we've got John alone in the house.

And somebody is going to have to evaluate whether that's the best place for him to be.

And one of his primary purposes -- if something happens to his mother, one of his primary purposes in life, one of the positive things that he has contributed to his family in these last years, is the care and attention he's given to her, which, A, has been, you know, quite wonderful, and, very important in her life, and also takes up -- keeps

him busy and occupied.

If she were no longer around, living alone in that home may not be the best thing.

And that's why I've encouraged, and everyone's encouraged, Mr. Weiss in particular and others, to explore options: Where should he live?

And now that he's in a financially better situation because of Medicare and Social Security, I guess, and other benefit programs and is managing his own finances very well, according to all the reports, you know, he can contribute to -- and if his mother were to die, the proceeds of the house, presumably, if there are proceeds, would go to the children. There are three children. Diane doesn't need the money, so far as we know. And I don't know how that's going to work out.

But finding appropriate housing. And that means different things for different people who are on leave from St. Elizabeths or other institutions.

And as Mr. Levine points out, there's nobody in history probably who's been studied as much as Mr. Hinckley, and so Mr. Weiss and others and Williamsburg ought to be able to figure out what the best place for him to live is and explore it and make some decisions. They've had the authority from me to do so for a long time. So that's important.

And the other important thing is, it is costing the family a lot of money to keep this treatment team in place in Williamsburg.

And they also ought to be exploring the alternatives. Maybe he doesn't need as much. Maybe Colonial Behavioral or some other group place is a less expensive and perfectly sufficient way to do it. But nobody has told us that yet.

The music therapy and the music are clearly an important part of his life. Whether that means it makes any sense to permit him to go to California or whether it makes more sense to find something alternative for him to do here beyond what he's already doing is something that will have to be proposed and considered.

And socialization and relationships we haven't really talked about today. But, you know, based on recent letters that I've reviewed, you know, the relationship situation, both positives and the negatives, seem to have been handled well, according to the reports from the professionals in Williamsburg.

Socialization, you know, he's still -- he's never, we've talked about this before, too -- he's always going to be an introvert, and the only question is whether that personality characteristic leads to isolation, which, in the past, has led to other problems.

And clearly he's socializing a lot more than he ever did. Maybe not as much as we'd like. But, you know, he's got some acquaintances and some friends and he's at the antique mall doing his thing and interacting with people.

So I think what I'd like to see is a proposal from Mr. Levine, I guess, in the form of a motion, accompanied by, you know, support from the professionals in Williamsburg, and a plan to do certain things.

I mean, I think some of the conditions that are now in place don't need to be in place.

I think housing needs to be addressed and I think work needs to be addressed and I think travel can be considered.

And some sort of a transition from at least some members of the treatment team would make sense. I think we've heard for years that Dr. G-G may be moving so we may need somebody else there.

And I don't know what we'd do about Beffa and Weiss and Ms. Drozd. I forgot, how does she spell it?

MS. WESTON: D-r-o-z-d.

THE COURT: D-r-o-z-d, Ms. Drozd, the music therapist.

And I don't know what costs -- how much any of these services cost the family.

She's obviously been terrific and Mr. Weiss has

been terrific.

But, you know, I guess what I think is -- there's no reason for another risk assessment at this point; that if I'm going to consider these other alternatives, either incrementally or all at once, I need a motion and a proposal. And maybe the government will agree to some of them.

It's been a long time since 1981. And it's been a long time since I started permitting him to have leave from the hospital. And with a couple minor blips here and there early on, everything's been good.

And he has been in full and complete remission for decades. He's no longer a danger to himself or others, everybody agrees. And he has not manifested any of the risk factors that raise red flags in people's mind. So we're ready for the next step. The question is what the next step is and how well-thought-out it is and supported by the professionals.

And, you know, Mr. Levine can -- if he wants, Mr. Levine can be very ambitious in what he requests or he can have a two-tiered request or a two-stage request.

But I think it has to be informed by what the professionals say, and, to a certain extent, what the professionals do, finding housing and finding alternative treaters that will cost less money or be better supported by

a benefits system that all of us old people get to enjoy.

John is now eligible for Medicare and Social Security and, you know, and Commonwealth of Virginia benefits, I guess.

So between his health issues, I'm not talking about his mental health issues, his physical health issues and his need for these support services, hopefully, some of those benefit systems will help or the money he gets from federal and state government monthly.

I don't know. I don't have much more to say.

I think unless either of you have anything more you want to say, I'll just wait till I get something in writing.

MR. LEVINE: We will file a motion, Your Honor.

THE COURT: Okay. Thank you.

MS. WESTON: Thank you, Your Honor.

THE COURT: Thank you, Ms. Weston, Mr. Levine.

(Proceedings concluded at 10:11 a.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date: September 30, 2019_____ /S/__William P. Zaremba______

William P. Zaremba, RMR, CRR

**DEPUTY CLERK: [1]** 3/1
**MR. LEVINE: [20]** 3/8 4/16 6/1 7/20 7/23 8/9 9/19 9/23 10/6 10/23 11/2 11/8 11/10 11/13 11/19 12/3 12/6 12/12 18/13 27/13
**MS. WESTON: [16]** 3/5 12/16 15/5 15/11 15/14 15/20 15/23 16/14 16/19 17/11 17/20 17/24 18/5 20/10 25/19 27/15
**THE COURT: [35]**

**/**

**/S [1]** 28/7

**1**

**10 [1]** 1/5
**10:11 [1]** 27/18
**16th [2]** 5/12 5/16
**1825 [1]** 1/18
**1981 [1]** 26/8

**2**

**20001 [1]** 2/5
**20006 [1]** 1/18
**2016 [2]** 3/14 4/9
**2018 [4]** 4/15 4/17 5/13 5/16
**2019 [2]** 1/5 28/7
**202 [3]** 1/15 1/19 2/6
**20530 [1]** 1/15
**2237 [1]** 1/19
**252-7509 [1]** 1/15
**27 [1]** 4/17

