UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**      ) | |
| ) | **Criminal No. 81-306 (PLF)** |
| v.      ) | |
| ) | |
| **JOHN W. HINCKLEY, JR.**      ) | |
| ) | |

# CONSENT ORDER

This matter came before the Court upon an agreement by the Government and Mr. Hinckley for a modification of the terms of his convalescent leave. The parties and the Court have considered the Department of Behavioral Health's recommendation for modifications to Mr. Hinckley's November 16, 2018, release on convalescent leave to reside in the community and the modifications proposed by the Department of Behavioral Health in their August 21, 2020, letter to the Court. The Court held a telephonic status conference on September 23, 2020, to discuss these matters.

On June 21, 1982, a jury found Mr. Hinckley not guilty by reason of insanity on numerous charges related to the attempted assassination and severe wounding of President Ronald Reagan as well as the severe wounding of Presidential Press Secretary James Brady, Secret Service Agent Timothy McCarthy, and Metropolitan Police Officer Thomas Delahanty. He was committed to Saint Elizabeths Hospital for an indeterminate period of time following a *Bolton* hearing.[1]

---

[1] *Bolton v. Harris*, 395 F.2d 642 (D.C. Cir. 1968).

On December 17, 2003, he was granted his first conditional release for community privileges. Since that date his conditional release privileges have been gradually expanded by the Court.[2] The most recent hearing occurred over several days in April and May 2015. Thereafter, on July 27, 2016, this Court issued an Opinion and Order granting Mr. Hinckley convalescent leave to reside full-time in the community.

Pursuant to that Order, on September 10, 2016, Mr. Hinckley was placed on convalescent leave to reside with his mother in Williamsburg, Virginia. Pursuant to the Court's Order, the Department of Behavioral Health has submitted monthly compliance reports to the Court and counsel. Those reports have consistently indicated that Mr. Hinckley has been compliant with all the conditions of his release and has remained mentally stable. Also, pursuant to Condition 32 of the Court's Order, the Department of Behavioral Health completed an updated risk assessment of Mr. Hinckley on July 27, 2018.[3] Thereafter, it recommended several modifications to Mr. Hinckley's convalescent leave privileges in an August, 2018 letter to the Court and counsel.

The government retained two independent experts to review DBH's risk assessment and proposed modifications to Mr. Hinckley's conditional release privileges. On October 16, 2018, Dr. Raymond Patterson, a forensic psychiatrist, submitted his response in support of DBH's proposed modifications to Mr. Hinckley's conditional release. Thereafter, on October 22, 2018,

---

[2] The Court has conducted several evidentiary hearings after which it has issued lengthy opinions detailing Mr. Hinckley's mental condition, treatment compliance and progression towards full convalescent leave in the community (See Opinions dated 12/17/03, 11/24/04, 12/30/05, 11/21/06, 6/19/07, 6/16/09, 12/20/13, and 7/27/16).

[3] Condition 32 of the Court's July 27, 2016 Order, required the Department of Behavioral Health to conduct an updated risk assessment within 18 months of the Court's Order in order to address Mr. Hinckley's compliance and whether any changes in the conditions of his release were warranted. The completion of the risk assessment was delayed after Dr. Katherine Murphy, a forensic psychologist who conducted the 2015 risk assessment of Mr. Hinckley, withdrew from the case. A new evaluator, Dr. Samantha Benesh, who was unfamiliar with Mr. Hinckley's case, was retained by DBH and produced the required updated risk assessment.

2

Dr. Mitchell Hugonnet, a forensic psychologist, submitted his risk assessment of Mr. Hinckley, which also supported DBH's proposed modifications to Mr. Hinckley's conditional release.[4]

Condition 32 of the Court's July 27, 2016 Order, required the parties to "meet and come to mutual agreement regarding proposed reductions in the conditions of convalescent leave and/or the frequency of Mr. Hinckley's appointments to be submitted to the Court for approval." Accordingly, based upon a review of the DBH monthly status letters, the DBH risk assessment and recommendation for modifications to Mr. Hinckley's conditional release privileges, and the government expert reports, as well as the proposed consent order submitted by counsel for the United States and for Mr. Hinckley, this Court found that Mr. Hinckley would not pose a danger to himself or others if he was permitted to continue residing full-time in Williamsburg, Virginia, on convalescent leave under the proposed modified conditions. Accordingly, a modified Order for conditional release was entered on November 16, 2018, modifying Mr. Hinckley's conditions of convalescent leave.