**3**

**30 [1]** 28/7
**306 [2]** 1/4 3/2
**3249 [1]** 2/6
**333 [1]** 2/4
**34 [1]** 3/21
**354-3249 [1]** 2/6

**4**

**420-2237 [1]** 1/19

**5**

**555 [1]** 1/14

**6**

**6511 [1]** 2/5
**663 [1]** 5/17

**7**

**7509 [1]** 1/15

**8**

**81-306 [2]** 1/4 3/2

**9**

**90s [2]** 9/19 9/21
**9:30 [1]** 1/6

**A**

**a.m [2]** 1/6 27/18
**able [11]** 10/11 10/19 10/20 11/4 11/16 11/16 13/12 19/23 20/3 20/21 23/22
**about [18]** 4/6 5/3 8/16 9/17 15/9 15/17 15/18 16/6 18/15 19/13 20/14 20/16 22/7 22/13 24/16 24/22 25/18 27/6
**above [1]** 28/4
**above-titled [1]** 28/4
**absolutely [7]** 15/6 15/12 15/15 15/21 16/3 18/8 21/1
**accept [1]** 14/16
**accompanied [1]** 25/6
**according [2]** 23/10 24/19
**accurate [1]** 6/3
**accurately [1]** 6/7
**acknowledge [1]** 14/5
**acquaintances [1]** 25/3
**Action [1]** 3/2
**activities [1]** 14/7
**actual [1]** 14/2
**additional [2]** 6/17 13/9
**addressed [3]** 22/9 25/11 25/12
**advance [1]** 19/22
**after [3]** 3/14 5/15 21/1
**again [1]** 9/7
**ago [2]** 7/14 15/10
**agree [8]** 8/11 13/9 13/12 13/16 17/5 20/22 22/2 26/6
**agreed [2]** 5/19 17/3
**agreeing [1]** 16/6
**agreement [3]** 5/3 8/5 18/3
**agrees [1]** 26/14
**aided [1]** 2/7
**all [15]** 5/25 7/1 8/5 9/18 10/8 13/6 14/14 15/20 16/1 16/1 21/9 22/11 23/10 26/5 27/1
**allowing [1]** 11/24
**alluded [1]** 14/9
**almost [1]** 17/3
**alone [2]** 22/17 23/2
**already [2]** 14/9 24/13
**also [5]** 9/12 9/14 12/20 22/25 24/4
**alternating [1]** 17/14
**alternative [3]** 8/20 24/12 26/24
**alternatives [3]** 9/15 24/5 26/4
**although [1]** 17/11
**always [3]** 17/2 17/3 24/22
**ambition [1]** 11/23
**ambitious [1]** 26/20
**AMERICA [1]** 1/3
**ample [1]** 6/23
**And he's [1]** 3/23
**another [4]** 4/12 4/22 5/22 26/3
**answer [1]** 10/19
**answers [1]** 5/14
**anticipation [1]** 20/8
**antique [1]** 25/4
**any [18]** 4/6 5/2 5/5 5/21 5/21 5/21 6/8 9/18 12/2 12/25 13/5 16/6 18/21 18/22 19/21 24/10 25/23 26/14
**anybody [1]** 16/14
**anyone [1]** 16/23
**anything [8]** 4/6 4/11 5/25 9/2 9/16 12/11 18/3 27/11
**appeal [1]** 14/20
**appear [1]** 14/23
**appearances [3]** 1/12 2/1 3/5
**appeared [1]** 12/2
**apply [1]** 19/2
**appropriate [4]** 6/21 8/12 12/25 23/16
**approved [1]** 19/22
**are [17]** 5/20 5/24 14/1 14/3 14/19 15/10 16/9 16/20 17/19 19/16 20/6 20/16 23/12 23/13 23/17 24/9 25/9
**area [1]** 21/11
**around [1]** 23/2
**arrangements [1]** 9/15
**as [32]**
**ask [5]** 7/2 7/10 8/15 10/18 19/3
**asked [1]** 14/6
**asking [1]** 7/18
**aspiration [1]** 13/18
**aspirations [2]** 12/21 13/19
**assessment [15]** 4/12 4/20 4/25 5/22 6/17 6/20 6/25 7/9 7/11 7/19 13/10 13/16 13/23 22/4 26/3
**assessments [1]** 4/13
**assigned [1]** 19/21
**assume [1]** 8/24
**attention [1]** 22/23
**ATTORNEY'S [1]** 1/13
**authority [1]** 23/24
**Avenue [1]** 2/4
**axiom [1]** 19/1

**B**

**back [3]** 3/23 11/12 21/14
**Barry [3]** 1/17 3/10 9/7
**Barry Levine [1]** 3/10
**based [6]** 3/20 6/16 7/17 12/8 18/10 24/16
**basis [1]** 18/3
**be [58]**
**because [7]** 5/2 8/18 9/11 15/3 17/1 19/17 23/8
**become [3]** 8/24 11/24 21/19
**becomes [1]** 22/10
**been [35]**
**Beenish [2]** 4/15 4/19
**Beffa [2]** 15/9 25/18
**before [12]** 1/10 7/23 8/2 8/4 10/14 12/5 12/11 12/19 14/3 16/18 22/4 24/22
**beginning [1]** 13/6
**behalf [6]** 3/7 3/10 12/21 12/22 16/23 21/6
**behavior [4]** 6/10 18/19 18/21 19/11
**Behavioral [9]** 9/6 9/9 9/10 9/14 14/16 19/14 19/19 20/13 24/6
**being [1]** 21/2
**believe [6]** 12/25 13/4 14/22 16/1 16/17 20/6
**believes [2]** 6/20 7/8
**benefit [2]** 23/9 27/8
**benefits [2]** 27/1 27/4
**best [3]** 22/19 23/3 23/22
**better [2]** 23/7 26/25
**between [1]** 27/5
**beyond [1]** 24/13
**bit [1]** 22/13
**BLANK [2]** 1/17 3/10
**BlankRome.com [1]** 1/19
**BLevine [1]** 1/19
**blips [1]** 26/10
**both [3]** 9/10 17/13 24/18
**boyfriend [1]** 21/13
**briefly [1]** 20/11
**brother [3]** 6/7 8/21 10/20
**busy [1]** 23/1

**C**

**calendar [1]** 7/7
**California [3]** 11/25 13/14 24/11
**calls [1]** 11/19
**came [2]** 5/1 14/15
**can [9]** 5/25 13/4 13/14 18/17 23/10 25/12 26/19 26/20 26/21
**can't [3]** 4/5 20/17 20/24
**care [8]** 4/6 6/6 6/7 9/22 9/23 10/12 10/21 22/23
**cared [1]** 6/5
**carefully [1]** 5/19
**caregiver [1]** 11/2
**caretaker [1]** 6/5
**case [4]** 13/11 19/18 20/17 21/19
**cases [1]** 21/15
**caseworker [1]** 4/1
**CBH [1]** 19/18
**certain [2]** 25/8 26/23
**certainly [1]** 18/9
**Certified [1]** 2/3
**certify [1]** 28/2
**cetera [1]** 11/22
**challenge [1]** 14/21
**changes [2]** 5/21 19/21
**characteristic [1]** 24/24
**check [1]** 3/24
**check-in [1]** 3/24
**children [2]** 23/13 23/13
**citizens [1]** 19/9
**clear [1]** 20/12
**clearly [3]** 15/10 24/9 25/1
**clinical [1]** 19/22
**clinically [1]** 20/1
**Colonial [8]** 9/6 9/9 9/14 14/16 19/13 19/19 20/13 24/6
**COLUMBIA [2]** 1/2 1/14
**come [1]** 3/23
**comes [2]** 17/13 17/17
**comfort [1]** 6/24
**comment [2]** 19/13 19/14
**Commonwealth [1]** 27/3
**communications [1]** 18/10
**community [1]** 3/17
**complete [2]** 21/18 26/12
**compliance [1]** 18/19
**complicated [2]** 21/15 21/19
**computer [1]** 2/7
**computer-aided [1]** 2/7
**concern [1]** 14/4
**concerned [1]** 22/7
**concerns [2]** 4/6 15/9
**concluded [2]** 14/23 27/18
**condition [1]** 19/21
**conditional [1]** 21/23
**conditions [15]** 3/19 3/22 5/9 5/10 5/11 6/13 7/2 7/10 7/15 10/8 13/2 14/5 20/9 21/22 25/9
**conference [4]** 1/9 3/12 5/12 5/19
**consent [4]** 5/6 5/9 5/13 5/15
**consider [6]** 5/20 12/25 13/8 13/25 14/1 26/4
**considered [3]** 7/17 24/14 25/13
**consistent [1]** 18/25
**Constitution [1]** 2/4
**construed [1]** 19/25
**consultation [1]** 21/24
**context [1]** 19/8
**continued [4]** 2/1 5/5 5/16 5/17
**contribute [1]** 23/11