Thereafter, DBH continued to provide status reports on Mr. Hinckley's mental condition and his compliance with the conditions of release. On August 21, 2020, DBH submitted a letter to the Court and counsel recommending further modifications to Mr. Hinckley's conditional release privileges and, after a period of 6 to 12 months, unconditional release from his commitment. The DBH letter indicates that an updated risk assessment conducted by Dr. Samantha Benesh on July 2, 2020, concluded that Mr. Hinckley posed a low risk for future violence under the proposed conditions. (A copy of the risk assessment is attached).

Upon further review of DBH's recommendation, the updated Risk Assessment and DBH's prior status letters to the Court, the government opposes Mr. Hinckley's unconditional release but

---

[4] Both experts opposed DBH's recommendation to eliminate the requirement for Mr. Hinckley to maintain a daily log of his activities, finding that the logs were clinically and therapeutically beneficial to Mr. Hinckley.

3

does not oppose modifications to the conditions of his release consistent with the recommendations in the DBH letter. Accordingly, the government and counsel for Mr. Hinckley submitted a proposed Consent Order to the Court suggesting further modifications to the conditions of Mr. Hinckley's release.

Upon consideration of the proposed consent order as well as the bi-monthly DBH status letters, the updated risk assessment and DBH's proposed modifications to Mr. Hinckley's conditional release, the Court hereby finds that Mr. Hinckley will not pose a danger to himself or to others due to mental illness if permitted to continue residing in the community under the conditions now proposed by the parties. Accordingly, it is hereby

**ORDERED** that such convalescent leave is subject to the following conditions:

1. Mr. Hinckley may continue to reside full-time in Williamsburg, Virginia, on convalescent leave. He currently resides with his mother in her home. He may also reside independently or with a roommate. Prior to moving to a new residence, he shall notify the FOPD and Williamsburg treatment team and the FOPD shall notify the Court and counsel promptly of the plan for his move to a new residence.

2. The Department of Behavioral Health shall have the ultimate responsibility for ensuring that Mr. Hinckley receives appropriate mental health treatment and medication while residing in Williamsburg, Virginia, on convalescent leave.

3. Mr. Hinckley shall attend monthly virtual appointments with the FOPD. However, if clinically indicated, FOPD may require Mr. Hinckley to report to FOPD for an in-person appointment.

4. If the FOPD requires Mr. Hinckley to report in person, it shall notify the Court, the United States Secret Service, counsel for Mr. Hinckley and counsel for the government of the date and time of Mr. Hinckley's scheduled FOPD appointment.

5. The FOPD shall prepare a progress note summarizing its contact with Mr. Hinckley and his family each month. The FOPD shall consult with each member of the Williamsburg treatment team and a family member of Mr. Hinckley's prior to the monthly virtual FOPD appointment. The FOPD shall submit the progress notes of all Williamsburg treatment providers along with the summary drafted by Mr. Weiss, see paragraph 6 of this Order, and its own progress notes to the Court and both counsel each month. The FOPD shall corroborate Mr. Hinckley's self-report with the reports of treatment providers and family members by noting and addressing any discrepancies.

6. Mr. Jonathan Weiss, a licensed clinical social worker, will continue to provide case management services to Mr. Hinckley as often as clinically indicated. Prior to Mr. Hinckley's monthly virtual FOPD appointments, Mr. Weiss shall provide written feedback to the FOPD and Williamsburg treatment team, summarizing any contact with Mr. Hinckley related to case management and recommendations.

7. Dr. Giorgi-Guarnieri will provide psychiatric treatment to Mr. Hinckley, monitor Mr. Hinckley's risk factors, and prescribe medication for Mr. Hinckley as often as she determines is clinically indicated. At Dr. Giorgi-Guarnieri's discretion in consultation with FOPD, Mr. Hinckley's psychiatric care may be transitioned to an alternate community provider. Dr. Giorgi-Guarnieri shall promptly notify the FOPD treatment team of any changes in his psychiatric treatment provider. Dr. Giorgi-Guarnieri will provide monthly written feedback to the FOPD and Williamsburg treatment team, summarizing her contacts with Mr. Hinckley.