**C**

**contributed [1]** 22/22
**convalescent [4]** 3/16 3/22 18/18 21/8
**conversations [5]** 12/9 17/11 17/14 17/14 17/19
**correct [9]** 4/10 5/25 7/21 7/21 12/4 17/12 17/25 18/12 28/3
**cost [3]** 9/12 25/24 26/25
**costing [1]** 24/1
**costs [1]** 25/23
**could [9]** 6/15 7/17 9/10 9/13 10/15 13/8 20/19 20/20 20/22
**counsel [2]** 3/4 16/16
**couple [1]** 26/10
**course [6]** 6/18 7/6 10/10 11/15 15/22 18/17
**court [18]** 1/1 2/2 2/3 6/20 6/24 6/24 7/8 7/11 10/16 10/19 11/23 12/8 12/19 13/7 14/3 18/20 19/22 20/5
**Court's [1]** 7/7
**Courthouse [1]** 2/4
**covered [1]** 9/13
**CR [1]** 1/4
**Criminal [1]** 3/2
**CRR [2]** 28/2 28/8
**current [2]** 9/11 14/13
**currently [1]** 20/16
**custody [1]** 18/25
**cut [2]** 20/18 20/25

**D**

**D-r-o-z-d [2]** 25/20 25/21
**D.C [6]** 1/5 1/15 1/18 2/5 17/17 17/18
**daily [1]** 14/7
**danger [4]** 19/4 19/6 21/16 26/13
**dangerous [1]** 18/21
**Date [1]** 28/7
**daughter [2]** 11/7 22/16
**day [2]** 9/8 16/17
**deal [2]** 4/23 7/1
**decades [1]** 26/13
**decide [2]** 7/23 8/2
**decision [1]** 19/24
**decisions [1]** 23/23
**declination [1]** 14/21
**declining [2]** 14/16 19/16
**Defendant [2]** 1/7 1/17
**defense [1]** 16/11
**deference [1]** 18/7
**deferred [1]** 17/7
**demonstration [1]** 5/5
**depending [1]** 13/11
**depends [2]** 7/12 22/6
**detail [1]** 9/8
**Diane [1]** 23/13
**did [3]** 8/1 9/5 25/2
**didn't [3]** 5/7 5/7 7/24
**die [2]** 22/11 23/11
**dies [1]** 22/11
**different [6]** 5/11 12/21 14/12 18/16 23/17 23/17
**disagree [2]** 7/20 15/24
**disagreement [1]** 18/3
**discuss [3]** 5/13 9/1 20/20
**discussion [3]** 8/22 14/14 16/10
**disease [3]** 18/22 19/5 19/7
**DISTRICT [4]** 1/1 1/2 1/10 1/14
**do [26]** 4/24 6/18 6/25 8/16 9/5 10/2 10/15 11/4 11/16 11/24 12/25 13/20 14/4 14/6 14/18 17/11 18/17 19/23 21/23 22/7 23/24 24/7 24/12 25/8 25/18 26/24
**docket [1]** 5/17
**doctor [1]** 4/12
**doctors [1]** 9/24
**does [8]** 4/12 9/24 13/21 14/8 14/10 14/23 15/24 25/19
**doesn't [2]** 23/13 24/5
**doing [8]** 10/22 10/23 14/6 15/2 15/2 21/2 24/13 25/4
**don't [14]** 5/2 8/16 9/3 9/16 14/22 16/24 18/16 22/5 23/14 25/10 25/18 25/23 27/10 27/10
**done [3]** 4/25 6/15 8/19
**doubt [1]** 18/18
**down [1]** 4/11
**Dr [1]** 4/15
**Dr. [5]** 4/16 4/19 4/21 15/22 25/16
**Dr. Beenish [1]** 4/19
**Dr. G-G [2]** 15/22 25/16
**Dr. Patterson [2]** 4/16 4/21
**Drozd [2]** 25/19 25/21
**due [1]** 6/18
**during [2]** 16/3 18/18

**E**

**each [3]** 6/1 9/7 17/23
**early [2]** 17/4 26/11
**easy [1]** 21/12
**efforts [1]** 10/5
**either [6]** 8/20 9/13 18/3 20/1 26/4 27/11
**elaborate [2]** 10/10 10/13
**eligible [1]** 27/2
**Elizabeths [5]** 3/24 17/18 17/23 21/9 23/18
**else [2]** 12/11 25/17
**encouraged [2]** 23/4 23/5
**enemy [2]** 8/13 8/17
**engage [1]** 20/4
**engineering [1]** 10/17
**enjoy [1]** 27/1
**entered [1]** 3/15
**environment [1]** 18/25
**essentially [1]** 3/14
**et [1]** 11/22
**et cetera [1]** 11/22
**evaluate [1]** 22/18
**even [3]** 7/9 8/3 9/17
**ever [1]** 25/2
**every [5]** 4/5 9/1 17/10 17/13 17/18
**everybody [2]** 5/3 26/14
**everyone's [1]** 23/4
**everything [2]** 14/6 18/15
**everything's [1]** 26/11
**evidence [1]** 3/20
**evidentiary [2]** 3/15 5/8
**exactly [1]** 19/11
**existing [1]** 7/17
**exists [1]** 6/16
**expect [1]** 18/16
**expensive [1]** 24/7
**expert [2]** 4/21 7/3
**explore [2]** 23/5 23/23
**exploring [3]** 8/20 9/12 24/4
**expressed [1]** 12/20
**extensive [1]** 15/3
**extent [2]** 10/20 26/23
**Eye [1]** 1/18

**F**

**fact [2]** 8/18 9/1
**factors [3]** 5/5 6/9 26/15
**fall [1]** 4/8
**family [6]** 9/12 13/22 21/12 22/23 24/2 25/24
**far [3]** 12/6 14/7 23/14
**federal [2]** 9/13 27/9
**few [2]** 5/10 7/14
**fewer [3]** 5/9 5/10 21/22
**figure [1]** 23/22
**file [3]** 13/5 16/11 27/14
**filing [5]** 6/19 7/4 7/5 12/23 13/4
**finances [1]** 23/9
**financially [1]** 23/7
**find [2]** 21/12 24/12
**finding [3]** 23/16 26/24 26/24
**first [3]** 12/18 19/1 21/9
**five [1]** 22/2
**flags [1]** 26/15
**flawless [2]** 18/20 19/12
**following [1]** 14/5
**foregoing [1]** 28/3
**foremost [1]** 12/18
**forgot [1]** 25/19
**form [1]** 25/6
**forth [4]** 13/1 14/2 14/6 16/12
**forward [2]** 3/4 20/7
**found [1]** 21/16
**four [1]** 22/2
**Fourth [1]** 1/14
**frankly [1]** 13/17
**frequently [1]** 11/19
**Friday [2]** 16/18 16/18
**FRIEDMAN [1]** 1/10
**friends [1]** 25/3
**front [1]** 9/17
**full [4]** 3/16 3/17 21/17 26/12
**further [2]** 6/13 7/15