8. Mr. Carl Beffa will continue to serve as Mr. Hinckley's individual and group therapist in the Williamsburg area. Mr. Hinckley shall attend group and individual therapy as often as clinically indicated. Mr. Beffa will provide monthly written feedback to the FOPD and Williamsburg treatment team, summarizing his contacts with Mr. Hinckley.

9. Mr. Hinckley may publicly display, under his own name, without restriction, his memorabilia, writings, paintings, photographs, artwork, or music created by him. He shall comply with the law with respect to the civil settlement in consolidated cases C.A. 82-409, C.A. 82-549 and C.A. 82-866.[5] Mr. Hinckley shall inform the FOPD and his treatment providers in Williamsburg of his plans to display his creative works. He shall share with them any feedback he may receive in order assist him in processing such feedback. Both the FOPD and Williamsburg team shall document their discussions with Mr. Hinckley regarding this issue. If clinically indicated, they may terminate Mr. Hinckley's ability to publicly display his creative works and shall immediately notify the Court and counsel of this decision.

10. Mr. Hinckley shall abide by all laws, shall not consume alcohol, illegal drugs, marijuana, synthetic cannabinoids or controlled substances absent prescription, shall not possess any firearm, weapon, or ammunition, and shall not be arrested for cause. He shall comply with all requests for drug and/or alcohol screening.

11. Mr. Hinckley shall have no contact whatsoever with the following persons: Jodie Foster or any member of her family, any member of former President Ronald Reagan's family (including descendants), any member of James Brady's family (including descendants), Thomas Delahanty or any member of his family, Timothy McCarthy or any member of his family, and Jeanette Wick or any member of her family. Mr. Hinckley shall stay away from them, their homes

---

[5] This provision does not constitute a waiver of rights or defenses with respect to these actions nor an acknowledgement of obligation.

and/or their place(s) of employment, and shall not communicate or attempt to communicate with them either directly or indirectly, through any other person, by telephone, written message, electronic message, social media, or any other means.

12. If Mr. Hinckley desires to travel further than 75 miles outside of Williamsburg, with the exception of any scheduled in-person FOPD appointment, he must provide notice to the FOPD at least three business days in advance and the FOPD shall notify the Court and counsel in writing the next business day.

13. Mr. Hinckley shall not knowingly travel to areas where any United States Secret Service protectee is, or will be, present imminently.

14. Mr. Hinckley shall provide the username and password for all electronic devices and online accounts, including email accounts to Mr. Weiss and the FOPD. He shall permit unrestricted access and inspection of all his electronic devices and online accounts upon request. The FOPD shall provide this information to the U.S. Secret Service. Mr. Hinckley shall abide by any internet restrictions, if any, that the Williamsburg treatment team and FOPD may impose.

15. The Williamsburg treatment team and FOPD shall continue to identify alternative treatment providers in the Williamsburg area in order to facilitate Mr. Hinckley's transition to new providers when the current team members retire or leave the area. The FOPD shall notify the Court and counsel of Mr. Hinckley's plans to transition from current providers to the new providers.

16. If FOPD perceives a violation of this Order, it shall promptly notify the court and counsel.

17. A status hearing shall be set for approximately (7) months from the issuance of this order, at which counsel for Mr. Hinckley and the government shall inform the Court of their

position with respect to any DBH recommendations and whether or not they intend to seek an independent evaluation of Mr. Hinckley. DBH shall submit a status letter to the Court and Counsel with respect to Mr. Hinckley's adjustment to this modified conditional release and their opinion on his unconditional release from his commitment, two weeks prior to the scheduled status date. Further, an evidentiary hearing shall be set for approximately (9) months from the issuance of this order to address the DBH recommendations.

**SO ORDERED**

/s/ Paul L. Friedman
PAUL L. FRIEDMAN
United States District Judge

DATE: 10/28/2020