**G**

**get [10]** 4/4 5/14 5/17 5/20 10/3 10/11 11/24 17/22 27/1 27/12
**gets [1]** 27/8
**getting [3]** 7/7 8/22 9/18
**girlfriend [1]** 21/13
**give [2]** 13/21 14/8
**given [1]** 22/24
**gives [3]** 6/24 13/17 18/6
**go [2]** 23/12 24/11
**goal [3]** 21/6 21/21 21/22
**goes [1]** 19/20
**going [13]** 5/20 6/18 7/8 7/12 7/15 9/17 10/11 10/12 22/16 22/18 23/15 24/22 26/4
**gone [1]** 6/5
**good [6]** 3/6 3/9 15/11 15/20 22/15 26/11
**got [3]** 22/11 22/17 25/3
**government [16]** 1/13 7/3 7/19 8/7 12/18 12/20 13/7 13/8 14/8 15/1 15/24 18/14 19/13 22/1 26/6 27/9
**government's [3]** 4/21 7/5 22/5
**great [7]** 7/1 13/17 13/21 14/10 15/19 16/5 18/6
**greater [1]** 6/24
**group [4]** 4/2 15/10 21/12 24/6
**guess [7]** 4/5 4/9 4/14 23/8 25/6 26/2 27/4

**H**

**had [12]** 3/14 3/25 4/6 4/6 4/7 4/14 5/9 5/12 13/19 13/19 15/9 23/23
**half [1]** 8/8
**handle [4]** 19/19 20/17 20/20 20/24
**handled [1]** 24/19
**happen [2]** 6/12 13/4
**happened [1]** 8/10
**happens [1]** 22/21
**happy [1]** 6/1
**has [39]**
**hasn't [1]** 12/2
**have [38]**
**haven't [4]** 8/25 9/2 9/7 24/15
**having [1]** 11/5
**he [37]**
**he'd [1]** 3/23
**he's [16]** 4/3 10/25 14/6 15/17 18/18 19/9 22/23 23/7 24/13 24/21 24/21 24/22 25/1 25/3 25/3 26/13
**health [12]** 9/6 9/10 9/13 9/14 9/20 14/16 19/14 19/19 20/13 27/5 27/6 27/6
**hear [3]** 6/1 7/24 12/12
**heard [4]** 7/16 7/20 22/13 25/16
**hearing [8]** 3/15 4/8 4/23 5/2 5/7 5/8 8/8 15/23
**help [2]** 15/13 27/8
**her [12]** 9/19 9/20 9/21 9/22 9/23 9/24 9/24 16/17 16/21 16/23 22/24 22/25
**here [8]** 3/12 8/13 9/1 11/23 16/14 16/22 24/12 26/10
**hesitation [1]** 16/5
**him [13]** 3/16 11/24 17/9 17/11 18/24 20/18 20/25 22/19 23/1 23/22 24/11 24/12 26/9
**himself [4]** 12/23 19/4 20/16 26/13
**HINCKLEY [21]** 1/6 3/3 3/10 3/13 6/5 8/19 9/18 10/11 12/22 12/22 13/19 15/2 16/2 17/7 17/19 19/25 20/14 20/16 21/10 21/18 23/20
**Hinckley's [3]** 3/20 5/4 21/6
**his [47]**
**historically [1]** 18/15
**history [2]** 19/9 23/20
**Hnatowski [1]** 16/16
**home [2]** 21/12 23/3
**Honor [24]** 3/6 3/9 4/18 6/2 6/12 7/24 8/11 9/21 10/24 12/4 12/7 12/13 12/17 12/18 14/9 15/25 16/15 17/12 17/21 18/14 20/10 20/11 27/14 27/16
**HONORABLE [1]** 1/10
**hopefully [1]** 27/7
**hospital [7]** 8/4 16/14 16/16 18/6 21/9 21/14 26/10
**house [4]** 9/25 22/12 22/17 23/12
**household [1]** 9/25

**H**

**housing [6]** 8/20 9/17 22/8 23/16 25/11 26/24
**how [7]** 5/20 7/23 8/2 23/14 25/19 25/23 26/17
**However [1]** 12/24
**hugely [1]** 15/20

**I**

**I assume [1]** 8/24
**I believe [1]** 16/17
**I can [2]** 13/14 18/17
**I did [1]** 9/5
**I didn't [1]** 7/24
**I don't [2]** 14/22 18/16
**I don't have [1]** 27/10
**I don't know [6]** 16/24 22/5 23/14 25/18 25/23 27/10
**I don't think [1]** 9/16
**I guess [7]** 4/5 4/9 4/14 23/8 25/6 26/2 27/4
**I have [2]** 16/23 17/22
**I haven't [3]** 8/25 9/2 9/7
**I know [3]** 8/21 11/18 12/6
**I mean [4]** 8/19 15/7 20/2 25/9
**I think [22]** 5/24 6/2 6/4 6/10 8/10 10/25 11/4 12/7 12/13 15/10 17/3 17/6 18/6 18/9 18/23 19/1 25/11 25/11 25/15 26/2 26/22 27/11
**I thought [2]** 7/16 7/20
**I want [2]** 8/15 20/12
**I was [1]** 20/12
**I'd [1]** 25/5
**I'll [1]** 27/12
**I'm [5]** 5/25 7/25 15/16 26/4 27/5
**I'm going [1]** 26/4
**I'm not [1]** 27/5
**I'm sorry [1]** 7/25
**I'm sure [1]** 15/16
**I've [8]** 4/11 5/25 9/16 12/3 22/7 22/8 23/4 24/17
**illnesses [1]** 21/17
**impeccable [1]** 6/11
**important [6]** 17/2 20/7 22/25 23/25 24/1 24/10
**imposed [1]** 3/19
**incapacitated [1]** 22/10
**incorrect [1]** 19/15
**incrementally [1]** 26/5
**indicating [1]** 20/12
**individual [4]** 4/2 17/23 20/1 20/24
**individuals [1]** 16/1
**industry [4]** 10/3 10/4 11/25 13/15
**influence [1]** 15/8
**informed [1]** 26/22
**input [2]** 17/2 17/22
**insist [1]** 9/8
**instead [1]** 5/1
**institutions [1]** 23/18
**instrumental [1]** 16/3
**insurance [1]** 9/14
**intentions [1]** 12/23
**interacting [1]** 25/4
**interactions [1]** 18/10
**interim [1]** 21/22
**interrupt [1]** 8/16
**introvert [1]** 24/23
**involved [2]** 15/5 19/18
**is [90]**
**is there [1]** 16/14
**isn't [1]** 9/18
**isolation [1]** 24/24
**issues [4]** 11/5 27/5 27/6 27/6
**it [38]**
**it's [15]** 6/4 7/8 8/4 8/18 9/1 10/10 12/5 12/25 15/20 18/23 21/12 21/15 21/19 26/8 26/8
**its [1]** 7/3

**J**

**job [2]** 10/3 11/24
**JOHN [14]** 1/6 3/3 3/13 8/21 8/21 9/22 10/21 10/21 10/23 11/15 21/10 22/11 22/17 27/2
**John Hinckley [1]** 3/13
**John W. Hinckley [2]** 3/3 21/10
**JR [1]** 1/6
**JUDGE [1]** 1/10
**July [3]** 3/14 4/17 4/25
**just [10]** 8/18 15/4 16/16 18/15 20/3 20/11 20/18 20/23 20/25 27/12

**K**

**Kacie [2]** 1/13 3/7
**Kacie Weston [1]** 3/7
**kacie.weston [1]** 1/16
**keep [2]** 15/23 24/2
**keeps [2]** 9/25 22/25
**kind [1]** 21/2
**know [29]**

**L**

**lack [1]** 5/5
**last [9]** 4/8 4/14 4/25 8/6 9/8 12/9 16/17 16/18 22/23
**later [1]** 5/23
**lawyer [1]** 3/20
**lawyers [1]** 17/7
**leads [1]** 24/24
**least [4]** 7/18 18/24 18/25 25/14
**leave [5]** 3/16 3/22 18/19 23/17 26/9
**led [1]** 24/25
**lengthy [1]** 3/15
**less [5]** 8/11 9/12 18/2 24/6 26/25
**let [1]** 10/18
**letter [1]** 19/16
**letters [1]** 24/17
**level [1]** 21/3
**Levine [18]** 1/17 3/10 3/11 4/10 5/10 12/20 13/5 15/17 17/1 17/5 18/4 18/13 21/23 23/19 25/6 26/19 26/20 27/17
**Levine's [1]** 21/5
**life [5]** 15/3 21/3 22/21 22/25 24/10
**light [1]** 4/24
**like [4]** 9/18 11/15 25/2 25/5
**liked [1]** 5/11
**likes [1]** 10/3
**liquid [1]** 8/24
**little [1]** 22/13
**live [3]** 22/16 23/6 23/22
**lives [1]** 21/11
**living [3]** 3/16 9/15 23/2
**LLP [1]** 1/17
**loaf [1]** 8/9
**long [7]** 14/11 21/18 21/19 22/8 23/24 26/8 26/9
**long-term [1]** 14/11
**longer [3]** 21/16 23/2 26/13
**looking [1]** 20/7
**loose [2]** 20/19 20/25
**lot [2]** 24/2 25/1

**M**

**made [3]** 10/5 14/10 19/13
**make [6]** 5/21 7/22 8/1 12/8 23/23 25/15
**makes [2]** 24/10 24/11
**making [1]** 17/4
**mall [1]** 25/4
**managing [1]** 23/9
**manifestation [3]** 6/8 18/21 19/5
**manifested [1]** 26/14
**many [1]** 5/9
**matter [3]** 19/17 20/3 28/4
**may [11]** 7/20 10/19 12/22 15/22 16/22 20/11 22/1 22/16 23/3 25/16 25/16
**maybe [10]** 4/4 5/23 7/12 8/7 17/10 18/4 24/5 24/5 25/2 26/6
**McCoy [1]** 1/13
**me [9]** 4/10 5/1 5/6 5/13 5/25 8/4 10/18 21/5 23/24
**mean [7]** 7/18 8/19 9/7 9/9 15/7 20/2 25/9
**means [2]** 23/16 24/10
**mechanical [1]** 2/7
**medical [1]** 11/5
**Medicare [2]** 23/8 27/2
**member [1]** 21/12
**members [3]** 18/7 20/8 25/15
**mental [5]** 18/22 19/5 19/6 21/17 27/6
**mentioned [2]** 9/2 12/5
**Merit [1]** 2/2
**Metropolitan [1]** 21/11
**might [5]** 13/11 13/12 13/24 19/14 20/21
**mind [3]** 10/7 15/7 26/15
**minor [1]** 26/10
**minutes [1]** 7/14
**misstated [1]** 4/11
**moment [1]** 12/11
**money [5]** 9/12 23/14 24/2 26/25 27/8
**month [5]** 3/23 4/5 17/10 17/13 17/18
**monthly [4]** 4/4 8/22 12/3 27/9
**months [2]** 17/10 17/15
**more [12]** 6/4 7/22 8/1 8/24 11/19 17/6 19/18 21/19 24/12 25/1 27/10 27/11
**morning [3]** 3/6 3/9 16/24
**mortgage [2]** 8/23 8/23
**most [3]** 14/18 19/9 21/15
**mother [9]** 3/17 6/6 8/23 10/12 10/21 10/23 22/10 22/21 23/11
**motion [13]** 6/19 7/4 10/9 12/19 12/24 13/1 13/4 14/2 16/12 21/25 25/6 26/5 27/14
**motions [1]** 12/23
**moving [2]** 15/23 25/16
**Mr. [42]**
**Mr. Beffa [1]** 15/9
**Mr. Hinckley [15]** 3/10 6/5 10/11 12/22 12/22 13/19 15/2 16/2 17/7 17/19 19/25 20/14 20/16 21/18 23/20
**Mr. Hinckley's [3]** 3/20 5/4 21/6
**Mr. Levine [16]** 3/11 4/10 5/10 12/20 13/5 15/17 17/1 17/5 18/4 18/13 21/23 23/19 25/6 26/19 26/20 27/17
**Mr. Levine's [1]** 21/5
**Mr. Weiss [6]** 9/3 14/19 15/8 23/5 23/21 25/25
**Ms. [11]** 3/8 4/10 8/3 8/19 9/18 12/12 12/16 16/16 25/19 25/21 27/17
**Ms. Drozd [2]** 25/19 25/21
**Ms. Hinckley [2]** 8/19 9/18
**Ms. Hnatowski [1]** 16/16
**Ms. Weston [6]** 3/8 4/10 8/3 12/12 12/16 27/17
**much [8]** 5/3 18/16 21/19 23/20 24/5 25/2 25/23 27/10
**music [9]** 4/1 10/4 11/25 13/15 15/14 15/19 24/9 24/9 25/21
**must [1]** 19/22
**my [7]** 4/9 10/24 12/9 15/7 16/22 18/2 20/15

**N**

**name [1]** 10/3
**nation's [1]** 19/9
**nature [1]** 13/11
**near [1]** 16/9
**nearby [2]** 11/11 11/12
**need [11]** 5/2 5/7 5/7 5/21 7/19 23/13 24/5 25/10 25/17 26/5 27/7
**needed [1]** 4/24
**needs [3]** 20/25 25/11 25/12
**negative [4]** 14/15 19/14 20/2 20/13
**negatives [1]** 24/18
**Neither [2]** 11/1 11/2
**never [2]** 12/5 24/21
**new [1]** 16/17
**next [3]** 16/11 26/16 26/16
**nieces [1]** 11/21
**no [21]** 1/4 6/8 6/21 11/9 12/13 12/19 12/24 14/24 15/7 18/20 18/22 19/5 19/6 19/25 20/19 21/1 21/1 21/16 23/2 26/3 26/13
**nobody [2]** 23/19 24/7
**none [1]** 14/1
**not [32]**
**note [1]** 12/19
**nothing [1]** 14/3
**noticed [1]** 19/20
**November [2]** 5/12 5/16
**now [16]** 4/4 5/22 6/23 7/19 9/21 10/17 11/5 13/14 14/3 14/24 16/10 17/10 17/13 23/7 25/10 27/2
**nowhere [1]** 16/9
**number [1]** 8/17
**NW [3]** 1/14 1/18 2/4

**O**

**object [1]** 6/25
**objection [2]** 3/19 6/22
**obligation [1]** 18/24
**obligations [2]** 20/20 20/24
**obviously [4]** 16/6 17/1 17/9 25/25
**occasionally [1]** 11/18

**O**

**occupied [1]** 23/1
**off [1]** 10/21
**offense [1]** 13/20
**office [2]** 1/13 16/17
**Official [1]** 2/3
**often [1]** 17/3
**Okay [10]** 3/12 11/13 12/10 12/15 16/13 16/19 16/25 18/13 21/4 27/15
**old [1]** 27/1
**once [5]** 3/23 17/9 17/10 21/14 26/5
**one [18]** 4/9 8/15 8/17 9/15 10/1 10/25 11/15 13/15 13/19 14/8 15/1 15/16 16/11 19/8 22/2 22/20 22/21 22/22
**only [4]** 14/14 17/9 18/2 24/23
**open [1]** 10/19
**opinion [4]** 3/16 4/10 10/24 13/24
**opinions [1]** 7/6
**opposed [1]** 18/15
**options [2]** 8/20 23/6
**oral [1]** 5/20
**order [8]** 3/15 5/6 5/9 5/13 5/15 7/11 11/23 18/20
**other [16]** 3/24 4/5 7/14 8/25 11/21 14/4 14/19 17/13 17/18 20/6 23/9 23/18 24/1 24/6 24/25 26/4
**others [7]** 4/16 19/4 21/17 22/3 23/5 23/21 26/13
**ought [2]** 23/21 24/4
**our [6]** 7/4 8/13 8/17 18/23 19/9 19/24
**ourselves [1]** 19/3
**out [5]** 20/22 23/15 23/19 23/22 26/17
**over [3]** 3/19 12/9 18/17
**own [3]** 10/2 11/5 23/9
**owns [1]** 8/24

**P**

**papers [1]** 19/12
**paperwork [1]** 19/18
**part [1]** 24/10
**particular [2]** 10/4 23/5
**particularly [1]** 22/15
**parties [2]** 5/1 20/21
**past [1]** 24/25
**patient [2]** 21/10 21/11
**Patterson [2]** 4/16 4/21
**PAUL [1]** 1/10
**pause [3]** 13/17 13/21 14/9
**pending [3]** 12/19 12/24 13/1
**people [8]** 9/6 15/4 17/18 17/20 21/15 23/17 25/4 27/1
**people's [1]** 26/15
**perfectly [1]** 24/7
**performance [3]** 5/4 6/10 18/19
**perhaps [4]** 8/3 9/14 13/22 16/18
**permission [1]** 10/15
**permit [1]** 24/11
**permitting [1]** 26/9
**person [1]** 4/20
**personality [1]** 24/24
**personally [1]** 17/10
**phone [2]** 17/11 17/14
**physical [1]** 27/6
**place [8]** 14/24 16/7 22/19 23/22 24/3 24/6 25/10 25/10
**Plaintiff [1]** 1/4
**plan [5]** 14/24 16/7 20/19 21/1 25/8
**planning [1]** 14/11
**please [1]** 3/4
**podium [1]** 3/4
**point [8]** 4/11 12/24 13/5 13/7 16/10 18/2 20/15 26/3
**points [1]** 23/19
**position [4]** 14/1 16/17 18/10 22/4
**positive [2]** 15/8 22/22
**positives [1]** 24/18
**possible [2]** 8/5 11/6
**possibly [1]** 11/25
**potentially [2]** 14/20 20/19
**precursor [1]** 10/9
**prepared [1]** 9/4
**present [4]** 7/23 8/2 8/3 8/4
**presented [2]** 3/21 5/6
**presumably [1]** 23/12
**pretty [1]** 5/3
**primary [3]** 15/1 22/20 22/21
**principally [1]** 9/22
**probably [7]** 6/15 7/5 13/15 18/2 19/8 22/15 23/20
**problems [1]** 24/25
**proceed [2]** 7/23 8/2
**proceedings [4]** 1/9 2/7 27/18 28/4
**proceeds [2]** 23/11 23/12
**process [2]** 10/10 16/20
**processes [1]** 13/6
**produced [1]** 2/7
**professional [4]** 3/25 10/25 11/1 11/2
**professionals [6]** 3/24 24/20 25/7 26/18 26/23 26/24
**programs [1]** 23/9
**progress [1]** 14/10
**property [1]** 8/23
**proposal [9]** 7/23 8/2 8/3 17/1 21/25 21/25 22/6 25/5 26/6
**proposals [1]** 17/4
**propose [4]** 7/13 8/6 9/4 18/4
**proposed [2]** 8/7 24/14
**provide [1]** 10/12
**providers [5]** 9/11 10/1 14/12 14/13 14/19
**psychiatrist [1]** 4/2
**psychologist [1]** 4/2
**public [1]** 19/1
**purposes [2]** 22/20 22/21
**puts [1]** 17/2

**Q**

**question [5]** 10/18 15/7 19/3 24/23 26/16
**questions [2]** 5/14 5/14
**quite [1]** 22/24

**R**

**raise [2]** 5/13 26/15
**rather [1]** 8/8
**re [1]** 18/23
**re-stating [1]** 18/23
**read [5]** 4/5 4/7 5/18 9/7 12/3
**reading [1]** 9/5
**ready [1]** 26/16
**really [3]** 15/10 16/5 24/16
**Realtime [1]** 2/3
**reason [2]** 5/22 26/3
**reasons [4]** 15/2 15/17 20/6 21/20
**received [1]** 14/15
**recent [3]** 14/18 17/6 24/16
**recently [1]** 9/16
**recitation [1]** 6/2
**record [6]** 3/5 6/16 6/23 7/17 19/24 28/3
**recorded [1]** 2/7
**red [1]** 26/15
**reduce [1]** 20/9
**reduction [7]** 6/13 7/2 7/10 10/8 13/2 13/9 13/12
**reductions [2]** 6/16 7/15
**reflected [1]** 19/12
**regard [2]** 6/21 10/6
**regardless [2]** 14/22 20/15
**Registered [1]** 2/2
**regret [1]** 8/18
**rejection [1]** 19/25
**related [1]** 3/22
**relationship [1]** 24/17
**relationships [1]** 24/15
**relatives [1]** 11/21
**release [11]** 6/14 6/19 7/9 7/10 10/9 13/3 20/9 21/7 21/8 21/21 21/23
**releasing [1]** 3/16
**relocating [1]** 11/6
**remember [3]** 4/5 9/5 9/5
**remission [2]** 21/18 26/12
**replace [1]** 16/7
**replacing [1]** 16/21
**report [8]** 4/17 4/22 5/20 6/1 14/18 20/2 20/3 21/14
**Reporter [4]** 2/2 2/2 2/3 2/3
**reporting [1]** 20/4
**reports [12]** 4/4 4/14 5/17 8/22 9/2 9/3 9/8 12/3 14/15 17/22 23/10 24/19
**representation [1]** 12/8
**request [4]** 7/15 13/3 26/21 26/21
**requested [2]** 13/12 18/16
**requests [4]** 13/1 13/2 14/2 26/20
**require [1]** 10/15
**required [1]** 20/5
**requirements [1]** 20/4
**respect [5]** 3/13 8/20 10/8 19/11 22/3
**respects [1]** 8/17
**response [6]** 18/5 20/18 20/19 20/23 22/1 22/5
**restrictive [2]** 18/24 18/25
**result [1]** 19/4
**retirement [2]** 14/12 20/8
**retiring [1]** 15/23
**reverse [1]** 8/23
**review [3]** 7/3 7/5 7/6
**reviewed [1]** 24/17
**right [9]** 9/23 11/20 12/7 13/14 14/3 14/21 14/24 16/10 20/23
**risk [19]** 4/12 4/13 4/19 4/24 5/5 5/22 6/8 6/17 6/20 6/25 7/9 7/11 7/19 13/9 13/16 13/23 22/4 26/3 26/14
**RMR [2]** 28/2 28/8
**road [1]** 4/12
**ROME [2]** 1/17 3/10
**Room [1]** 2/5
**roommate [1]** 21/13

**S**

**safety [1]** 19/1
**said [10]** 4/9 5/1 5/18 5/25 6/8 7/14 8/8 10/13 19/16 22/8
**satisfactory [1]** 12/14
**say [11]** 7/16 7/20 8/18 12/11 18/4 18/17 19/20 19/24 26/23 27/10 27/12
**saying [4]** 9/3 20/13 20/16 20/23
**says [1]** 20/3
**scheduled [2]** 4/8 4/23
**Scott [7]** 8/21 10/20 10/22 11/4 11/5 22/11 22/16
**Scott's [1]** 22/13
**scrutinized [1]** 19/9
**Secondly [1]** 21/10
**Security [2]** 23/8 27/3
**see [9]** 8/4 9/10 11/16 13/22 14/20 14/21 17/9 20/21 25/5
**seek [1]** 11/23
**seeking [1]** 16/12
**seem [2]** 14/10 24/18
**seems [2]** 5/3 21/5
**seen [3]** 8/25 9/2 9/16
**SENIOR [1]** 1/10
**sense [5]** 7/22 8/1 24/11 24/12 25/15
**September [2]** 1/5 28/7
**series [2]** 3/18 4/14
**serious [1]** 21/17
**served [1]** 14/22
**services [2]** 25/24 27/7
**sessions [1]** 15/10
**set [1]** 14/5
**sets [2]** 13/1 14/2
**setting [1]** 16/12
**several [2]** 12/21 14/12
**she [4]** 11/18 11/18 23/2 25/19
**she's [4]** 9/19 9/21 15/19 25/25
**shopping [1]** 9/25
**short [2]** 13/9 13/22
**should [9]** 6/12 6/13 16/11 19/25 20/18 20/25 21/24 22/3 23/6
**signed [1]** 5/15
**significant [1]** 16/7
**simply [1]** 19/18
**since [2]** 26/8 26/9
**sister [1]** 11/16
**situation [5]** 3/21 22/9 22/14 23/8 24/18
**six [1]** 22/2
**Skype [1]** 17/14
**so [32]**
**So I think [1]** 25/5
**so it's [1]** 21/12
**so this is [1]** 20/2
**Social [2]** 23/8 27/2
**socialization [3]** 15/13 24/15 24/21
**socializing [1]** 25/1
**solution [1]** 9/4
**some [31]**
**somebody [3]** 21/8 22/18 25/17
**someone [1]** 16/22
**something [10]** 13/13 13/17 13/22 13/23 20/13 20/21 22/20 24/12 24/13 27/12
**sometimes [1]** 9/2
**soon [1]** 5/22
**sorry [1]** 7/25

**S**

**sort [4]** 5/24 14/9 16/6 25/14
**special [1]** 20/25
**specific [1]** 13/2
**spell [1]** 25/19
**spoken [1]** 16/23
**spouse [1]** 21/13
**St. [5]** 3/24 17/18 17/23 21/9 23/18
**St. Elizabeths [5]** 3/24 17/18 17/23 21/9 23/18
**stable [1]** 9/20
**staffed [1]** 19/19
**stage [1]** 26/21
**stages [1]** 17/4
**started [1]** 26/9
**state [3]** 3/5 9/13 27/9
**statement [1]** 19/11
**STATES [5]** 1/1 1/3 1/10 3/3 3/7
**stating [1]** 18/23
**status [4]** 1/9 3/12 5/12 5/19
**stenography [1]** 2/7
**step [4]** 3/4 16/11 26/16 26/16
**steps [1]** 14/19
**still [2]** 14/8 24/21
**Street [2]** 1/14 1/18
**structure [6]** 15/3 15/4 16/2 20/4 21/1 21/3
**studied [1]** 23/20
**submit [1]** 21/25
**submits [1]** 15/1
**substitute [1]** 9/10
**success [1]** 16/3
**successful [3]** 5/4 15/20 21/2
**sufficient [1]** 24/7
**suggested [2]** 5/7 10/2
**summer [1]** 4/15
**support [6]** 6/23 12/1 16/2 21/3 25/7 27/7
**supported [2]** 26/17 26/25
**sure [1]** 15/16
**surely [1]** 10/25
**suspect [1]** 7/2
**symptom [2]** 18/22 19/6
**system [1]** 27/1
**systems [2]** 16/8 27/8

**T**

**table [1]** 17/2
**take [6]** 8/8 8/11 10/20 18/9 19/17 22/4
**takes [3]** 7/1 9/24 22/25
**taking [5]** 6/6 6/6 9/22 9/23 14/19
**talked [2]** 24/16 24/22
**talking [3]** 9/6 9/9 27/5
**task [1]** 10/22
**team [15]** 3/25 5/18 7/6 12/1 13/24 17/8 17/17 17/20 17/24 18/7 18/11 19/23 20/8 24/2 25/15
**tell [1]** 13/14
**term [1]** 14/11
**terms [1]** 9/15
**terrific [2]** 25/25 26/1
**Texas [4]** 11/8 11/10 11/13 11/17
**than [7]** 3/25 5/9 8/8 8/11 8/25 19/18 25/1
**Thank [6]** 12/15 12/17 20/10 27/15 27/16 27/17
**Thank you [6]** 12/15 12/17 20/10 27/15 27/16 27/17
**that [132]**
**that's [14]** 5/24 7/20 10/17 12/4 12/7 12/13 17/12 17/25 20/21 22/15 22/19 23/4 23/14 23/24
**their [6]** 14/21 17/2 18/10 19/16 20/4 21/17
**them [9]** 4/6 5/18 7/16 11/1 11/2 14/22 17/5 20/23 26/7
**themselves [1]** 21/16
**then [8]** 3/21 4/21 7/6 19/3 19/20 19/24 21/23 22/16
**therapist [2]** 4/1 25/22
**therapy [7]** 4/2 4/3 15/10 15/14 15/19 15/19 24/9
**there [31]**
**there's [8]** 5/2 5/21 5/21 6/8 7/7 15/7 23/19 26/2
**thereabouts [1]** 4/15
**therefore [1]** 16/5
**these [10]** 9/8 13/1 14/14 20/6 20/24 20/25 22/23 25/24 26/4 27/7
**they [19]** 9/10 16/20 17/3 17/4 17/6 17/9 17/11 18/2 18/9 19/16 19/16 19/24 20/15 20/16 20/16 20/20 20/20 21/17 24/4
**they're [5]** 4/4 14/23 16/12 19/23 20/3
**They've [1]** 23/23
**thing [5]** 14/8 22/15 23/3 24/1 25/4
**things [10]** 4/9 5/20 8/15 10/1 10/23 11/15 13/16 22/22 23/17 25/8
**think [39]**
**thinking [2]** 15/17 15/17
**this [23]** 3/2 7/1 10/7 12/8 12/24 13/20 16/10 16/23 19/8 19/17 19/17 19/18 20/2 20/2 20/5 20/24 21/19 22/7 22/8 22/11 24/2 24/22 26/3
**those [6]** 6/15 13/6 13/15 16/1 16/8 27/8
**though [1]** 9/17
**thought [4]** 7/16 7/20 8/11 26/17
**three [2]** 22/2 23/13
**tiered [1]** 26/21
**till [1]** 27/12
**time [18]** 3/17 3/18 6/4 7/1 8/6 8/13 8/14 8/17 9/1 13/20 16/4 16/10 18/18 21/19 22/8 23/24 26/8 26/9
**titled [1]** 28/4
**today [3]** 7/11 12/6 24/16
**told [1]** 24/8
**too [1]** 24/22
**took [4]** 7/18 9/7 9/8 16/16
**total [1]** 3/21
**totally [1]** 22/10
**touch [1]** 4/7
**toward [1]** 14/10
**transcript [3]** 1/9 2/7 28/3
**transcription [1]** 2/7
**transition [4]** 14/11 14/25 20/7 25/14
**travel [6]** 10/2 10/2 10/11 11/24 13/14 25/12
**traveling [2]** 10/22 13/22
**treaters [2]** 21/24 26/25
**treatment [19]** 5/18 7/6 9/11 10/1 12/1 13/24 14/11 14/17 14/19 14/25 17/7 17/17 17/20 17/24 18/7 18/11 20/8 24/2 25/15
**trigger [1]** 13/6
**try [1]** 14/20
**trying [1]** 13/20
**two [6]** 9/8 12/9 17/10 22/2 26/21 26/21
**two-stage [1]** 26/21
**two-tiered [1]** 26/21
**type [2]** 13/18 13/18
**typical [2]** 21/9 21/10
**Typically [1]** 21/8

**U**

**U.S [2]** 1/13 2/4
**ultimate [2]** 21/6 21/21
**unconditional [7]** 6/19 7/9 10/9 13/3 16/6 21/6 21/21
**underlying [1]** 13/20
**understand [1]** 14/18
**understanding [1]** 16/22
**undertaken [1]** 10/14
**unfortunately [1]** 16/15
**UNITED [5]** 1/1 1/3 1/10 3/3 3/7
**United States [2]** 3/3 3/7
**unless [2]** 16/7 27/11
**until [1]** 13/1
**up [3]** 10/22 17/13 22/25
**upon [2]** 14/12 18/10
**us [5]** 9/18 13/17 13/21 24/8 27/1
**usdoj.gov [1]** 1/16

**V**

**variety [1]** 21/20
**various [1]** 12/23
**versus [1]** 3/3
**very [7]** 3/15 15/8 15/8 21/12 22/25 23/10 26/20
**view [1]** 7/16
**viewed [1]** 19/14
**Virginia [4]** 11/11 11/12 17/8 27/3
**visit [2]** 3/24 17/17
**visits [1]** 11/18

**W**

**W. [2]** 3/3 21/10
**wait [1]** 27/12
**want [7]** 7/3 7/8 8/15 8/16 12/11 20/12 27/12
**wants [1]** 26/19
**was [22]** 4/11 4/17 4/19 4/22 4/25 5/6 8/6 8/7 8/11 8/22 8/24 9/6 9/9 9/15 13/19 13/20 16/7 16/16 16/17 16/22 20/12 20/13
**Washington [6]** 1/5 1/15 1/18 2/5 3/23 21/11
**watched [3]** 19/10 19/10 19/10
**way [3]** 14/20 19/25 24/7
**we [60]**
**we believe [3]** 13/4 16/1 20/6
**We will [1]** 27/14
**we'd [4]** 4/12 5/19 25/2 25/18
**we're [7]** 3/12 6/18 9/1 9/19 10/11 10/17 26/15
**we've [7]** 14/15 18/15 22/11 22/13 22/17 24/22 25/16
**weeks [1]** 12/9
**Weiss [7]** 9/3 14/19 15/8 23/5 23/21 25/19 25/25
**well [12]** 5/2 8/15 9/21 10/7 10/18 15/2 17/23 21/2 21/5 23/10 24/19 26/17
**well-thought-out [1]** 26/17
**were [10]** 3/18 3/21 3/22 4/8 4/23 10/21 10/22 17/4 23/2 23/11
**Weston [8]** 1/13 3/7 3/8 4/10 8/3 12/12 12/16 27/17
**what [31]**
**what's [1]** 9/17
**whatever [2]** 10/22 17/1
**whatsoever [3]** 18/21 19/6 19/7
**where [4]** 5/24 8/16 21/15 23/6
**whether [12]** 4/24 5/21 8/4 9/12 13/2 13/3 13/8 19/3 22/18 24/10 24/11 24/23
**which [9]** 5/16 7/17 8/18 10/18 13/7 14/15 15/16 22/24 24/24
**while [4]** 10/24 14/4 21/14 21/22
**who [7]** 4/12 8/7 11/16 15/22 16/16 20/24 23/17
**who's [1]** 23/20
**whom [1]** 15/9
**why [2]** 20/6 23/4
**will [10]** 4/10 7/3 7/18 11/6 22/5 24/13 26/6 26/25 27/8 27/14
**William [5]** 1/17 2/2 28/2 28/7 28/8
**Williamsburg [12]** 3/17 4/1 5/4 5/18 16/4 18/1 18/7 21/24 23/21 24/3 24/20 25/8
**willing [3]** 10/19 13/8 13/24
**wishes [1]** 13/5
**without [4]** 6/16 13/16 14/2 18/18
**wonderful [1]** 22/24
**words [1]** 7/14
**work [4]** 13/15 13/18 23/15 25/12
**worked [1]** 20/22
**working [3]** 4/3 10/21 14/23
**Workload [1]** 19/17
**worth [1]** 18/23
**would [25]** 4/7 5/10 6/21 6/21 7/4 7/5 7/10 7/22 8/1 8/5 9/11 10/15 11/15 12/19 13/6 13/8 13/16 16/11 17/5 18/4 18/4 18/9 19/4 23/12 25/15
**wouldn't [1]** 7/19
**writing [1]** 27/13
**wrong [1]** 5/25

**Y**

**Yeah [1]** 17/16
**years [5]** 15/9 17/6 18/17 22/23 25/16
**Yes [3]** 11/3 11/14 17/21
**yet [4]** 9/19 14/23 16/23 24/8
**you [41]**
**you know [8]** 8/25

**Y**

**you know... [7]** 10/10
21/5 22/24 23/10 24/17
26/19 27/3
**you'll [1]** 8/8
**you're [2]** 7/12 7/15
**younger [1]** 9/18
**your [27]** 3/5 3/6 3/9
4/18 6/2 6/2 6/12 7/16
7/24 8/11 9/21 10/24
12/4 12/7 12/13 12/17
12/18 14/9 15/25 16/15
17/12 17/21 18/14
20/10 20/11 27/14
27/16
**Your Honor [24]** 3/6
3/9 4/18 6/2 6/12 7/24
8/11 9/21 10/24 12/4
12/7 12/13 12/17 12/18
14/9 15/25 16/15 17/12
17/21 18/14 20/10
20/11 27/14 27/16

**Z**

**Zaremba [4]** 2/2 28/2
28/7 28/8